UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO | * | CIVIL ACTION NO. 12-CV-1445 |
| PARTNERSHIP III AND | * | |
| GEORGE J. NEWTON, III | * | |
|    Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE ENGELHARDT |
| | * | |
| NORTHERN BANK LIMITED AND | * | MAGISTRATE CHASEZ |
| PRICEWATERHOUSECOOPERS, LLP | * | |
|    Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**

   Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), respectfully move this Court to compel meaningful responses from Defendant, Northern Bank Limited ("NBL"), to the discovery served upon NBL. The discovery is relevant to the issues raised in the motion to dismiss for lack of personal jurisdiction filed by NBL, and thus NBL is required to provide complete, substantive answers and responses to Plaintiffs' discovery.[1]

**BACKGROUND**

   Plaintiffs commenced this proceeding in the Louisiana state court system. Rec. Doc. 1-2, ¶ I. Mr. Newton was a percentage owner and lender through BMPP3 of Seatem Attraction, Tickets (UK) Limited ("Seatem"). *See id.* NBL and Seatem entered into a loan agreement wherein NBL was to provide Seatem with working capital for its ticketing operations. *Id.* ¶ 1. Due to the global credit crisis, NBL changed its methodology of extending credit to Seatem, requiring Mr. Newton to personally guarantee a loan. *Id.* ¶¶ 8-10. NBL told Mr. Newton that it

---

[1] Notably, Plaintiffs originally propounded the discovery on **October 2, 2012**. Despite giving NBL's **_two_** extensions of time to respond or until **November 26, 2012**, or **_55_** days, NBL to date has only produced two pages of documents.

would not attempt to collect the guarantee. *Id.* ¶¶ 11-12. Despite the fact that NBL asked Mr. Newton to sign the guarantee amidst promises of continued and increased financial support for Seatem, NBL curtailed its support of Seatem. *Id.* ¶ 15. Furthermore, Mr. Newton's guarantee was signed in conjunction with a credit facility that expired in 2009 without any call having been made against the guarantee. *Id.* ¶ 16. Despite NBL's representations and promises that it would not do so, NBL has been attempting to execute on Mr. Newton's personal guarantee, causing him damages. *Id.* ¶¶ 35, 39.

BMPP3, which had been lending and investing capital in Seatem, eventually had to write off $20,718,096 as of calendar year 2010, which it reported in its 2010 taxes filed in 2011. BMPP3 lost the $20+ million as a direct result of the actions of NBL and the other defendants. *See id.* ¶ 28. Therefore, Plaintiffs filed the instant lawsuit seeking the recovery of all damages they have suffered due to Defendants' wrongful acts, and a declaratory judgment that Mr. Newton's personal guarantee was void *ab initio* and/or that the guarantee does not attach to the newer credit facility. *Id.*, Prayer.

In response to the petition, NBL filed a motion to dismiss on grounds of, *inter alia*, lack of personal jurisdiction (the "Motion to Dismiss"). Rec. Doc. 16. The motion is set for submission before the District Court on January 23, 2013. Rec. Doc. 56. To address the issues presented in NBL's Motion to Dismiss, Plaintiffs propounded upon NBL written jurisdictional discovery on October 2, 2012, consisting of interrogatories and requests for production of documents. *See* Exhibit A. NBL served its answers to Plaintiffs' interrogatories and NBL's responses to Plaintiffs' requests for production on November 26, 2012. *See id.* However, NBL refused to provide substantive answers and responses to certain of Plaintiffs' interrogatories and requests for production. The refusal was unjustified under the rules of discovery, and thus NBL

should be compelled to provide complete, substantive answers and responses to Plaintiffs' discovery.

## LAW & ARGUMENT

The scope of discovery is broad. *Drs. Bethea v. St. Paul Guardian Ins. Co.*, No. 02-1444, 2003 WL 292302, at *2 (E.D. La. Feb. 11, 2003) (citing *Hebert v. Lando*, 441 U.S. 153, 176 (1979)). Discovery is permissible as to "any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). If the information is relevant, it "need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* This Court should compel NBL to provide complete substantive answers and responses to the following discovery items, which are all relevant to the District Court's resolution of whether it has personal jurisdiction over NBL.

### *Interrogatory No. 17*

Interrogatory No. 17 requests NBL to identify all communications within the relevant time period pertaining to financing arrangements between NBL and:

- theme parks or other attractions, including their related entities, in the United States, such as, but not limited to, The Walt Disney Company;
- ticketing companies, like Seatem, that are domiciled in the United States or maintain a principal place of business there; or
- airports or currency exchange companies that are domiciled in the United States or maintain a principal place of business there.

*See* Exhibit A. In its answer to Interrogatory No. 17, NBL objects to the extent the interrogatory concerns communications outside of Louisiana. *Id.* NBL's objection is unfounded because if the District Court resolves NBL's Motion to Dismiss by transferring this action to another federal district, the District Court necessarily will need evidence of which other federal district(s) meet the "minimum contacts" standard for an assertion of personal jurisdiction over NBL.

Federal law provides that where an action is brought in a federal district that lacks personal jurisdiction over the defendant, the court may transfer the action to another federal district in which the case could have properly been brought.[2]  Even if the District Court were to decide that a Louisiana federal district court lacks personal jurisdiction over NBL, the District Court could resolve the Motion to Dismiss by transferring the action to another federal district where personal jurisdiction over NBL would exist.  Accordingly, Interrogatory No. 17 seeks information that would provide a basis for the District Court to transfer this action to another district.[3]

The information requested in Interrogatory No. 17 is relevant and reasonably calculated to lead to the discovery of admissible evidence concerning alternative federal districts with personal jurisdiction over NBL and requiring NBL to provide the information imposes no undue burden.  Plaintiffs' petition alleges that Plaintiffs are investors in Seatem, that they lost money in their investments in Seatem, and that NBL is responsible for these financial losses.  Rec. Doc. 1-2, ¶¶ I, 28-29.  The petition further alleges that the action arises out of a loan between NBL and Seatem to provide working capital for Seatem's ticketing operations to sell tickets ***to theme parks and other attractions in the United States***.  *Id.* ¶¶ 1-2.  Information with respect to NBL's communications regarding financing between NBL and ticketing companies such as Seatem is highly relevant as to attractions in Florida, as the petition alleges that Seatem had exclusive

---

[2]  *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the ***wrong division or district*** shall dismiss, ***or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought***.") (emphasis added); *Crochet v. Wal-Mart Stores, Inc.*, No. 11-01404, 2012 WL 489204, at *5 (W.D. La. Feb. 13, 2012) (citing *Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978)) ("A district is 'wrong' within the meaning of § 1406 whenever there exists an '"obstacle (to) . . . an expeditious and orderly adjudication" on the merits,' including a lack of personal jurisdiction."); *Scudgins v. Newby*, No. 96-2700, 1997 WL 250039, at *1 (E.D. La. May 9, 1997) ("If a court lacks personal jurisdiction of a party, it may transfer the case to a court of proper venue with such jurisdiction.").
[3]  Plaintiffs do not hereby concede that the District Court lacks personal jurisdiction over NBL, such that a transfer to another district is required.  However, to the extent the District Court were to so hold, the evidence Plaintiffs seek is clearly relevant to judicial resolution of NBL's Motion to Dismiss.

ticketing deals to Walt Disney World, Universal Studios, and Busch Gardens in Florida. *Id.* ¶ 2. The petition further alleges that Seatem was the largest ticketing company in the world of the Disney, Universal, and Busch organizations. *Id.* Additionally, one such theme park located in Florida—Disney—had a $1.25 million letter of credit on behalf of Seatem with NBL. *Id.* ¶ 7. Thus, especially as to the State of Florida, but also with respect to other states, NBL's provision of financing to United States theme parks and attractions, especially when Seatem was a party to such financing, is a relevant contact that the District Court should consider in ruling on whether personal jurisdiction over NBL would be exist in another federal district in which this action could have been brought.

This information is relevant, based upon the standard for establishing personal jurisdiction over a nonresident defendant, such as NBL. The inquiry is whether the defendant "purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there." *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). To the extent NBL has provided financing to United States theme parks and attractions to which Seatem or others provide ticketing deals and has provided financing to ticketing companies, including Seatem, evidence of NBL's financing activities is relevant to NBL's purposeful direction of its activities toward one or more of the United States. Accordingly, NBL has no valid basis for refusing to fully answer Interrogatory No. 17 and should be compelled to provide a complete, substantive answer.

Further, Request for Production No. 1 requests the production of all documents NBL referenced or consulted in answering Plaintiffs' interrogatories. *See* Exhibit A. Thus, in addition to answering Interrogatory No. 17, NBL should be compelled to produce all documents that it referenced or consulted in providing a proper response to Interrogatory No. 17.

### Interrogatory No. 18 & Request for Production No. 7

Interrogatory No. 18 requests that NBL identify officers, directors, agents, employees, or representatives of NBL who communicated with Plaintiffs, "including without limitation David Alexander Tate, Stephen Quinn, Colin Richard Johnston Dundas, Anthony McConnell, John Clive Harper, Ciara Deery, Gerry Mallon, Kevin Kingston, Tony Wilcox, and Vicky Davies." *Id.* This interrogatory also requests that NBL describe the dates, times, places, content of, and other circumstances pertaining to such communications and, for each person identified, that NBL state the mailing address, telephone number, and email address of the person who communicated with Plaintiffs. *See id.* Relatedly, Request for Production No. 7 requests the production by NBL of all documents evidencing certain communications—the same communications at issue in Interrogatory No. 18. *See id.* In response to these discovery items, NBL generally objects and references its answer to Interrogatory No. 16. *See id.* It is unclear why this reference is made,[4] but in any case, NBL's response does not provide the information sought by Plaintiffs. NBL neither identifies the individuals at NBL who communicated with Plaintiffs nor provides evidence of such communications.

This information clearly is relevant and calculated to lead to the discovery of admissible evidence. Plaintiffs believe that certain of the high-level NBL employees specifically identified in Interrogatory No. 18 and Request for Production No. 7 directly contacted **Plaintiff Mr. Newton** regarding the guarantee (***which was executed in Louisiana***), the loan to Seatem, and other circumstances comprising the subject matter of this action. However, Plaintiffs are not limited to their information and belief in addressing these issues. Plaintiffs are permitted discovery concerning whether and to what extent these and other individuals at NBL

---

[4] Although Interrogatory No. 16 requests the identification of communications, it does not request identification of the individuals at NBL who engaged in the communications. *See* Exhibit A.

communicated with Mr. Newton regarding the factual circumstances at issue in this action.  To the extent Mr. Newton and the execution of the guarantee at issue are substantially connected with Louisiana, proof that representatives and agents of NBL communicated to Mr. Newton is relevant and calculated to reveal evidence relevant to NBL's purposeful availment of the Louisiana forum.  Thus, this information is relevant to Plaintiffs' rebuttal of NBL's contention in its Motion to Dismiss that the Court lacks personal jurisdiction over NBL.  This Court should compel NBL to completely and substantively answer Interrogatory No. 18 and provide all documents that are responsive to Request for Production No. 7.[5]

### *Interrogatory No. 16 & Request for Production No. 6*

Interrogatory No. 16 requests, *inter alia*, that NBL identify communications between NBL and Plaintiffs (1) related to financing made available by NBL to Seatem, or (2) related to any contractual relationship between NBL and either or both of the Plaintiffs.  *Id.*  Relatedly, Request for Production No. 6 requests that NBL produce documents evidencing such communications.  *Id.*  In its discovery responses to these two items, NBL responds that any communications it had with Mr. Newton are in his possession.  *Id.*  However, Plaintiffs maintain that they are entitled to such information and documentation, and counsel for NBL has now agreed to provide such information and documentation to counsel for Plaintiffs by Wednesday, December 5, 2012.  *See* Exhibit B.  However, out of an abundance of caution, Plaintiffs hereby reserve their right to supplement their motion to compel if counsel for NBL does not provide this information and documentation by the agreed-upon date of December 5, 2012.  Plaintiffs also reserve the right to supplement their motion to compel if counsel does not provide information

---

[5] As indicated below, NBL has now agreed to produce documents regarding its communications with Mr. Newton. It should similarly answer this mirror interrogatory as to information regarding communications not contained in the documents to be produced.

and documentation concerning communications between NBL and its account holders in Louisiana, as NBL's counsel has agreed to provide such. *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel should be granted.

Respectfully submitted,

*/s/Martha Y. Curtis* _____
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER**
**    KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS**
**BURRUS MORTGAGE PORTOFOLIO**
**PARTNERSHIP III AND GEORGE J. NEWTON III**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel of record through electronic mail this 4th day of December, 2012.

*/s/Martha Y. Curtis* _____
**MARTHA Y. CURTIS**