UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III, A LOUISIANA PARTNERSHIP IN COMMENDAM, and GEORGE J. NEWTON, III** | § § § § | **CIVIL ACTION NO. 2:12-cv-1445** |
| | § | **JUDGE ENGELHARDT** |
| Plaintiffs, | § § | |
| | § | **MAGISTRATE CHASEZ** |
| VERSUS | § § § | |
| **NORTHERN BANK LIMITED and PRICEWATERHOUSECOOPERS LLP** | § § § | |
| Defendants. | § § | |

**DEFENDANT, NORTHERN BANK LIMITED'S,
RESPONSE TO PLAINTIFFS' MOTION TO COMPEL**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Northern Bank Limited ("NBL"), to oppose the Plaintiffs' Motion to Compel [R. Doc. 102] ("Motion") for the reasons set forth herein. In short, NBL believes that two of the three categories of requests made the basis of the Motion have been satisfied by the production of communications between itself and the Plaintiffs; namely, the two categories that regard (a) Interrogatory No. 18 & Request for Production No. 7; and (b) Interrogatory No. 16 & Request for Production No. 6.

In addition, NBL contends that the first category of requests made the basis of the Motion should be denied because they do not seek information and/or documents regarding its contacts with the State of Louisiana. Rather, they only seek information and/or documents regarding NBL's contacts with other states, which the Plaintiffs' claim that they need for the Court to evaluate "*other federal district(s) meet the 'minimum contacts' standard* for an assertion of personal jurisdiction over NBL"[1]

---

[1] [R. Doc. 102-1, p. 3, last three lines] (emphasis added)

Page 1

and for the Court to "consider in ruling on whether personal jurisdiction over NBL would [] exist in *another federal district in which this action could have been brought*."[2]

NBL should not be compelled to respond. What is at issue here, at this stage of the proceedings, are NBL's contacts with the State of Louisiana to evaluate whether this Court has personal jurisdiction. Information and documents regarding its contacts with the State of Louisiana have been produced to the Plaintiffs.

To the contrary, NBL's contacts with "other federal district(s)" and/or "another federal district in which this action could have been brought" are not reasonably calculated to lead to the discovery of admissible evidence. Therefore, the Plaintiffs' Motion should be denied.

## BACKGROUND

NBL provides the Court with a more extensive background than otherwise might be expected for a Motion to Compel in order to provide as much context as possible to evaluate and decide whether NBL should be compelled to produce the information and documents requested by the Plaintiffs. This Background is a modified, shortened version of the Background provided in NBL's Motion to Dismiss. [R. Doc. 16].

### A. The Plaintiffs' Petition.

On or about April 13, 2012, the Plaintiffs in the captioned matter – Burrus Mortgage Portfolio Partnership III, A Louisiana Partnership in Commendam ("BMPP3") and George J. Newton, III ("Newton") – filed a Verified Petition for Declaratory Judgment and Damages for Misrepresentation, Detrimental Reliance, Fraudulent Inducement, Breach of Contract, Abuse of Rights/Abuse of Dominant Position, and Accountant Malpractice/Breach of Contract ("Petition") in the Civil District Court for the Parish of Orleans.

---

[2] [R. Doc. 102-1, p. 5, ll. 7-9] (emphasis added)

NO:0103988/00001:160009v1

The Petition initially named two Defendants – Northern Bank Limited ("NBL") and PricewaterhouseCoopers, LLP ("PWC-USA").  NBL is a company limited by its own shares incorporated in the United Kingdom.[3]  The Petition alleges that Newton is "one of the partners" of BMPP3, and that Newton "was a percentage owner and lender through [BMPP3] of Seatem Attraction, Tickets (UK) Limited ('Seatem'), a ticketing company located in Belfast, Northern Ireland." (Petition, ¶ I)  Seatem is an "international ticketer with exclusive deals…to sell tickets to Walt Disney World, Universal Studios, and Busch Gardens in Florida to travelers from Europe." (Petition, ¶ 2)  The Petition "arises out of a loan initially extended by [NBL] to Seatem to provide working capital for its ticketing operations." (Petition, ¶ 1)  Seatem operated by "extending credit" both to travel agents and to the attractions, such as Disney. (Petition, ¶ 3)

The Petition alleges that NBL "changed how it wished to extend credit to Seatem." (Petition, ¶ 9)  Specifically, NBL allegedly insisted upon a personal guarantee from Newton and promised not to enforce the same; instead, representing that it was needed merely to "paper the file." (Petition, ¶¶ 10-11)  NBL further allegedly represented that it "would never try to collect a guarantee from a U.S. citizen" and that the guarantee was "just a piece of paper toward [the] ultimate resolution" of providing the requested financing. (Petition, ¶ 12).

Against PWC-USA, the Petition alleges that the accountant that prepared a report regarding Seatem's business did so slowly and negligently. (Petition, ¶¶ 17-29)  Allegedly as a result of the delay in receiving the report as well as the contents of the report itself, NBL refused to extend further credit to Seatem, which resulted in the losses/damages made the basis of the Petition. (Petition, ¶¶ 20-21, 23-27).  Finally, the Petition alleges that BMPP3 "which had been lending and investing capital in Seatem

---

[3] See Affidavit of David Alexander Tate, No. 4, accompanying NBL's Memorandum in Support of its Motion to Dismiss as Exhibit "A" [R. Doc. 16-3].

eventually had to write off $20,718,096 as of calendar year 2010 which it reported in its 2010 taxes filed in late 2011." (Petition, ¶ 28)

On the basis of these allegations, the Petition asserts causes of action against NBL for misrepresentation and detrimental reliance (Petition, ¶¶ 30-39), fraudulent inducement (Petition, ¶¶ 40-44), bad faith breach of contract (Petition, ¶¶ 45-47), abuse of rights and abuse of dominant position (Petition, ¶¶ 48-52), and declaratory judgment that the personal guarantee is void ab initio and/or does not attach to the 2010 facility (Petition, ¶¶ 55-60).

B.   **NBL's Notice of Removal [R. Doc. 1]**

NBL timely removed to this Court on the basis of diversity jurisdiction. [R. Doc. 1]. NBL asserts that PWC-USA has been improperly joined because it has no connection whatsoever to the facts made the basis of the Petition. The Plaintiffs subsequently filed a Motion to Remand [R. Doc. 13] and a First Amended Complaint [R. Doc. 12]  The First Amended Complaint adds two, new Defendants – PricewaterhouseCoopers International Limited ("PWC-Int'l) and PricewaterhouseCoopers, LLP ("PWC-UK") – and alleges that they are the alter egos of, and a single business enterprise with, PWC-USA.  The Motion to Remand basically argues that the PWC entities are the alter egos of one another and/or constitute a single business enterprise, and also that Newton thought he was dealing with PWC-USA.

C.   **NBL's Motion to Dismiss [R. Doc. 16]**

In response to the Petition, NBL filed a Motion to Dismiss [R. Doc. 16] on the grounds that the Court lacks personal jurisdiction over NBL due to its lack of contacts with the forum; and that the captioned matter should be dismissed on the grounds of *forum non conveniens*, international comity

and *lis alibi pendens*, pending resolution of a previously-filed suit in Northern Ireland, which arises from the same facts, transaction, and occurrence as the Petition (the "Northern Ireland Suit").[4]

With respect to the Northern Ireland Suit, on or about January 10, 2012 (over three months before the Plaintiffs filed their Petition in the captioned matter), NBL filed suit in the High Court of Justice in Northern Ireland, Queen's Bench Division, against Newton asserting a claim to enforce the guarantee made the basis of the captioned matter.[5] The Northern Ireland Suit was served upon Newton.[6] Newton retained counsel and, on or about May 25, 2012 made an appearance in the Northern Ireland Suit.[7] The Northern Ireland Suit has subsequently made significant progress into discovery with participation by Newton and his counsel.

### D. Plaintiffs' Discovery Requests

Here, the Plaintiffs propounded "Interrogatories *Regarding Personal Jurisdiction*" and "Requests for Production *Regarding Personal Jurisdiction*" on NBL (emphasis added in titles). The Plaintiffs moved to compel NBL to respond to three categories of the requests contained therein. [R. Doc. 102]. It is NBL's understanding that two of the three categories of those requests have been satisfied, and that only one remains at issue.

---

[4] NBL also asserted that the Petition fails to state a claim upon which relief can be granted for the Plaintiff, BMPP3, whose association and relationship with the other parties is described only briefly, and very vaguely, in connection with Newton, who "was a percentage owner and lender through [Burrus] of Seatem Attraction, Tickets (UK) Limited ("Seatem"), a ticketing company located in Belfast, Northern Ireland." (Petition, ¶ I). Otherwise, with respect to BMPP3, the Petition alleges only that BMPP3 "which had been lending and investing capital in Seatem eventually had to write off $20,718,096 as of calendar year 2010 which it reported in its 2010 taxes filed in late 2011." (Petition, ¶ 28). Alternatively, due to these few, vague allegations, NBL seeks a more definite statement regarding BMPP3's association and relationship with the other parties in order to evaluate its standing, capacity, and interest in this suit.
[5] A copy of the suit accompanied NBL's Memorandum in Support of its Motion to Dismiss as Exhibit "B." [R. Doc. 16-4]
[6] A copy of the Affidavit of Service accompanied NBL's Memorandum in Support of its Motion to Dismiss as Exhibit "C." [R. Doc. 16-5].
[7] A copy of the Memorandum of Appearance, with a letter from his counsel, accompanied NBL's Memorandum in Support of its Motion to Dismiss, in globo, as Exhibit "D." [R. Doc. 16-6]

## **LAW AND ARGUMENT**

The Plaintiffs move to compel NBL to produce information and documents in three categories. Each will be addressed in turn.

**I        Interrogatory No. 17**

Interrogatory No. 17 basically asks for information regarding communications between NBL and theme parks, ticketing companies, airports, and/or currency exchange companies. [R. Doc. 102-1, p. 3]. In response, NBL answered:

> NBL objects to Interrogatory No. 17 on the grounds that it is vague, overbroad, and unduly burdensome.  NBL further objects to Interrogatory No. 17 on the grounds that it seeks information not reasonably calculated to the lead to the discovery of admissible evidence regarding the issue of personal jurisdiction to the extent that it requests such communications outside of the State of Louisiana.  **Notwithstanding these objections, and without waiving the same, NBL responds that it has had no communications with "theme parks or other attractions…ticketing companies…or…airports or currency exchange companies" in the State of Louisiana regarding any "loan, capital, credit facility, letter of credit, or other financing."**

(Exhibit "A," p. 14-15) (emphasis added).  NBL limited its answer to communications with theme parks, ticketing companies, airports, and/or currency exchange companies in the State of Louisiana because that is what is at issue at this stage of the proceedings; namely, its contacts with the State of Louisiana to evaluate whether this Court has personal jurisdiction.  The Plaintiffs acknowledged such when stating in the title of their Interrogatories and Requests for Production that they're "Regarding Personal Jurisdiction."  Thus, regarding personal jurisdiction, written and oral discovery is fairly limited to NBL's contacts with the State of Louisiana because only those contacts are relevant to whether this Court has personal jurisdiction.

The Plaintiffs seem not to dispute this limitation on discovery at this point in the proceedings. Instead, the Plaintiffs contend that they need this information because

> if the District Court resolves NBL's Motion to Dismiss by transferring this action to another federal district, the District Court necessarily *will need evidence of which **other***

> *federal district(s) meet the 'minimum contacts' standard* for an assertion of personal jurisdiction over NBL

[R. Doc. 102-1, p. 3, last three lines] (emphasis added) and because

> …NBL's provision of financing to United States theme parks and attractions, especially when Seatem was a party to such financing, is a relevant contact that the District Court should consider in ruling on *whether personal jurisdiction over NBL would [] exist in another federal district* in which this action could have been brought.

[R. Doc. 102-1, p. 5, ll. 5-9] (emphasis added).  Thus, the Plaintiffs basically contend that they need this information not to evaluate NBL's contacts with the State of Louisiana for the purpose of responding to its Motion to Dismiss and arguing whether this Court has personal jurisdiction.

Rather, the Plaintiffs allege that they need this information to evaluate "other federal district(s) [that] meet the 'minimum contacts' standard" and to determine whether there is "another federal district in which this action could have been brought."  NBL contends that its contacts with "other federal district(s)" and "another federal district" are not reasonably calculated to lead to the discovery of admissible evidence regarding whether it has minimum contacts with the State of Louisiana sufficient to establish either general or specific personal jurisdiction.

For these reasons, the Plaintiffs' Motion regarding Interrogatory No. 18 should be denied.

## II      Interrogatory No. 18 & Request for Production No. 7 – Communications with the Plaintiffs

Interrogatory No. 18 basically asks for information regarding communications between NBL and the Plaintiffs. [R. Doc. 102-1, p. 6, ll. 1-2].  Request for Production No. 7 essentially asks for those communications to be produced. *Id*.

In response, NBL answered Interrogatory No. 18 by reference to its Answer to Interrogatory No. 16, which reads,

> NBL objects to Interrogatory No. 16 on the grounds that it is vague, overbroad, and unduly burdensome.  NBL further objects to Interrogatory No. 16 on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of

>admissible evidence to the extent that it seeks information regarding communications with Seatem.  **Notwithstanding these objections, and without waiving the same, NBL responds that, to the best of its knowledge, it has had no communications with the Plaintiff, Burrus Mortgage Portfolio Partnership III, A Louisiana Partnership in Commendam.  NBL further responds that any communications it has had with the Plaintiff, George J. Newton, III, would be in his possession and, therefore, equally available to the Plaintiffs.**

(Exhibit "A," p. 14) (emphasis added).  NBL's response to Request for Production No. 7 referenced its Answer to Interrogatory No. 18, which (in turn) referenced the Answer quoted above. (See Exhibit "B," p. 6).

So, NBL basically said (a) that it had no communications with BMPP3 and (b) that its communications with Newton were equally available to him (as the recipient).  However, in response to the Plaintiffs' insistence, and with the hope that doing so would avoid this Motion, NBL subsequently confirmed that it had no communications with BMPP3 and produced its communications with Newton within documents Bates No. NBL000001 through NBL000283.

Thus, NBL believes that this set of requests have been satisfied.  NBL also believes this was confirmed with counsel for Plaintiffs today.  See the email exchange accompanying this Response as Exhibit "C."

**III   Interrogatory No. 16 & Request for Production No. 6 – Communications with the Plaintiffs**

Interrogatory No. 16 basically asks NBL to "identify communications between NBL and Plaintiffs (1) related to financing made available by NBL to Seatem, or (2) related to any contractual relationship between NBL and either or both of the Plaintiffs." [R. Doc. 102-1, p. 7, 1st para. under the heading].  Request for Production No. 6 essentially asks for those communications to be produced. *Id.*

In response, NBL answered Interrogatory No. 16 as follows, which was quoted above:

>NBL objects to Interrogatory No. 16 on the grounds that it is vague, overbroad, and unduly burdensome.  NBL further objects to Interrogatory No. 16 on the grounds that it seeks information that is not reasonably calculated to lead to the discovery of

admissible evidence to the extent that it seeks information regarding communications with Seatem. **Notwithstanding these objections, and without waiving the same, NBL responds that, to the best of its knowledge, it has had no communications with the Plaintiff, Burrus Mortgage Portfolio Partnership III, A Louisiana Partnership in Commendam. NBL further responds that any communications it has had with the Plaintiff, George J. Newton, III, would be in his possession and, therefore, equally available to the Plaintiffs.**

(Exhibit "A," p. 14) (emphasis added). NBL's response to Request for Production No. 6 referenced its Answer to Interrogatory No. 16 quoted above. (Exhibit "B," p. 6).

So, again, NBL basically said (a) that it had no communications with BMPP3 and (b) that its communications with Newton were equally available to him (as the recipient). However, in response to the Plaintiffs' insistence, and with the hope that doing so would avoid this Motion, NBL subsequently confirmed that it had no communications with BMPP3 and produced its communications with Newton within documents Bates No. NBL000001 through NBL000283.

Thus, NBL believes that this set of requests have been satisfied. NBL also believes this was confirmed with counsel for Plaintiffs today. See the email exchange accompanying this Response as Exhibit "C."

## CONCLUSION

For the reasons set forth above, the Plaintiffs' Motion to Compel should be denied.

    Respectfully Submitted,

    /s/ Monique M. Lafontaine_____
    Monique M. Lafontaine, T.A. (24557)
    Locke Lord LLP
    601 Poydras Street, Suite 2660
    New Orleans, Louisiana 70130
    Telephone (504) 558-5133
    Facsimile (504) 681-5223
    mlafontaine@lockelord.com

    Counsel for Defendant,
    Northern Bank Limited

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was served on counsel for the Plaintiffs and Defendants via electronic filing this 11th day of December 2012.

                                             */s/ Monique M. Lafontaine*