UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III and GEORGE J. NEWTON, III<br><br>Plaintiffs,<br><br>vs.<br><br>NORTHERN BANK LIMITED and PRICEWATERHOUSECOOPERS LLP,<br><br>Defendants. | Civil Action No. 2:12-cv-1445<br><br>Judge Engelhardt<br><br>Magistrate Judge Chasez |

**PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant PricewaterhouseCoopers International Limited (PwCIL) respectfully submits this Memorandum in Support of its Motion to Dismiss.

**INTRODUCTION**

This case involves conduct taking place entirely in Northern Ireland. It arises out of a loan issued by defendant Northern Bank, a bank headquartered in Belfast, Northern Ireland, to Seatem, a ticketing company also located in Belfast. In connection with the loan to Seatem, Northern Bank engaged the Belfast office of PwC U.K. to perform a report on Seatem, which plaintiffs, who claim to have invested money in Seatem, allege was flawed and untimely. The engagement letter between Northern Bank, Seatem and PwC U.K. for that report stipulates that all disputes arising out of that engagement are to be litigated in Northern Ireland.

According to plaintiffs, this wholly foreign dispute ended up in Louisiana because plaintiffs made a mistake; they "were unaware there was any alleged distinction between PwC-USA and PwC-UK". (*See* Pls.' Mem. in Supp. of Mot. to Remand, July 6, 2012, at 2.) The engagement letter makes clear, however, that the PwC entity preparing the report was PwC U.K.,

"a limited liability partnership registered in England", which does business throughout the United Kingdom, including in Northern Ireland. Indeed, plaintiff Newton is already party to a prior-filed, closely related lawsuit in Northern Ireland, in which Northern Bank is seeking to recover against Newton on his guarantee for Seatem's debts.

In an apparent concession that PwC U.S. and PwC U.K. are indeed different firms, plaintiffs have amended their Petition to name PwC U.K. as a defendant alongside PwC U.S. They also have named as a defendant PwCIL, an English company that serves as the coordinating entity for the PwC network of firms. PwCIL does not provide any professional services, but rather performs certain coordinating functions for firms around the world that use the PwC name. Plaintiffs do not allege that PwCIL had any involvement with the report prepared by PwC U.K. for Northern Bank.

Plaintiffs' claims against PwCIL should be dismissed for three reasons. *First*, this foreign dispute does not belong in a Louisiana court. For the reasons set forth in the memorandum of PwC U.K., which are incorporated herein by reference, the Court should dismiss this case on the basis of *forum non conveniens* in favor of Northern Ireland, where a prior-filed related dispute is already underway and where all defendants have consented to jurisdiction. The related doctrine of *lis alibi pendens* and the forum-selection provision in the engagement letter also require resolution of this dispute in Northern Ireland. *Forum non conveniens* and the related threshold issues dispose of this action in Louisiana against all defendants. (*See* Part I, *infra*.)

*Second*, plaintiffs fail to satisfy their burden of establishing personal jurisdiction over PwCIL, which they concede is an English company. Plaintiffs fail to establish general jurisdiction over PwCIL because they do not allege that PwCIL has "continuous and systematic

contacts", or indeed any contacts at all, with the state of Louisiana. Plaintiffs fail to establish specific jurisdiction over PwCIL because they do not allege that PwCIL had any contact with Louisiana related to the alleged conduct at issue in this case. The declaration of Colm Kelly, submitted herewith, confirms that PwCIL has no business presence in Louisiana and therefore is not subject to jurisdiction here. (*See* Part II, *infra*.)

*Third*, the Amending Petition as it relates to PwCIL must be dismissed for failure to state a claim. Plaintiffs fail to state a claim because, for the reasons set forth in the memorandum of PwC U.K., plaintiffs do not allege an underlying violation by PwC U.K. for which plaintiffs can recover. Without underlying liability of a primary defendant, plaintiffs necessarily cannot make out a claim for vicarious liability against PwCIL.

Furthermore, even if plaintiffs stated a valid claim against PwC U.K., they still would not state a claim against PwCIL because they fail to allege that PwC U.K. acted as an agent of PwCIL in connection with the services PwC U.K. provided to Northern Bank. Although plaintiffs assert conclusorily that PwCIL "controls" its member firms, plaintiffs do not support such assertions with any allegations of fact. Plaintiffs also fail to make the allegations required to support their claim that PwC U.S., PwC U.K. and PwCIL—legally separate entities—should be treated as alter egos of one another. Indeed, courts addressing those very claims against network-coordinating entities have routinely dismissed such claims at the pleading stage. (*See* Part III, *infra*.)

## BACKGROUND

### A. Factual Background

Plaintiffs' claims arise out of an extension of credit by Northern Bank Limited ("Northern Bank") to Seatem Attraction, Tickets (UK) Limited ("Seatem"). Plaintiffs allege that they are investors in Seatem, which itself is not a party to this action. (*See* Pet. ¶ I.) They allege

3

that Northern Bank induced plaintiff George J. Newton, III, to sign a personal guarantee for Seatem's debts, while supposedly telling Newton that Northern Bank would not seek to collect on the guarantee, ultimately causing him to suffer losses. (*See id.* ¶¶ 10-16).

Plaintiffs also allege that, in November 2009, Northern Bank hired a PwC firm to "give the Bank a report on Seatem". (Pet. ¶ 17.) The report allegedly was "flawed" and untimely, contributing to plaintiffs' losses. (*See id.* ¶¶ 19, 22.) Although plaintiffs initially alleged that the firm providing the report was "a limited liability partnership which, upon information and belief, has partners who are citizens of Louisiana and Florida" (namely, "PwC U.S.") (*id.* ¶ III), the engagement letter for that report was entered into between Northern Bank, Seatem and PricewaterhouseCoopers LLP, "a limited liability partnership registered in England" ("PwC U.K.") (*see* Engagement Letter, attached as Exh. 2 to PwC U.K.'s memorandum, at 1.). Apparently conceding that fact, plaintiffs amended their Petition to add PwC U.K. as a defendant alongside PwC U.S. They also named as a defendant PricewaterhouseCoopers International Limited ("PwCIL"), the coordinating entity for the PwC network.

All of the events underlying this dispute took place in Northern Ireland, and none of them took place in Louisiana. Northern Bank and Seatem are each located in Belfast, Northern Ireland. (*See* Pet. ¶¶ I, II.) The Belfast office of PwC U.K. was responsible for all of the services performed on the Northern Bank engagement. (Engagement Letter at 1.) The engagement letter between Northern Bank, Seatem and PwC U.K. provides that the laws of Northern Ireland govern the contract, and mandates that any disputes related to the engagement be brought in the courts of Northern Ireland. (*Id.* at 4.) Indeed, a prior-filed related lawsuit in which Northern Bank has sued plaintiff Newton to enforce his guarantee is already pending in the High Court of Justice in Northern Ireland. All defendants are subject to suit in Northern

Ireland, or have consented to jurisdiction there.

### B. PwCIL and the PwC Network

The PwC network consists of member firms that are separate legal entities, each organized under the laws of its own jurisdiction. (Decl. of Colm Kelly ("Kelly Decl."), attached as Exh. 1, ¶ 5.) As set forth in plaintiffs' First Amending Petition, PwC U.K. is "a limited liability partnership registered in England". (Am. Pet. ¶ III(a).) Similarly, PwC U.S. is a limited liability partnership organized under the laws of Delaware. (Decl. of Joe Killian ("Killian Decl.") ¶ 6, June 6, 2012.) Because many jurisdictions require accounting firms to be locally owned and independent, the PwC member firms do not and cannot operate as a multinational corporation or an international partnership. (Kelly Decl. ¶ 4.) Thus, PwC U.S. is owned by the partners of PwC U.S., who are licensed to provide professional services in the United States. (*Id.* ¶ 6.) PwC U.K. is owned by its own partners, who are not partners of PwC U.S. and are not licensed to provide professional services in the United States. (*Id.*)

PwCIL is the coordinating entity for the PwC network of firms. (*Id.* ¶ 7.) PwCIL itself is a separate legal entity from each of the PwC member firms. (*Id.* ¶ 7.) As plaintiffs correctly allege, PwCIL is an English company. (Am. Pet. ¶ III(b).) Unlike the PwC member firms, PwCIL does not provide professional services. (Kelly Decl. ¶ 7.) It also does not supervise the professional services provided by each of the member firms. (*Id.*) Rather, PwCIL provides certain limited coordination functions for the PwC member firms, such as developing initiatives in areas such as strategy, brand, risk and quality. (*Id.* ¶ 8.) By becoming members of PwCIL, member firms are entitled to use the PwC name and draw on resources from the PwC network. (*Id.*)

Plaintiffs do not allege that PwCIL itself had any role in preparing the report they claim contributed to their losses. Rather, as the engagement letter for the report confirms,

Northern Bank retained PwC U.K. to perform that work. (Engagement Letter at 1.) Plaintiffs also do not allege that PwCIL has ever had any contact with the state of Louisiana. Consistent with plaintiffs' lack of any specific jurisdictional allegations with respect to PwCIL, PwCIL submits herewith the Declaration of Colm Kelly, which confirms that PwCIL has no such contacts. PwCIL does not maintain an office in Louisiana. (Kelly Decl. ¶ 10.) It is not licensed to do business in Louisiana and has never applied for such a license. (*Id.* ¶ 11.) It does not pay taxes, keep a bank account or own or rent any property in Louisiana. (*Id.* ¶¶ 12-14.)

Plaintiffs' claims against PwCIL are predicated on the idea that PwCIL somehow "controls" its member firms and that the member firms, along with PwCIL, should be considered a single business entity, despite plaintiffs' concession that the various PwC firms are organized under the laws of different countries. Plaintiffs presumably contend that such "control" should make PwCIL liable for alleged misconduct by PwC U.K. in which PwCIL itself had no involvement. Plaintiffs also suggest that PwC U.S.'s presence in Louisiana should subject PwCIL to jurisdiction here, even though plaintiffs do not (and cannot) allege that PwCIL itself has any contacts with the state. Plaintiffs also do not allege any conduct by PwC U.S. or PwC U.K. in Louisiana in connection with the Northern Bank engagement.

## ARGUMENT

### I.   THIS CASE DOES NOT BELONG IN A UNITED STATES COURT.

#### A.   The Action Should Be Dismissed on the Grounds of *Forum non Conveniens*.

As set forth above, all of the alleged conduct underlying this dispute took place in Northern Ireland and none of it took place in Louisiana. The courts of Northern Ireland are the appropriate forum for the resolution of this controversy. Therefore, this action should be dismissed on the basis of *forum non conveniens*. The Court may dismiss this action in its entirety on that basis without addressing any other threshold issues, including whether the Court

has subject-matter jurisdiction over this action or personal jurisdiction over any defendant. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

As set forth in Part II of PwC U.K.'s memorandum, which is incorporated herein by reference, all of the requirements for *forum non conveniens* dismissal are satisfied. The Northern Irish courts, which are part of the judicial system of the United Kingdom, are adequate to resolve this controversy; indeed, the engagement letter between PwC U.K., Seatem and Northern Bank provides that the courts of Northern Ireland have exclusive jurisdiction over any claims arising from that engagement.[1] In addition, as set forth in PwC U.K.'s memorandum, the relevant public- and private-interest factors weigh heavily in favor of dismissal so that the case should proceed in Northern Ireland.

      **B.    Alternatively, the Case Should Be Dismissed for *Lis Alibi Pendens* or Improper Venue.**

Not only is Northern Ireland the most suitable forum for this dispute, but defendant Northern Bank and plaintiff Newton are already litigating there over the same subject matter. For the reasons set forth in Part III of Northern Bank's memorandum in support of its Motion to Dismiss, which are incorporated herein by reference, this action should therefore be dismissed for *lis alibi pendens*.

Moreover, the contract on which plaintiffs purport to sue—the engagement letter between Northern Bank, Seatem and PwC U.K.—contains a mandatory forum-selection clause providing that "the [c]ourts of Northern Ireland shall have exclusive jurisdiction in relation to

---

[1] As a company domiciled in England, PwCIL is subject to jurisdiction under U.K. law in any part of the United Kingdom, including in Northern Ireland, under circumstances that apply here. (*See* Decl. of David Alister Scoffield QC, attached as Exh. 5 to the memorandum of PwC U.K., ¶ 26-34.) Moreover, all defendants, including PwCIL, consent to jurisdiction in Northern Ireland for the purpose of responding to the claims asserted in this action.

any claim, dispute or difference concerning the Contract and any matter arising from it". (*See* Engagement Letter at 4.) Such a clause is enforceable. Therefore, for the reasons set forth in PwC U.S.'s memorandum in support of its Motion to Dismiss, which are incorporated herein by reference, the Court should dismiss the claims against PwCIL for improper venue.

## II. THE COURT LACKS PERSONAL JURISDICTION OVER PWCIL.

In addition to the threshold issues applicable to all defendants, PwCIL should be dismissed because it is not subject to personal jurisdiction in Louisiana.

### A. Standard and Law on Personal Jurisdiction

"When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant." *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 592 (5th Cir. 1999). To carry that burden, the plaintiff must make "a *prima facie* showing" that jurisdiction exists as to each defendant. *Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). Such a showing requires allegations of fact to support the exercise of jurisdiction; conclusory assertions are insufficient. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted.").

If a plaintiff does make factual allegations supporting the exercise of jurisdiction, such allegations may be "controverted by the defendant's affidavits". *Ascaro, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 785 (5th Cir. 1990) (quoting *Travelers Indem. Co. v. Calvert Fire Ins. Co.*), 798 F.2d 826, 831 (5th Cir. 1986)). If the defendant submits affidavits establishing that jurisdiction does not exist, and the plaintiff fails to rebut them, the plaintiff fails to meet its burden and the case must be dismissed. *Ascare*, 912 F.2d at 785-86.

To establish personal jurisdiction over a foreign defendant in a diversity action, a plaintiff must establish that "(1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution". *Clemens*, 615 F.3d at 378 (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). Because "Louisiana's long-arm statute extends to the limits of due process", however, the inquiry reduces to whether the exercise of jurisdiction comports with due process. *Dickson Marine Inc. v. Panalpina, Inc.*, 179 F.3d 331, 336 (5th Cir. 1999); *see* La. R. S. 13:3201; *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010).

Applying the due-process standard, therefore, the exercise of personal jurisdiction over a foreign defendant is permissible only when "(1) the defendant has purposefully availed himself of the protections and benefits of Louisiana by establishing 'minimum contacts' in the state, and (2) the exercise of the jurisdiction complies with traditional notions of 'fair play and substantial justice'". *Jackson*, 615 F.3d at 584 (citing *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 242-43 (5th Cir. 2008)). As discussed below, "[t]here are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction". *Clemens*, 615 F.3d at 378.

Here, the Amending Petition fails to make a *prima facie* showing of personal jurisdiction over PwCIL. Plaintiffs fail to establish general jurisdiction over PwCIL because they do not allege that PwCIL had "continuous and systematic" contacts—or indeed any contacts—with Louisiana. Plaintiffs fail to establish specific jurisdiction over PwCIL because they do not allege that this action "arises out of" any contacts by PwCIL—or indeed that it "arises out of" contact by any defendant—with Louisiana. Furthermore, the declaration of Colm

Kelly, Network Operations Leader for PwCIL, confirms that PwCIL is not subject to personal jurisdiction in Louisiana.

### B. Plaintiffs Fail To Establish General Jurisdiction over PwCIL.

To establish general jurisdiction, plaintiffs must show that PwCIL has "continuous and systematic contacts" with Louisiana. *See Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609-10 (5th Cir. 2008). "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum'." *Id.* at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001)).

Plaintiffs' allegations do not support the exercise of general jurisdiction over PwCIL. Plaintiffs allege that PwCIL is "a United Kingdom membership-based company". (Am. Pet. ¶ III(b).) They do not allege that PwCIL has ever had any contacts with Louisiana.

The declaration of Colm Kelly confirms that PwCIL is not subject to personal jurisdiction in Louisiana. (*See* Kelly Decl.) PwCIL does not maintain an office in Louisiana and has never been licensed to do business there. (*Id.* ¶¶ 10-11.) PwCIL does not pay taxes, keep a bank account or rent or own any property in Louisiana. (*Id.* ¶¶ 12-14.) Thus, PwCIL does not have the requisite contacts with the state to subject it to jurisdiction. *See Jackson*, 615 F.3d at 584 (finding lack of general jurisdiction where defendant, like PwCIL, "has never had an office, bank accounts, employees, or even a postal address in Louisiana, nor owned or leased any property there", nor has it "ever been registered to do business in Louisiana or paid taxes in Louisiana").

Plaintiffs' efforts to establish general jurisdiction over PwCIL on the basis of PwC U.S.'s presence in Louisiana are unavailing. For the reasons set forth in Part I.D. of PwC U.K.'s memorandum, plaintiffs' allegations fall far short of the high standard required to establish for purposes of general jurisdiction that PwCIL is an alter ego of PwC U.S. *See HS*

*Dickson Marine*, 179 F.3d at 340-41; *Dalton v. R & W Marine, Inc.*, 897 F.2d 1359, 1363 (5th Cir. 1990). Moreover, plaintiffs' alter-ego claim is refuted by the declaration of Colm Kelly. As set forth in Mr. Kelly's declaration, the PwC firms do not operate as a unified partnership. (Kelly Decl. ¶ 4.) PwCIL itself is a separate legal entity from PwC U.S. and the other PwC member firms and does not control them. (*Id.* ¶ 7.) Because plaintiffs' conclusory allegations are "controverted by the defendant's affidavits", plaintiffs' claims against PwCIL should be dismissed for lack of personal jurisdiction. *Ascaro*, 912 F.2d at 785 (quoting *Travelers*, 798 F.2d at 831).

### C. Plaintiffs Fail To Establish Specific Jurisdiction over PwCIL.

Plaintiffs also fail to establish specific jurisdiction over PwCIL. To do so, plaintiffs must show that PwCIL has "purposefully avail[ed] itself of the privileges of conducting activities in the forum state" and that "the controversy arises out of or is related to [PwCIL's] contacts with the forum state". *Choice Healthcare, Inc. v. Kaiser Found. Health Plan of Colo.*, 615 F.3d 364, 369 (5th Cir. 2010).

Plaintiffs' petitions fail to identify any conduct in Louisiana that gave rise to their claims. Rather, plaintiffs' allegations show that all of the alleged conduct relevant to their claims took place in Northern Ireland. To the extent plaintiffs identify any conduct at all on the part of PwCIL, there is no allegation that such conduct took place in or was directed toward Louisiana.

Furthermore, plaintiffs cannot establish specific personal jurisdiction over PwCIL by reference to in-state contacts by PwC U.S. Plaintiffs would have to show that PwC U.S. acted as an agent of PwCIL in relation to the claims at issue in this case. *See Commerce & Energy Bank of Lafayette v. Hancock*, 615 F. Supp. 12, 13 (W.D. La. 1985) (holding that in-state contacts by purported agent unrelated to conduct at issue in the case were "irrelevant" because "[t]he Louisiana Long-Arm Statute permits the exercise of [specific] jurisdiction over non-

residents only on the basis of activities *from which the cause of action arose*"). Here, plaintiffs' claims do not "arise out of" any contacts that PwC U.S. had with Louisiana. Indeed, PwC U.S. did not perform any of the work at issue. Likewise, PwC U.K. is not alleged to have had any contacts with Louisiana in relation to its work for Northern Bank. Therefore, plaintiffs fail to establish specific personal jurisdiction over PwCIL.

### D. The Exercise of Jurisdiction over PwCIL Would Not Comport with Fair Play and Substantial Justice.

Even if plaintiffs could establish that PwCIL had "minimum contacts" with Louisiana (which they cannot), the exercise of jurisdiction over PwCIL would violate principles of "fair play and substantial justice". *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 105 (1987). The relevant factors to this determination are the burden on the nonresident defendant, the plaintiff's interest in securing relief, the forum state's interests and considerations of judicial efficiency. *See Johnston*, 523 F.3d at 615.

In this case, all of those factors weigh against the exercise of jurisdiction in Louisiana. PwCIL would be greatly burdened by having to defend itself in a foreign jurisdiction in which it has no presence. On the other hand, plaintiffs have the opportunity to secure full relief in Northern Ireland, as all defendants have consented to jurisdiction there and plaintiff Newton is already a party to proceedings there concerning the same facts. In contrast, plaintiffs could not obtain relief in Louisiana because the two defendants whose conduct is alleged to have caused plaintiffs injury—Northern Bank and PwC U.K.—are not subject to jurisdiction in this state. Similarly, Louisiana has little interest in resolving a dispute centered in a foreign country based on the alleged misconduct of foreign entities.

### III. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

Even if plaintiffs could establish that Louisiana is an appropriate forum for the

resolution of this dispute and that this Court has jurisdiction over PwCIL, plaintiffs' petitions as against PwCIL must nevertheless be dismissed because plaintiffs fail to state a claim.  *First*, plaintiffs fail to state a claim against PwCIL because they fail to allege an underlying violation against PwC U.K.  *Second*, plaintiffs' claims against all of the PwC defendants are procedurally barred under Louisiana law.  *Third*, even if they could make out an underlying claim against PwC U.K., plaintiffs cannot attribute such liability to PwCIL, which is not alleged to have had any involvement in the services PwC U.K. provided to Northern Bank.

### A. Plaintiffs' Claims Against PwCIL Fail Because Plaintiffs Fail To State a Claim for an Underlying Violation by PwC U.K.

Plaintiffs' claims for secondary liability against PwCIL fail because plaintiffs have failed to state a claim against PwC U.K., the alleged primary defendant.  Under the laws of Northern Ireland, which apply here under the engagement letter with PwC U.K., as well as under Louisiana law, a plaintiff must have had a direct relationship with an accounting firm in order to state a claim for professional negligence.  (*See* Part III.A of PwC U.K.'s memorandum.)  As set forth in more detail in the memoranda of PwC U.K. and PwC U.S., which are incorporated herein by reference, plaintiffs' claims against PwC U.K. fail under either Northern Ireland or Louisiana law because plaintiffs had no contractual or other direct relationship with PwC U.K. *See Caparo Indus. v. Dickman*, [1990] 2 A.C. 605 (H.L.) (appeal taken from Eng.); La R. S. § 37:91.  Because plaintiffs fail to state an underlying claim against PwC U.K., they necessarily fail to state a claim for secondary liability against PwCIL.  *See, e.g.*, *Cameron Parish Sch. Bd. v. State Farm Fire & Cas. Co.*, 560 F. Supp. 2d 485, 490 (W.D. La. 2008) ("CPSB cannot state a claim against State Farm under vicarious liability because there is no underlying negligence on Derbonne's part for which State Farm could be vicariously liable.").

B.  **Plaintiffs' Claims Are Procedurally Barred.**

Plaintiffs' claims against all of the PwC defendants also fail because they are barred by the statutory prescriptive period.  As set forth in Part IV.A of PwC U.S.'s Memorandum in Support of its Motion for Summary Judgment and Part III.B of PwC U.K.'s memorandum, which are incorporated herein by reference, plaintiffs were on inquiry notice of their claims against PwC U.K. in February 2010 yet failed to file suit within the one-year prescriptive period.  La. R.S. 9:5604.  In addition, as set forth in Part IV.B of PwC U.S.'s memorandum, which is incorporated herein by reference, plaintiffs' claims are barred for failure to submit the claims to a public-accountant review panel before filing suit.  La. R.S. 9:5604(A).

C.  **Plaintiffs Fail To Plead Secondary Liability Against PwCIL.**

Even if plaintiffs stated a claim against PwC U.K. that was not procedurally barred (which they do not), they still would not state a claim against PwCIL.  Plaintiffs do not contend that PwCIL itself had any role in the conduct at issue in this case.  Rather, plaintiffs' claims against PwCIL are predicated on the idea that PwCIL somehow "controls" its member firms and therefore should be held liable for their allegedly wrongful conduct.  Plaintiffs also assert that the PwC member firms, as well as PwCIL, all should be considered a "single business entity", notwithstanding the fact that, as reflected in plaintiffs' Amending Petition, the member firms are separately owned and organized under the laws of different countries.

1.  **Plaintiffs Do Not Adequately Plead Agency Liability.**

Under basic agency principles, a party may be responsible for the liabilities of another only in "exceptional circumstances" where an agency relationship may be imputed between the two entities.  *See Selser v. Pac. Motor Trucking Co.*, 770 F.2d 551, 554 (5th Cir. 1985).  Under Louisiana law, an agency relationship may be implied only when "the principal has the right to control the conduct of the agent and [ ] the agent has the right and authority to

14

bind the principal". *Dyson, Inc. v. Oreck Corp.*, 647 F. Supp. 2d 631, 640 (E.D. La. 2009) (quoting *Cross v. Cutter Biological Div. of Miles Inc.*, 676 So. 2d 131, 147 (La. Ct. App. 1996)); *see also United States v. Phillips*, 219 F.3d 404, 414 n.15 (5th Cir. 2000). To state a claim for vicarious liability, the plaintiff must allege that the principal controlled the alleged agent in relation to the specific conduct at issue in the case. *See Star Energy Corp. v. RSM Top-Audit*, No. 08 Civ. 329, 2008 WL 5110919, at *4 (S.D.N.Y. Nov. 26, 2008); *Nuevo Mundo Holdings v. PricewaterhouseCoopers LLP*, No. 03 Civ. 613, 2004 WL 112948, at *5 (S.D.N.Y. Jan. 22, 2004).

The sum total of the allegations that plaintiffs make in support of their claim of "control" are as follows. *First*, plaintiffs allege that PwCIL "closely monitors and controls the revenue, investment activity and personnel of its member firms". (Am. Pet. ¶ 29(e).) *Second*, plaintiffs assert that PwCIL "controls member firms" in an unspecified way through "a 'Global Board,' 'Strategy Council,' 'Network Executive Team,' and 'Network Leadership Team'". (*Id.* ¶ 29(f).) Finally, plaintiffs allege that PwC member firms are "subject to the Code of Conduct enforced by or on behalf of [PwCIL]".[2] (*Id.* ¶ 29(g).)

Absent from the Amending Petition is any allegation that PwCIL controls, or is in any way involved in, what is at issue here: the professional services that its member firms

---

[2] Plaintiffs' Amending Petition incorporates an article entitled "Interview: Why have a code?", on which plaintiffs rely to allege that "[v]iolation of the Code could result in termination". (Am. Pet. ¶ 29(g).) The article makes clear, however, that "[e]nforcement [of the code] will be conducted locally, as legal and professional requirements differ from country to country". (Pls.' Mem. in Supp. of Mot. to Remand Ex. D, at 2.) The Code itself sets out broad standards of conduct, such as the need to "serve only those clients whom we are competent to serve" and to "meet our contractual obligations, and report and charge honestly for our services". (*Id.* Ex. C, at 6, 8.) It does not displace localized professional standards or the need for partners at the various firms to exercise judgment in the service of their clients, and it does not dictate the manner in which the PwC member firms carry out specific engagements.

provide to their clients.  Plaintiffs also fail to allege, as they must, that PwCIL had any involvement whatsoever in the work that PwC U.K. performed for Northern Bank.  Instead, plaintiffs present generalized averments that amount to conclusions, not facts, and therefore are "not entitled to the assumption of truth".  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Indeed, courts addressing virtually identical allegations in the context of networks of accounting firms have held that such bare assertions were insufficient to state a claim.  *See Anwar v. Fairfield Greenwich Ltd.*, 728 F. Supp. 2d 372, 461 (S.D.N.Y. 2010) (dismissing vicarious-liability claim against PwCIL and explaining that "allegations of generalized control are insufficient to state a plausible claim of coordinating-entity control over its member firms");  *Nuevo Mundo*, 2004 WL 112948, at *5 (concluding that a "bald assertion that an agency relationship existed between the defendants [including PwC U.S.] and their Peruvian affiliates" is insufficient to defeat a motion to dismiss).

### 2. Plaintiffs Do Not Adequately Plead That PwC U.S., PwC U.K. and PwCIL Are Alter Egos of One Another.

Similarly, as set forth in PwC U.K.'s memorandum, which is incorporated herein by reference, courts repeatedly have rejected the assertion that accounting firms affiliated through a global network constitute alter egos of one another or a single business entity.  *See, e.g.*, *Nuevo Mundo*, 2004 WL 112948, at *6-7 (rejecting assertion that PwC firms are alter egos of each other); *In re AM Int'l Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (rejecting argument that all Price Waterhouse firms were a single business entity); *see also Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods.*, No. Civ. A. 00-5965, 2005 WL 1365772, at *7 (D.N.J. June 8, 2005) (rejecting argument that global KPMG network constitutes single business entity).  The bare assertions in plaintiffs' Amending Petition compel the same conclusion.

Plaintiffs' "alter ego" claim essentially rests on three allegations.  *First*, plaintiffs

assert that the PwC network has unspecified "centralized accounting practices" and that the various PwC firms "share services". (Am. Pet. ¶ 29(d)). *Second*, plaintiffs allege that PwC U.K. described itself on its web site as "part of a much larger family of over 161,000 people in 154 countries in firms across PwC's global network". (*Id.* ¶ 29(h)). *Third*, plaintiffs allege that the current PwCIL chairman "became a partner in PwC-USA in 1985". (*Id.* ¶ 29(b).) As discussed above, plaintiffs also make generalized assertions that PwCIL exercises "control".

"Under Louisiana law, the factors to be considered to determine whether one entity is an alter ego of another or whether two entities are a 'single business enterprise'" include:

> "common ownership, directors and officers, employees, and offices; unified control; inadequate capitalization; noncompliance with corporate formalities; centralized accounting; unclear allocation of profits and losses between corporations; one corporation paying the salaries, expenses, or losses of another corporation; and the undocumented transfers of funds between entities".

*Jackson*, 615 F.3d at 587. Plaintiffs make no attempt to allege facts sufficient to satisfy those factors. Instead, plaintiffs' allegations merely describe a network of accounting firms: a network that includes separate partnerships, each composed of different partners and practicing accounting in different countries while sharing the rights to use the PwC name. Although PwCIL performs limited coordination functions, plaintiffs do not (and cannot) allege any facts to suggest that PwCIL coordinates the professional services the member firms provide to their clients, let alone that any coordination by PwCIL is so pervasive that the Court should effectively pierce the corporate veil across separate partnerships "in 154 countries" (Am. Pet. ¶ 29(h)). *See In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 335 (5th Cir. 2007).

The simple fact is that PwCIL has nothing to do with this dispute, is a separate legal entity from PwC U.K., and did not direct or control any of the actions by PwC U.K. at issue in this action. Plaintiffs have named PwCIL and PwC U.S. as defendants for the sole purpose of

trying to manufacture jurisdiction for this action in Louisiana, and to defeat diversity jurisdiction for removal of this action to federal court. This action as a whole should be dismissed for *forum non conveniens* in favor of Northern Ireland, and in the alternative the claims against PwCIL should be dismissed on numerous independent grounds.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against PwCIL with prejudice.

December 22, 2012

Respectfully submitted,

_____
Dane S. Ciolino, La. Bar No. 19311
DANE S. CIOLINO, LLC
18 Farnham Pl.
Metairie, LA 70005
(504) 834-8519
dane@daneciolino.com

Thomas G. Rafferty (*admitted pro hac vice*)
Antony L. Ryan  (*admitted pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
T: (212) 474-1000
F: (212) 474-3700

*Counsel for Defendant PricewaterhouseCoopers International Limited*