UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO | * | CIVIL ACTION NO. 12-CV-1445 |
| PARTNERSHIP III AND | * | |
| GEORGE J. NEWTON, III | * | |
|     Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE ENGELHARDT |
| | * | |
| NORTHERN BANK LIMITED AND | * | MAGISTRATE CHASEZ |
| PRICEWATERHOUSECOOPERS, LLP | * | |
|     Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * ************************

### REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL

Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), submit this reply memorandum in support of their Motion to Disqualify Counsel (the "Motion") with respect to Jones Walker, the law firm representing Defendant, PricewaterhouseCoopers, LLP ("PwC-USA"). The Louisiana Rules of Professional Conduct (the "Rules") prohibit Jones Walker's representation of PwC-USA in this proceeding as such representation creates a conflict under the Rules. Accordingly, Jones Walker should be disqualified from further representation of PwC-USA in this litigation.

### BACKGROUND

Since 2007, Jones Walker has represented Enta USA, LLC ("Enta") regarding legal matters which Jones Walker asserts have included contracting and licensing agreements and an intellectual property matter. Rec. Doc. 67, p. 3. Jones Walker's representation of Enta places Jones Walker in a position directly adverse to Mr. Newton with respect to Jones Walker's representation of PwC-USA in this action. Enta is a manager-managed limited liability company ("LLC"). *See* Enta Articles of Organization, attached hereto as Exhibit "A," Article III(A). Mr.

Newton is a manager and the Chairman of Enta.  *See* Declaration of George J. Newton, III, attached hereto as Exhibit "B," ¶¶ 3, 5; *see generally* Declaration of George "Buddy" Newton, IV, attached hereto as Exhibit "C."  A fifty-percent member of Enta is Newton Family Investments, L.L.C.  *See* Enta Initial Report, attached hereto as Exhibit "D."

Enta is integrally linked with the subject matter of this litigation.  First, Enta's genesis is from Seatem Attraction, Tickets (UK) Limited ("Seatem") and related businesses that were involved in the ticketing investments, lending activity, and other factual circumstances which constitute the basis of this litigation.  *See* Rec. Doc. 1-2, ¶¶ I, 1-10 (petition alleging business operations of Seatem, loan by Defendant Northern Bank Limited ("NBL") to Seatem, and relationship of Plaintiffs to loan made by NBL to Seatem); Exhibit B, ¶ 3.  Second, the ***Enta*** entities' business structure and operations are subjects described ubiquitously in the PwC accounting report at issue in this litigation.  *See* Accounting Report, attached hereto as Exhibit "E," pp. 6-7, 10-14, 17-19, 23, 25-26, 31, 39-40, 43-45, 47, 49, 51, 53, 57-58, 63, 63, 82, and Glossary Page; Exhibit B, ¶ 3.  Plaintiffs allege that PwC-USA is liable for damages resulting from the provision of this very same delayed and flawed accounting report in February 2010.  *See* Rec. Doc. 1-2, ¶¶ 17-29.  The accounting report at the center of this litigation describes in detail the ***Enta*** entities' role with respect to software development that supports Seatem's provision of information technology services and the Enta entities' relationship to Seatem.  *See* Exhibit E (previous pinpoint citations).  Thus, the numerous references in the accounting report to Enta entities result from Enta's important role with respect to the matters addressed in the report.

Enta first retained Jones Walker in May 2007.  *See* Exhibit B, ¶ 6; Exhibit C, ¶ 4.  Since that time, Jones Walker has continuously represented Enta and has continuously represented Mr.

Newton in his capacity as a principal of Enta, up until November 9, 2012, when Jones Walker purported to terminate its attorney-client relationship with Enta, subsequent to Jones Walker's filing on behalf of PwC-USA its opposition to Plaintiffs' Motion.  *See* Redacted Termination Letter, attached hereto as Exhibit "F"; Exhibit B, ¶ 6; Exhibit C, ¶ 4.  Since the inception of Jones Walker's representation of Enta, Jones Walker represented Mr. Newton regarding legal matters for which he sought advice with respect to Enta's business.  *See* Exhibit B, ¶ 7.  In his capacity as manager and Chairman of Enta, Mr. Newton attended meetings with Jones Walker attorneys with respect to Jones Walker's representation of Enta in various legal matters.  *Id.* ¶¶ 5, 8.  In May 2007, *Mr. Newton attended the very first meeting between Enta and Jones Walker attorneys*, and in that meeting, Mr. Newton thoroughly explained to the attorneys the business model and structure of Enta.  *Id.* ¶¶ 8-9.  Both Mr. Newton and his son, George "Buddy" Newton, IV—who is the Executive Vice President and General Manager of Enta—were present on behalf of Enta at that initial meeting.  *Id.* ¶¶ 8; Exhibit C, ¶ 5.  Since that initial meeting, Mr. Newton believed that Jones Walker attorneys were his attorneys.  Exhibit B, ¶ 7.

Neither Mr. Newton nor his son, Buddy, nor any other representative or agent of Enta, ever terminated the representation of Enta by Jones Walker which had begun in 2007.  *See* Exhibit B, ¶ 11; Exhibit C, ¶ 7.  Jones Walker never returned to Enta any of its files that were provided to Jones Walker with respect to Jones Walker's representation of Enta.  *Id.*  Jones Walker has regularly invoiced Enta for legal services allegedly performed on Enta's behalf from May 2007 through October 2012.  *See* Exhibit B, ¶ 13; Exhibit C, ¶ 9.  Jones Walker sent invoices to Enta requesting payment for legal services on September 19, 2007; July 26, 2007; January 8, 2008; April 8, 2011; and October 30, 2012.  *See id.*; Invoices, attached hereto as Exhibit "G."  The July 26, 2007 invoice refers to services performed for "clients," which

includes both Mr. Newton and his son.  *See* Exhibit G; Exhibit B, ¶ 13; Exhibit C, ¶ 9.  The invoice dated September 19, 2007 reflects Jones Walker's direct communication with Mr. Newton by name as "George Newton," with respect to Jones Walker's representation of Enta.  *See id.*

Over the years of Jones Walker's representation of Enta, both Mr. Newton and his son regularly communicated with Jones Walker concerning such representation.  *See* Exhibit B, ¶ 14; Exhibit C, ¶ 10.  For example, on March 2, 2011 and March 15, 2011, they communicated with Jones Walker concerning their participation in a conference call with Jones Walker regarding its legal representation of Enta.  *See id.*; Emails, attached hereto as Exhibit "H."  Thus, at the time Jones Walker allegedly undertook its representation of PwC-USA in this litigation in April 2012, Jones Walker represented Enta.  *See* Exhibit B, ¶ 11; Exhibit C, ¶ 7.[1]

In light of the relationship among Enta, Seatem, and the accounting report, confidential information obtained by Jones Walker through its representation of Enta and Mr. Newton has the significant potential for use against Mr. Newton and to the advantage of PwC-USA, who is alleged to bear responsibility for the accounting work underlying the report.  In connection with Mr. Newton and his son's engagement of Jones Walker to provide legal services to Enta, Mr. Newton and his son explained in detail to Jones Walker attorneys the business structure of Enta and its interaction with Seatem.  *See* Exhibit B, ¶¶ 8-9; Exhibit C, ¶ 6.  The information they provided to Jones Walker attorneys included, for example, information on the creation of Enta as a business entity, and licensing agreements between Seatem entities and Enta.  *See id.*  In seeking to obtain Jones Walker's representation of Enta, Mr. Newton and his son provided confidential

---

[1] The alleged "new representation" of August 2012 asserted by Andy P. St. Romain in his declaration in support of PwC-USA's opposition to Plaintiffs' Motion was not, in fact, a new representation of Enta.  Jones Walker has been Enta's counsel continuously since Enta initially retained Jones Walker in 2007.  *See* Exhibit B, ¶ 12; Exhibit C, ¶ 8.

information to Jones Walker concerning intimate details of Enta's business structure and operations.  *See id.*  The information provided to Jones Walker attorneys concerning Jones Walker's representation of Enta was and is of such a confidential character, and the relationship of Enta to PwC-USA with respect to the events underlying this litigation is of such an adverse nature, that such information in Jones Walker's possession could be used to the advantage of its current client, PwC-USA, and to the disadvantage of Plaintiffs.  *See* Exhibit B, ¶ 10.

     Mr. Newton raised the issue of Jones Walker's conflict of interest as soon as he had knowledge permitting him to do so.  Until recently, Mr. Newton did not express any concern over Jones Walker's representation of PwC-USA in this litigation because he did not know the identity of the law firm or attorneys representing PwC-USA until he inquired of undersigned counsel on September 20, 2012.  *See* Exhibit B, ¶ 15.  Upon being informed it was Jones Walker, Mr. Newton instructed undersigned counsel to immediately file Plaintiffs' Motion to Disqualify Counsel, which was done on September 26, 2012.  *See id.*  Likewise, until recently, Buddy did not express any concern over Jones Walker's representation of PwC-USA because he did not know this litigation existed until Andy St. Romain of Jones Walker contacted him on or about September 24, 2012 to request that he waive the conflict of interest.  *See* Exhibit C, ¶¶ 11-12.  At the time of Mr. St. Romain's telephone call, Buddy informed Mr. St. Romain that Buddy knew nothing about the above-captioned litigation.  *See id.* ¶ 12.  Buddy further informed Mr. St. Romain via email on October 1, 2012, that he would not sign Jones Walker's request for a waiver of the conflict of interest.  *See id.* ¶¶ 11-12; Email to Mr. St. Romain, attached hereto as Exhibit "I."[2]

---

[2] It is notable that, although Jones Walker knew as of October 1, 2012 that Enta would not waive the conflict of interest, it continued to represent both Enta and PwC-USA in this litigation concurrently until November 9, 2012

Jones Walker's internal documents that have been provided to Plaintiffs reflect that Jones Walker was capable of determining the nature of the conflict of interest prior to the filing of Plaintiffs' Motion.³  First, Jones Walker's internal documents reflect its knowledge of Enta's business, as Jones Walker states that Enta provides "consulting services and software licenses to universities, theatres and other venues that sell tickets to attend performances or planned events." *See* Documents in Response to Plaintiffs' Second Requests for Production, attached hereto as Exhibit "J," at JW-0021; Exhibit B, ¶ 4.  Second, Jones Walker's internal documents reveal that besides Enta, Jones Walker has represented other entities of which Mr. Newton is a principal, including Burrus Investment Group, Inc., which is related to co-Plaintiff BMPP3.  *See* Exhibit J, at JW-0005, JW-0023 (Jones Walker conflict check noting such representation); Exhibit B, ¶ 16.  To date, Jones Walker has not approached Mr. Newton or anyone at Burrus about waiving any conflicts in connection with that representation.  *See* Exhibit B, ¶ 16.  Thus, Jones Walker was aware of the conflict long before the filing of Plaintiffs' Motion, which belies PwC-USA's false assertion that Plaintiffs' Motion is merely a "ploy" or "strategic maneuver."  *See* Rec. Doc. 67, pp. 6, 8.⁴

Although Jones Walker purportedly attempted to obtain a waiver of the conflict of interest, no such waiver was ever obtained.  In a letter dated September 24, 2012, Mr. St. Romain, a partner at Jones Walker, requested that Mr. Newton's son, Buddy, agree on Enta's behalf to waive any conflict with respect to Jones Walker's representation of PwC-USA in this litigation.

---

when Jones Walker purported to terminate its representation of Enta, apparently belatedly deciding to choose one client over another to the latter's detriment.

³ Additionally, Mr. St. Romain is related to Buddy Newton by marriage, and as such, Mr. St. Romain has knowledge of the relationship among Mr. Newton, Buddy, and Enta.  *See* Exhibit C, ¶ 13.

⁴ Further controverting PwC-USA's assertion that Plaintiffs' Motion is a strategic maneuver is the fact that immediately after discovering the identity of counsel for PwC-USA, **_Mr. Newton_** specifically requested that undersigned counsel address the conflict of interest and that undersigned counsel file the Motion to Disqualify Counsel.  *See* Exhibit B, ¶ 15.

*See* Waiver Request Letter, attached hereto as Exhibit "K." When Mr. St. Romain contacted Buddy regarding the conflict, Buddy did ***not*** indicate that Enta had no problem with Jones Walker representing PwC-USA. *See* Exhibit C, ¶ 11. Mr. St. Romain's declaration to the contrary, submitted with PwC-USA's opposition to Plaintiffs' Motion, is untrue. *See id.* Buddy never stated to any attorney at Jones Walker that the conflict is acceptable to him or to Enta. *See id.* When Mr. St. Romain contacted Buddy, Buddy informed Mr. St. Romain that he needed to confer with his father, Mr. Newton, before potentially waiving any conflict as requested by Jones Walker. *See id.*[5] Moreover, although Mr. St. Romain's letter asserts that Enta agreed to waive the conflict, Buddy never signed the conflict waiver as requested in the letter, nor did he agree to do so. *See id.*

Subsequent to filing its opposition memorandum on November 6, 2012, Jones Walker sent a letter directed to Enta, care of Buddy Newton, purporting to terminate Jones Walker's attorney-client relationship with Enta. *See* Exhibit F. By way of that letter, which is dated November 9, 2012, Mr. St. Romain stated that "Jones Walker's representation of Enta on the above matter is terminated. As we have no other matters currently active for Enta or its officers or affiliates, the attorney-client relationship between us will cease (except for continuing obligations under the Rules of Professional Conduct) . . . .". *Id.* Thus, Jones Walker decided to terminate its "representation of Enta and any of its affiliates, principals, officers or directors." *Id.* In his letter, Mr. St. Romain falsely asserts that Buddy Newton "initially agreed verbally to" a waiver of the conflict of interest. *Id.*

---

[5] Jones Walker encouraged Buddy to carefully consider Jones Walker's waiver request. *See* Exhibit K ("[T]hese are issues that ENTA should consider for itself, and we encourage you to consult with independent legal counsel in connection with this waiver request before executing this letter.").

## LEGAL STANDARD

A motion to disqualify is a substantive motion affecting rights of parties. *Zichichi v. Jefferson Ambulatory Surgery Ctr., LLC*, No. 07-2774, 2008 WL 2859232, at *1 (E.D. La. July 22, 2008). The Fifth Circuit's approach to ethical issues entails a sensitivity to the prevention of conflicts of interest, under which approach a court "'is *obliged* to take measures against unethical conduct occurring in connection with any proceeding before it.'" *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299-300 (5th Cir. 2009) (emphasis in original). In exercising its duty to supervise the members of its bar, a federal court "must support 'the strong public interest in preserving client [confidences] in the integrity of the litigation process.'" *Warpar Mfg. Corp. v. Ashland Oil, Inc.*, 606 F. Supp. 852, 854 (N.D. Ohio 1984). An attorney "should preserve the confidences and secrets of his client and . . . should always avoid even the appearance of professional impropriety in so doing." *Gen. Elec. Co. v. Valeron Corp.*, 428 F. Supp. 68, 74 (E.D. Mich. 1977). To obtain disqualification, the client need only show that the attorney sought to be disqualified may have had access or opportunity to obtain confidential material. *Id.*

## LAW & ARGUMENT

**A.** **Jones Walker's representation of PwC-USA creates a conflict of interest that disqualifies Jones Walker from continued representation of PwC-USA.**

Jones Walker's representation of PwC-USA in this litigation is contrary to the Rules governing Jones Walker's conduct. Jones Walker has represented both Enta and Mr. Newton for years—since 2007. Mr. Newton and his son, Buddy, shared a large amount of confidential information concerning Enta's business with Jones Walker in connection with its representation of Enta. During the pendency of this litigation, Jones Walker simultaneously (1) has represented Mr. Newton in connection with Enta's business, ***and*** (2) has represented an entity, PwC-USA, which is directly adverse to Mr. Newton in this litigation. Such dual representation of Mr.

Newton and a party adverse to him constitutes a concurrent conflict of interest under Rule 1.7. *See* LA. R. PROF. COND. 1.7. Enta figures prominently in the accounting report for which PwC-USA is responsible, which report is one of the central issues in this litigation. There is a significant risk that Enta's confidential information that Jones Walker has obtained over the years in representing Enta could be used adversely to Enta and to the advantage of PwC-USA. *See* LA. R. PROF. COND. 1.6 (generally forbidding a lawyer from revealing information relating to the representation of a client). Due to such substantial confidentiality concerns, and the conflict of interest, Jones Walker should be disqualified from representing PwC-USA in this litigation.

The fact that legal representation of an organizational client does not necessarily entail representation of a principal of the organization has no application here. The identity of Jones Walker's client is a fact question:

> The existence of an attorney-client relationship is a question of fact to be determined by the district court. ***The test for determining whether an attorney-client relationship exists is a subjective one and hinges on the client's belief that he or she is consulting the lawyer in his professional capacity with the intention of seeking professional legal advice.***

*United States v. Edwards*, 39 F. Supp. 2d 716, 722 (M.D. La. 1999) (emphasis added). Mr. Newton subjectively believed that Jones Walker has represented him for years in connection with his management of Enta's business. *See* Exhibit B, ¶ 7. Furthermore, that belief was reasonable because Mr. Newton attended numerous meetings and participated in conference calls from 2007 to the present with respect to the running of his business; Jones Walker invoices have referred to Mr. Newton individually and as a "client"; and as revealed by Jones Walker's internal documents, its representation of Mr. Newton has spanned issues pertaining to other entities of which Mr. Newton is also a principal. *See* Exhibit B, ¶¶ 5, 7-8, 13-14, 16; Exhibit C, ¶¶ 9-10; Exhibit G; Exhibit H; Exhibit J, at JW-0005, 0023.

The law supports a finding that Jones Walker's representation was not limited solely to Enta, as an entity. Via its Local Rules, this Court has adopted the Rules of Professional Conduct of the Louisiana State Bar Association (LSBA). LR 83.2.3. Louisiana jurisprudence applying the Louisiana Rules contains a case on point, *Teel v. Teel*, 400 So. 2d 357 (La. App. 4th Cir. 1981). In *Teel*, the court, citing to LSBA ethical canons, recognized that a concurrent conflict of interest may arise when counsel's representation in a matter is adverse to a person who is a principal of an entity that counsel has previously represented. The court disqualified the attorney for the wife in a community property partition proceeding based upon the husband's allegation that the attorney had represented him personally and through his corporation. *Id.* at 357-58. Specifically, the largest portion of the community assets at issue consisted of ownership in the husband's corporation, the corporation's litigious rights, and the husband's litigious right against the corporation for salaries and damages owed. *Id.* at 358. The wife's attorney "was the attorney for the corporation during its existence and [was at the time] the attorney of record in the pending law suits." *Id.*

The conflict of interest that mandated disqualification in *Teel* is of the same type at issue with respect to Jones Walker's representation of PwC-USA, who is adverse to Mr. Newton. Just as in *Teel* counsel was directly adverse to the principal of a corporation that counsel had represented and represented at the time of the community partition proceeding, Jones Walker's representation of PwC-USA in this litigation is directly adverse to Mr. Newton, who is a manager of Enta, which Jones Walker has represented since 2007. Further still, in *Teel*, counsel's conflict of interest involved the representation of an entity whose assets were the subject of the partition proceeding to which the entity's principal was a party. Likewise, here, the conflict involves the representation of Enta, which is a central figure in the accounting report

for which PwC-USA is responsible, which report is a central subject of this litigation to which Enta's manager, Mr. Newton, is a party.

More recently, the court in *Edwards*, 39 F. Supp. 2d at 731, applied the Louisiana Rules in finding that the owners of closely held corporations reasonably believed that corporate counsel represented them personally, such that disqualification of corporate counsel was warranted. In *Edwards*, the United States moved to disqualify the defendant's counsel based on counsel's prior representation of co-defendants and their corporations. In assessing whether an attorney-client relationship existed between the co-defendants and the defendant's counsel, the court stated:

> As a general rule, an attorney for a corporation represents the corporation, and not its shareholders. The issue of attorney-client relationship becomes ***more complicated in the case of a small closely-held corporation with only a few shareholders or directors***. ***In such cases, the line between individual and corporate representation can become blurred***. ***The determination whether the attorney represented the individual of the small closely-held corporation is fact-intensive and must be considered on a case-by-case basis***.

*Id.* at 731-32 (emphasis added). Under the circumstances, the co-defendants' expectation of the existence of an attorney-client relationship was reasonable due to "[t]he nature and extent of" counsel's representation. *Id.* at 734, 740. Specifically, counsel's representation of a corporation formed to establish a riverboat gaming license and of a corporation formed with respect to video poker gaming required counsel's involvement with the owners of those corporations in order to accomplish the corporations' organizational objectives. *Id.* Just as attorney-client relationships existed in *Edwards*, here, Mr. Newton reasonably believed that Jones Walker attorneys represented his interests because in order for Enta to achieve its organizational objectives, Jones Walker was substantially involved with Mr. Newton personally.[6]

---

[6] *Concordia Partners, LLC v. Ward*, No. 12-138, 2012 WL 3229300 (D. Me. Aug. 6, 2012), which PwC-USA cites, is not persuasive. The court in *Ward* held strictly to the rule that a corporate entity is distinct from its shareholders, despite the fact that a court deciding a motion to disqualify must not exalt form over substance. *See Rosman v.*

Even if *arguendo* Jones Walker did not represent Mr. Newton personally, a concurrent conflict of interest exists under Rule 1.7(b) because "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." LA. R. PROF. COND. 1.7(b). Jones Walker's representation of PwC-USA is materially limited by Jones Walker's responsibilities to Enta, due to Enta's confidential information that was provided to Jones Walker and which is potentially implicated by the PwC accounting report at issue in this case.[7] Jones Walker's representation of PwC-USA violates the Rules, and Jones Walker should be disqualified.

**B.     Jones Walker's purported termination of its representation of Enta after filing its opposition to the Motion does not cure the concurrent conflict of interest.**

Jones Walker's recent belated decision to unilaterally cease its representation of Enta does not affect the conflict of interest created by Jones Walker's continuing representation of PwC-USA in this matter. First, even to the extent Mr. St. Romain's letter terminates the

---

*Shapiro*, 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987) (stating that two shareholders in closely held corporation reasonably believed that corporate counsel was their individual attorney, and it "would exalt form over substance" to find that the law firm only represented the corporation). Additionally, the *Ward* court's holding was alternatively based on the movant's failure to attempt to show specific prejudice that would result from continued representation by the law firm sought to be disqualified. *Ward*, 2012 WL 3229300, at *7. The court relied on the absence of an indication that the law firm's representation of the entities provided them access to any confidential information that would disadvantage the movant in the pending litigation. *Id.* In contrast, here, due to Jones Walker's having obtained confidential information concerning Enta's operations and structure, Plaintiffs would suffer harm to the extent PwC-USA, which is responsible for the accounting report, were to obtain any of this confidential information from Jones Walker concerning Enta.

[7] In its letter requesting that Enta waive the conflict, Jones Walker expressly recognized the existence of these concerns:

> In deciding whether to consent, you should consider how Jones Walker's representation of PwC US could or might affect the representation of ENTA. For example, clients that are asked to waive or consent to conflicts typically should consider whether there is any material risk that "their" attorney will be less zealous or eager on their behalf due to the conflict. Similarly, clients should consider whether there is any material risk that their confidential information will be used adversely to them due to the conflict.

Exhibit K.

attorney-client relationship between Jones Walker and Enta, this belated termination does not change the fact that a concurrent conflict of interest has existed during the pendency of this litigation, up until the purported termination date of November 9, 2012. Jones Walker alleges it began its representation of PwC-USA on or about May 4, 2012. Rec. Doc. 67-1, ¶ 3. Therefore, for more than six months, from May 4, 2012 until November 9, 2012, a concurrent conflict of interest existed. Jones Walker cannot cure the necessity of disqualification through disassociating itself from its client prior to a ruling on the Motion. *See Picker Int'l, Inc. v. Varian Assocs., Inc.*, 670 F. Supp. 1363, 1365-66 (N.D. Ohio 1987), *aff'd*, 869 F.2d 578 (Fed. Cir. 1989) (in case where merger of law firms placed post-merger firm in position adversarial to its current client, and the client was "well within its rights as a client" in refusing to waive the conflict, firm was not permitted to "drop [the] client like a hot potato, especially if it is in order to keep happy a far more lucrative client"). To hold otherwise would be to permit a law firm to "hang a sword of Damocles over a client: 'Consent! Or we will cease to represent you.'" *Id.* at 1367. Here, Jones Walker did just that. Enta chose not to waive the conflict as belatedly requested by Jones Walker, and Jones Walker responded by terminating its representation of Enta. Jones Walker's action does not retroactively eliminate the conflict that has existed during the pendency of this litigation. While PwC-USA accuses Plaintiffs of using a "litigation tactic" in filing their Motion to Disqualify Jones Walker, Jones Walker's unceremonious dropping of Enta as a client when it refused to consent to waive a conflict can be viewed as nothing else but.

Second, the termination of an attorney-client relationship does not end the duty of a law firm to its former client. Rule 1.9 provides, in pertinent part:

> A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

LA. R. PROF. COND. 1.9(c).  In representing Enta and Mr. Newton for several years, Jones Walker acquired confidential information pertaining to Enta's operations and business structure.[8]  Rule 1.9 forbids Jones Walker from revealing this information in the instant litigation, or from using the information to Enta's or Mr. Newton's disadvantage.  There is an excessive risk that Jones Walker will not be able to fulfill its Rule 1.9 obligations because the confidential information pertaining to Enta's operations and structure is a subject of the PwC accounting report.  Specifically, there is a likelihood that Jones Walker would have to reveal this information as it pertains to the accounting report, or at least use the information to the disadvantage of Enta and/or Mr. Newton.  As such, Jones Walker's purported termination letter does not cure the conflict or satisfy the requirements of Rule 1.9.

## CONCLUSION

For all of the foregoing reasons, this Court should grant Plaintiffs' Motion to Disqualify Counsel.

---

[8] On a related note, Jones Walker's representation of PwC-USA carries a significant potential to violate Jones Walker's obligation under Rule 1.6 not to reveal confidential information it obtained with respect to its prior representation of Enta and Mr. Newton.  *See* LA. R. PROF. COND. 1.6(a) (generally forbidding a lawyer from revealing information relating to the representation of a client).

Respectfully submitted,

*/s/Martha Y. Curtis*
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER**
 **KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS**
**BURRUS MORTGAGE PORTOFOLIO**
**PARTNERSHIP III AND GEORGE J. NEWTON III**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel of record through electronic mail this 27th day of November, 2012.

*/s/Martha Y. Curtis*
**MARTHA Y. CURTIS**