**EXHIBIT A**

# United States of America
# State of Louisiana

## Tom Schedler
### SECRETARY OF STATE

*As Secretary of State, of the State of Louisiana, I do hereby Certify that*

the attached document(s) of

**ENTA USA, L.L.C.**

are true and correct and are filed in the Louisiana Secretary of State's Office.

36339939K     ORIGF     12/20/2006     8 page(s)

In testimony whereof, I have hereunto set my hand and caused the Seal of my Office to be affixed at the City of Baton Rouge on,

September 26, 2012

*Secretary of State*

WEB 36339939K



Certificate ID: 10310369#GTL73
To validate this certificate, visit the following web site, go to **Commercial Division, Certificate Validation**, then follow the instructions displayed.
www.sos.louisiana.gov

# ARTICLES OF ORGANIZATION

## OF

## ENTA USA, L.L.C.

The undersigned hereby forms Enta USA, L.L.C. (the "Company") as a limited liability company in accordance with the laws of the State of Louisiana, including but not limited to Louisiana Revised Statute 12:1301, *et. seq.* (the "Louisiana Limited Liability Company Law"), and adopts the following Articles of Organization (the "Articles") of the Company:

### ARTICLE I
### Name

The name of the Company is "Enta USA, L.L.C."

### ARTICLE II
### Purpose

The purpose of the Company is to engage in any lawful activity for which limited liability companies may be formed under the Louisiana Limited Liability Company Law.

### ARTICLE III
### Management

A.   The Company shall be managed by two (2) managers (each, a "Manager") selected by the members of the Company (the "Members"). The initial Managers of the Company shall be George J. Newton III and Christopher D. Schott. Only the Managers shall have authority to act as a mandatary of the Company.

B.   Each Manager, individually, shall have the full and complete duty and right to manage and control, and, within his discretion, shall make all decisions and take any necessary or appropriate action in connection with the Company's business whether or not in the ordinary course of business. A Manager may, without obtaining the consent or approval of the Members, take the following actions if, as, and when he deems any such action to be necessary, appropriate or advisable, at the sole cost and expense of the Company and whether or not such actions are in the ordinary course of the Company's business:

29/12538/D/02                                    1

1. Purchase, acquire, sell, alienate, dation, lease, convey, exchange, option, agree to sell or buy, dispose of, manage, or operate all or any portion of the real or immovable property, personal or movable property, whether tangible, intangible, corporeal or incorporeal, whether located within or outside of the State of Louisiana, including all property now owned or hereafter acquired by the Company, whether now or in the future, for such consideration as the Manager may deem appropriate, including for cash, credit, a combination of both, an exchange of property rights, or in consideration for an interest in a corporation, joint venture, partnership, limited liability company or other legal entity (collectively "Entity") with such acts to contain such terms and conditions as he may deem necessary, proper and/or advisable;

2. Borrow any sum or sums of monies and incur obligations, whether secured or unsecured, from any bank, financial institution, corporation, person or other Entity, including, but not limited to, loans from the Members, the Manager or any affiliate thereof, and to guaranty or endorse the debts and obligations of any person or Entity, all to be on such terms and conditions and in such amounts and to contain such rates of interest and repayment terms as the Manager may deem necessary; from time to time make, execute and issue promissory notes and other negotiable or non-negotiable instruments, continuing guaranties or evidences of indebtedness, loan agreements and letters of credit, all to be on such terms and conditions and to contain such rates of interest and repayment terms as the Manager may deem necessary; and prepay, in whole or in part, refinance, increase, modify, consolidate or extend any debt, obligation, mortgage or other security device, on such terms as the Manager may deem necessary;

3. Assign, pledge, mortgage or grant security interests in or otherwise encumber all or any portion of the real or immovable, personal or movable or tangible or intangible property of the Company and execute and bind the Company (or any partnership wherein the Company is a general partner or limited partner or any limited liability company wherein the Company is a manager or member) on any mortgage, assignment, security agreement, financing statement, pledge or any other document creating such encumbrances to secure the obligations of the Company (or of any partnership wherein the Company is a general partner or limited partner or of any limited liability company wherein the Company is a manager or member) or any other person or Entity with such documents to contain the usual and customary security clauses, including without limitation a confession of judgment, consent to executory process, waiver of appraisal and pact de non alienando, all upon such terms and conditions as the Manager may deem proper;

4. Acquire and enter into any contract of insurance which the Manager deems necessary and proper for the protection of the Company, for the conservation of the Company's assets, or for any purpose convenient or beneficial to the Company;

5. Employ from time to time on behalf of the Company, individuals (including employees of the Members or Manager or any affiliate thereof) on such terms and for such compensation as the Manager shall determine (but not in an amount which would be considered unreasonable based upon the scope of an individual employee's duties and responsibilities);

6. Make decisions as to accounting principles and elections, whether for book or tax purposes (and such decisions may be different for each purpose);

7. Open checking and savings accounts, in banks or similar financial institutions, in the name of the Company, and deposit cash in and withdraw cash from such accounts;

8. Set up or modify record keeping, billing and accounts payable accounting systems;

9. Adjust, arbitrate, compromise, sue or defend, abandon, or otherwise deal with and settle any and all claims in favor of or against the Company, as the Manager shall, in his sole discretion, deem proper;

10. Enter into, make, perform and carry out all types of contracts, leases, and other agreements, and amend, extend, or modify any contract, lease, or agreement at any time entered into by the Company;

11. Execute, on behalf of and in the name of the Company, any and all contracts, leases, agreements, instruments, notes, certificates, titles or other documents of any kind or nature as deemed necessary and desirable by the Manager;

12. Enter into joint ventures, partnerships or limited liability companies or other Entities on behalf of the Company, cause the Company to become a shareholder in a corporation, a member in a limited liability company, a partner in a partnership (general and limited), and act on behalf of the Company as a shareholder, partner, member or manager and execute any and all acts and agreements in connection therewith, all upon such terms and conditions as the Manager may deem appropriate;

13. Consent to any merger, reorganization or combination of the Company with any other Entity on such terms and conditions as the Manager may deem appropriate;

14. Qualify the Company to do business in any state or locality; establish a place of business and designate a registered agent in such state or locality, and execute such documents as may be necessary for such qualification; and

15. Do all acts necessary or desirable to carry out the business for which the Company is formed or which may facilitate the Manager's exercise of his powers hereunder.

C. Every contract, deed, mortgage, assignment, pledge, act of sale or exchange, servitude, easement, lease and other contract or instrument executed by a Manager shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of the delivery thereof (a) the Company was in existence, (b) these Articles had not been amended in any manner so as to restrict the delegation of authority to the Managers, and (c) the execution and delivery of such instrument was duly authorized by the Managers and the Members of the Company.

D.	In accordance with Louisiana Revised Statute 12:1305(C)(5), each Manager shall be a certifying official of the Company and any person may always rely on a certificate signed by any one of the Managers hereunder, certifying on behalf of the Company: as to the identity of the Members of the Company; as to the existence or non-existence of any fact which constitutes a condition precedent to acts by a Manager or in any other manner germane to the affairs of the Company; as to who is authorized to execute and deliver any instrument or document on behalf of the Company, including, but not limited to, the authority to take the actions referred to in Louisiana Revised Statute 12:1318(B); as to the authenticity of any copy of the Articles, any operating agreement, and respective amendments thereto and any other document relating to the conduct of the affairs of the Company; or as to any act or failure to act by the Company or as to any other matter whatsoever involving the Company or the Members in the capacity as Members of the Company.

E.	The authority of the Managers contained in this Article is irrevocable unless and until an amendment by private act, duly acknowledged, is recorded in the office of the Louisiana Secretary of State. Any person or Entity dealing with a Manager and/or the Company is entitled to rely on the provisions of this Article, and a change in the Managers of the Company shall not be binding upon third parties until these Articles are amended to reflect the change, and such amendment is filed with the Louisiana Secretary of State.

F.	Notwithstanding the foregoing provisions, the Company may be dissolved and wound up and/or these Articles amended only upon the consent of the Members of the Company.

## ARTICLE IV
### Operating Agreement

The affairs of the Company shall be governed by the terms of an operating agreement (the "Operating Agreement"), which Operating Agreement shall be entered into by the Members of the Company, and shall reflect the agreements of the Members of the Company as to the operations of the Company.

## ARTICLE V
### Indefinite Term

The Company is entered into for an indefinite term.

## ARTICLE VI
### Limitation of Liability

The Members and the Managers of the Company shall have the benefit of all of the privileges, immunities, and limitations of liability provided in the Louisiana Limited Liability Company Law, including, but not limited to, the elimination of liability and the indemnification provided for in Louisiana Revised Statute 12:1315, as it may be amended from time to time.

29/12538/D/02					4

## ARTICLE VII
### Indemnification

The Company shall indemnify and hold harmless the Organizer of the Company from and against any loss, cost or expense (including attorneys' fees and costs) in connection with the organization of the Company.

**THUS DONE AND SIGNED** on this 20th day of December, 2006.

ORGANIZER:

_____
Christopher D. Schott

## ACKNOWLEDGMENT

**STATE OF LOUISIANA**

**ORLEANS PARISH**

BEFORE ME, the undersigned Notary Public, on this day personally appeared **Christopher D. Schott**, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the foregoing instrument for the purposes and consideration therein expressed, and as his free act and deed.

Given under my hand and seal of office this 20th day of December, 2006.

NOTARY PUBLIC
JORDAN B. MONSOUR
NOTARY PUBLIC
State of Louisiana, Bar Roll # 27012
My Commission is for life.

29/12538/D/02



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III AND GEORGE J. NEWTON, III<br>Plaintiffs | * * * * * | CIVIL ACTION NO. 12-CV-1445 |
| VERSUS | * * | JUDGE ENGELHARDT |
| NORTHERN BANK LIMITED AND PRICEWATERHOUSECOOPERS, LLP<br>Defendants | * * * * | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## 28 U.S.C. § 1746 DECLARATION OF GEORGE J. NEWTON, III

1. My name is George J. Newton, III.

2. I am a person of full age and majority. I have personal knowledge of the facts stated herein.

3. I am a manager of Enta USA, LLC ("Enta"), among other entities. Enta's genesis is from Seatem Attraction, Tickets (UK) Limited ("Seatem") and related businesses that were involved in the ticketing investments, lending activity, and other factual circumstances which constitute the basis of the above-captioned litigation. The accounting report that is a subject of this litigation contains numerous references to Enta entities because of Enta's important role with respect to the matters addressed in the accounting report. *See, e.g.*, report at pp. 10-14, attached to reply memorandum in support of Motion to Disqualify Counsel.

4. Jones Walker's internal documents that have been provided reflect their knowledge of Enta's business, as Jones Walker states that Enta provides "consulting services and software licenses to universities, theatres and other venues that sell tickets to attend performances or planned events." *See* JW-0021, attached to reply memorandum in support of Motion to Disqualify Counsel.

5. In the past, I have been the Chairman of Enta, Seatem, and various other entities. My managerial role with respect to each of these entities essentially has been the same.

6. Enta first retained the Jones Walker law firm in May 2007. Since that time, Jones Walker has continuously represented Enta and has continuously represented me in my capacity as a principal of Enta, up until November 9, 2012, when Jones Walker purported to terminate its attorney-client relationship with Enta, subsequent to Jones Walker's filing on behalf of Defendant, PricewaterhouseCoopers, LLP ("PwC-USA"), an opposition to Plaintiffs' Motion to Disqualify Counsel on November 6, 2012 (Rec. Doc. 45) in the above-captioned litigation. *See* redacted termination letter, attached to reply memorandum in support of Motion to Disqualify Counsel.

7. Since May 2007, Jones Walker has represented me regarding legal matters for which I sought advice with respect to Enta's business. I believed that Jones Walker attorneys were my attorneys.

8. In my capacity as manager and Chairman of Enta, I have attended meetings with Jones Walker attorneys with respect to Jones Walker's representation of Enta in various legal matters. In May 2007, I attended the very first meeting between Enta and attorneys at Jones Walker, and in that meeting, I thoroughly explained to Jones Walker attorneys the business model and structure of Enta. Both my son, George "Buddy" Newton, IV, and I were present on behalf of Enta at that initial meeting with Jones Walker attorneys.

9. In connection with Buddy and I's engagement of Jones Walker to provide legal services to Enta, Buddy and I explained in detail to Jones Walker attorneys the business structure of Enta and its interaction with Seatem. The information we provided to Jones Walker attorneys included, for example, information on the creation of Enta as a business entity, and

2

licensing agreements between Seatem entities and Enta. In seeking to obtain Jones Walker's representation of Enta, Buddy and I provided confidential information to Jones Walker concerning intimate details of Enta's business structure and operations.

10. The information that Buddy and I have provided to Jones Walker attorneys concerning Jones Walker's representation of Enta was and is of such a confidential character, and the relationship of Enta to PwC-USA with respect to the events underlying this litigation is of such an adverse nature, that such information in Jones Walker's possession could be used to the advantage of its client, PwC-USA, and to the disadvantage of Plaintiffs in this litigation.

11. Neither Buddy nor I, nor any other representative or agent of Enta, ever terminated the representation of Enta by Jones Walker. Jones Walker has never returned to Enta any of its files that were provided to Jones Walker with respect to Jones Walker's representation of Enta. At the time Jones Walker allegedly undertook its representation of PwC-USA in April 2012, Jones Walker *did* represent Enta.

12. The alleged "new representation" of August 2012 asserted by Andy P. St. Romain in his declaration in support of PwC-USA's opposition to Plaintiffs' Motion to Disqualify Counsel was not, in fact, a new representation of Enta. Jones Walker has been Enta's counsel since Enta initially retained Jones Walker in 2007.

13. Jones Walker has regularly invoiced Enta for legal services allegedly performed on Enta's behalf from May 2007 through October 2012. As examples of the provision of such legal services, attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify Counsel are true and correct copies of invoices sent from Jones Walker to Enta, dated September 19, 2007; July 26, 2007; January 8, 2008; April 8, 2011; and October 30, 2012. By virtue of my personal knowledge as Chairman and as a manager of Enta, concerning

3

Enta's engagement of Jones Walker to provide legal representation of Enta, I attest that the reference in the invoice dated July 26, 2007 to services performed for "clients" includes both Buddy and me. Moreover, the invoice dated September 19, 2007, reflects Jones Walker's direct communication with me by name as "George Newton," with respect to Jones Walker's representation of Enta.

14. Throughout the course of Jones Walker's years of representation of Enta, both Buddy and I regularly communicated with Jones Walker concerning such representation. For example, attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify Counsel are true and correct copies of electronic mail messages dated March 2, 2011 and March 15, 2011, concerning my participation in a conference call with Jones Walker regarding its legal representation of Enta.

15. Until recently, I did not express any concern over Jones Walker's representation of PwC-USA in the above-captioned litigation because I did not know the identity of the law firm or attorneys representing PwC-USA in this litigation until I inquired of my counsel on September 20, 2012. Upon being informed it was Jones Walker, I instructed my counsel to immediately file Plaintiffs' Motion to Disqualify Counsel, which was done on September 26, 2012.

16. Besides Enta, Jones Walker has represented other entities of which I am principal, including Burrus Investment Group, Inc., which is also related to co-plaintiff Burrus Mortgage Portfolio Partnership III. *See* conflict check performed by Jones Walker, noting representation at JW-0005, JW-0023, attached to reply memorandum in support of Motion to Disqualify Counsel. To date, Jones Walker has not approached me or anyone at Burrus about waiving any conflicts in connection with that representation.

4

17. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of November, 2012.

_____
GEORGE J. NEWTON, III



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III AND GEORGE J. NEWTON, III  Plaintiffs | * * * * * | CIVIL ACTION NO. 12-CV-1445 |
| VERSUS | * * | JUDGE ENGELHARDT |
| NORTHERN BANK LIMITED AND PRICEWATERHOUSECOOPERS, LLP  Defendants | * * * * | MAGISTRATE CHASEZ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### 28 U.S.C. § 1746 DECLARATION OF GEORGE "BUDDY" NEWTON, IV

1. My name is George "Buddy" Newton, IV.

2. I am a person of full age and majority. I have personal knowledge of the facts stated herein.

3. I am the Executive Vice President and General Manager of Enta USA, LLC ("Enta").

4. Enta first retained the Jones Walker law firm in May 2007. Since that time, Jones Walker has continuously represented Enta up until November 9, 2012, when Jones Walker purported to terminate its attorney-client relationship with Enta. *See* redacted termination letter, attached to reply memorandum in support of Motion to Disqualify Counsel.

5. In my capacity as Executive Vice President and General Manager of Enta, I have attended meetings with Jones Walker attorneys with respect to Jones Walker's representation of Enta in various legal matters. In May 2007, I attended the very first meeting between Enta and attorneys at Jones Walker. Both my father, George J. Newton, III, and I were present on behalf of Enta at that initial meeting with Jones Walker attorneys.

6. In connection with my father and I's engagement of Jones Walker to provide legal services to Enta, my father and I explained in detail to Jones Walker attorneys the business structure of

Enta. The information we provided to Jones Walker attorneys included, for example, information on the creation of Enta as a business entity, and licensing agreements between Seatem Attraction, Tickets (UK) Limited ("Seatem") entities and Enta. In seeking to obtain Jones Walker's representation of Enta, my father and I provided confidential information to Jones Walker concerning intimate details of Enta's business structure and operations.

7. Neither my father nor I, nor any other representative or agent of Enta, ever terminated the representation of Enta by Jones Walker. Jones Walker has never returned to Enta any of its files that were provided to Jones Walker with respect to Jones Walker's representation of Enta. At the time Jones Walker allegedly undertook its representation of PricewaterhouseCoopers, LLP ("PwC-USA") in April 2012, Jones Walker *did* represent Enta.

8. The alleged "new representation" of Enta in August 2012 asserted by Andy P. St. Romain in his declaration in support of PwC-USA's opposition to Plaintiffs' Motion to Disqualify Counsel (Rec. Doc. 45) was not, in fact, a new representation of Enta. Jones Walker has been Enta's counsel since Enta initially retained Jones Walker in 2007.

9. Jones Walker has regularly invoiced Enta for legal services allegedly performed on Enta's behalf from May 2007 through October 2012. As examples of the provision of such legal services, attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify Counsel are true and correct copies of invoices sent from Jones Walker to Enta, dated September 19, 2007; July 26, 2007; January 8, 2008; April 8, 2011; and October 30, 2012. By virtue of my personal knowledge as Executive Vice President and General Manager of Enta, concerning Enta's engagement of Jones Walker to provide legal representation to Enta, I attest that the reference in the invoice dated July 26, 2007 to services performed for

"clients" includes both my father and me. Moreover, the invoice dated September 19, 2007, reflects Jones Walker's direct communication with my father, identified by name in the invoice as "George Newton," with respect to Jones Walker's representation of Enta. Further, in March 2011, Ben Maroney of Jones Walker communicated with me with respect to Enta's legal consultation with Jones Walker.

10. Throughout the course of Jones Walker's years of representation of Enta, both my father and I regularly communicated with Jones Walker concerning such representation. For example, attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify Counsel are true and correct copies of electronic mail messages dated March 2, 2011 and March 15, 2011, concerning my father's and my participation in a conference call with Jones Walker regarding its legal representation of Enta.

11. When Mr. St. Romain contacted me regarding the conflict of interest in the above-captioned litigation on or about September 24, 2012, I did *not* indicate that Enta had no problem with Jones Walker representing PwC-USA in the above-captioned litigation. Mr. St. Romain's declaration, submitted with PwC-USA's opposition to Plaintiffs' Motion to Disqualify Counsel, to the contrary is untrue. I never stated to any attorney at Jones Walker that the conflict of interest created by Jones Walker's representation of PwC-USA in the above-captioned matter is acceptable to me or to Enta. When Mr. St. Romain contacted me, I informed him that I needed to confer with my father before potentially waiving any conflict of interest as requested by Jones Walker. A true and correct copy of Mr. St. Romain's September 24, 2012 letter to me requesting that I waive the conflict of interest on Enta's behalf is attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify

3

Counsel. I never signed the conflict of interest waiver as requested in that letter, and the letter is wrong where it claims that I had agreed to do so.

12. Until recently, I did not express any concern over Jones Walker's representation of PwC-USA in the above-captioned litigation because I did not know such litigation existed until Mr. St. Romain contacted me to request that I waive the conflict of interest on or about September 24, 2012. At the time of Mr. St. Romain's telephone call, I informed Mr. St. Romain that I knew nothing about the above-captioned litigation. I further informed Mr. St. Romain via electronic mail message on October 1, 2012, a true and correct copy of which is attached to the reply memorandum in support of Plaintiffs' Motion to Disqualify Counsel, that I would not sign Jones Walker's request for a waiver of the conflict of interest.

13. Mr. St. Romain is my wife's cousin, and as such, he has knowledge of the relationship among my father, Enta, and I.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of November, 2012.

GEORGE "BUDDY" NEWTON, IV
NOVEMBER 13, 2012

4



DEC-20-2006 WED 03:26 PM PREMIER
Dec 20 2006 14:31
FAX NO. 214
P. 08



# INITIAL REPORT
## BY
## ENTA USA, L.L.C.

**STATE OF LOUISIANA**

**ORLEANS PARISH**

TO: The Secretary of State of Louisiana, Corporations Department
Baton Rouge, Louisiana

Complying with Louisiana Revised Statute 12:1305, Enta USA, L.L.C. (the "Company") hereby makes its initial report as follows:

Location and Municipal Address of Registered Office of the Company:

   401 Veterans Blvd., #102
   Metairie, Louisiana 70005

Name and Municipal Address of Registered Agent of the Company:

   **Christopher D. Schott**
   401 Veterans Blvd., #102
   Metairie, Louisiana 70005

Names and Municipal Addresses of the First Managers of the Company:

   **Christopher D. Schott**       George J. Newton III
   401 Veterans Blvd., #102        401 Veterans Blvd., #102
   Metairie, Louisiana 70005       Metairie, Louisiana 70005

Names and Municipal Addresses of the First Members of the Company:

   **David R. Burrus (50%)**       Newton Family Investments, L.L.C. (50%)
   401 Veterans Blvd., #102        401 Veterans Blvd., #102
   Metairie, Louisiana 70005       Metairie, Louisiana 70005

SIGNED, this 20th day of December, 2006, at New Orleans, Louisiana.

                                ORGANIZER:

                                _____
                                Christopher D. Schott

29/12538/D/02

## AFFIDAVIT OF ACCEPTANCE OF APPOINTMENT BY DESIGNATED REGISTERED AGENT
### Louisiana Revised Statute 12:1305

**STATE OF LOUISIANA**

**ORLEANS PARISH**

TO:    The Secretary of State of Louisiana, Corporations Department
Baton Rouge, Louisiana

       On this 20th day of December, 2006, before me, a Notary Public in and for the State and Parish aforesaid, personally came and appeared **Christopher D. Schott**, who is to me known to be such person, and who, being duly sworn, acknowledged to me that on behalf of Enta USA, L.L.C., he does hereby accept appointment as the Registered Agent of Enta USA, L.L.C., which is a domestic limited liability company authorized to transact business in the State of Louisiana pursuant to the provisions of the Title 12, Chapter 22, of the Louisiana Revised Statutes 1950, as revised and codified by Acts 1992, No. 780, Legislature of Louisiana, as they may be amended from time to time.

**REGISTERED AGENT:**

_____
Christopher D. Schott

Subscribed and sworn to before me,
on this 20th day of December, 2006.

_____
NOTARY PUBLIC
JORDAN B. MONSOUR
NOTARY PUBLIC
State of Louisiana, Bar Roll # 27012
My Commission is for life.

29/12538/D/02