UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO | * | CIVIL ACTION NO. 12-CV-1445 |
| PARTNERSHIP III AND | * | |
| GEORGE J. NEWTON, III | * | |
| Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE ENGELHARDT |
| | * | |
| NORTHERN BANK LIMITED AND | * | MAGISTRATE CHASEZ |
| PRICEWATERHOUSECOOPERS, LLP | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>MEMORANDUM IN OPPOSITION TO DEFENDANT PWC-USA'S MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), submit this memorandum in opposition to Defendant PricewaterhouseCoopers, LLP ("PwC-USA")'s Rule 56 Motion for Summary Judgment. For the following reason, this Court should deny the Motion:

- The Motion is Moot or will shortly be moot following the Court's ruling on plaintiffs' pending Motion to Remand (*see* R. Doc. 13);

- The Motion is premature until this Court determines:

  - whether PWC-USA is a part of the single business enterprise better known as PricewaterhouseCoopers ("PWC"); and

  - whether Louisiana law applies to Plaintiffs' claims against PWC-USA;

- Each of these prematurity issues will require discovery and then fact intensive analysis by this Court.[1]

---

[1] In support of their position, non-movant/Plaintiffs submit the Rule 56(d) declaration of its counsel. *See* Exhibit A. In connection with the declaration, Plaintiffs ask that this Court continue the submission date for the instant motion for summary judgment to give Plaintiffs time to accomplish the outstanding discovery addressed in the declaration.

## BACKGROUND

Plaintiffs commenced this proceeding in the Louisiana state court system.  Rec. Doc. 1-2, at ¶ I.  Mr. Newton was a percentage owner and lender through BMPP3 of Seatem Attraction Tickets (UK) Limited ("Seatem").  *See id.*  Northern Bank Limited ("NBL") and Seatem entered into a loan agreement wherein NBL was to provide Seatem with working capital for its ticketing operations.  *Id.* at ¶ 1.  Due to the global credit crisis, NBL changed its methodology of extending credit to Seatem, requiring Mr. Newton to personally guarantee a loan.  *Id.* at ¶¶ 8-10.  NBL told Mr. Newton that it would not attempt to collect the guarantee.  *Id.* at ¶¶ 11-12.  Despite the fact that NBL asked Mr. Newton to sign the guarantee amidst promises of continued and increased financial support for Seatem, NBL curtailed its support of Seatem.  *Id.* at ¶ 15.  Furthermore, Mr. Newton's guarantee was signed in conjunction with a credit facility that expired in 2009 without any call having been made against the guarantee.  *Id.* at ¶ 16.  Despite NBL's representations and promises that it would not do so, NBL has been attempting to execute on Mr. Newton's personal guarantee, causing him damages.  *Id.* at ¶¶ 35, 39.

As a prerequisite to the transfer of funds in the loan agreement between NBL and Seatem, NBL required that PricewaterhouseCoopers ("PWC") produce a report on Seatem that explained its business operations.  *See id.* at ¶ 17.  PWC was appointed the first week in November 2009 and was to present a finalized report by December 5, 2009.  *See id.* at ¶ 19.  PWC's contractual engagement to perform the accountancy work was with Seatem "and associated companies, ('the Group')" through the Engagement Contract Letter.  *See* R. Doc. 1-6 (emphasis added).  "The Group" is an undefined phrase in the Engagement Letter Contract.[2]  *See id.*  PWC did not

---

[2] The Engagement Letter Contract does note, however, that the work to be conducted by PWC includes, without limitation: "a summary of the current intercompany debtor/creditor positions and transactions that occur between Group entities."  *See* R. Doc. 1-6.  It is undisputed that Plaintiffs are creditors of Seatem and, therefore, also

finalize its report until the last week in February 2010, however. *See id.* The delay in PWC's reporting and NBL's contemporaneous refusal to provide funds without a finalized PWC report resulted in the difficulties of declining sales revenue and attendant termination of supplier relationships with Seatem. *See id.* at ¶ 21.

The finalized PWC report was also severely flawed. *See id.* at ¶ 22. Notably, Plaintiffs did not receive a copy of the PWC report until <u>after</u> the present lawsuit was filed. The report was prepared by a junior accountant (one year qualified) who was ill equipped to evaluate this multi-million dollar complex international enterprise. *See id.* The junior accountant never even talked to any of the principals of Seatem, including, but not limited to Messrs. Rory Burns and Paul Burns. *See id.* This omission is even more egregious as the report, in its conclusions, referred to the views of Seatem's directors. *Id.* PWC never met with, interviewed, or sought access to Seatem's directors. *See id.* Moreover, PWC's partner responsible for the report had worked previously for NBL for a decade. *See id.*

BMPP3, which had been lending and investing capital in Seatem, eventually had to write off $20,718,096 as of calendar year 2010, which it reported in its 2010 taxes filed in 2011. BMPP3 lost the $20+ million as a direct result of NBL's and PWC's actions. *See id.* at ¶ 28. Therefore, Plaintiffs filed the instant lawsuit seeking the recovery of all damages they have suffered due to Defendants' wrongful acts, and a declaratory judgment that Mr. Newton's personal guarantee was void *ab initio* and/or that the guarantee does not attach to the newer credit facility. *Id.*, Prayer. It was not until after the filing of the lawsuit that Mr. Newton

---

creditors of the Group. Mr. Newton's 1.5 million Pounds Sterling individual guarantee to NBL "in respect of the Account and Liabilities of Seatem" dated April 27, 2009 is additional evidence of his relationship to "the Group." *See* Exhibit A.

received the business review engagement letter underlying the accountancy work that PWC performed for NBL.  Rec. Doc. 30-1 (Declaration of George J. Newton, III).

## LAW & ARGUMENT

**A.    The Motion for Summary Judgment is Moot or, in the Alternative, Will Shortly Be Moot Following the Court's Ruling on Plaintiffs' Pending Motion to Remand.**

Plaintiffs filed a Motion to Remand which currently is pending.  Rec. Doc. 13. Regardless of how the Court decides that motion, PwC-USA's Motion for Summary Judgment is moot.  The Court should rule on the issue of subject matter jurisdiction raised in Plaintiffs' Motion to Remand prior to any ruling on PwC-USA's motion for summary dismissal on the merits.[3]

Whatever ruling this Court issues regarding Plaintiffs' Motion to Remand, it may effectively dispose of PwC-USA's motion for summary judgment.  Although Plaintiffs submit that PwC-USA was properly joined, if the Court were to rule otherwise and deny the Motion to Remand, it would do so based upon a finding that PwC-USA was fraudulently joined and should be dismissed.[4]  *See Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 573 (5th Cir. 2004) (to remove on grounds of fraudulent joinder, the defendant must demonstrate that the plaintiff is unable to

---

[3] *See Smallwood v. Ill. Cent. R.R.*, 385 F.3d 568, 576 (5th Cir. 2004) ("When a defendant removes a case to federal court on a claim of improper joinder, the district court's first inquiry is whether the removing party has carried its heavy burden of proving that the joinder was improper. Indeed, until the removing party does so, the court does not have the authority to do more; it lacks the jurisdiction to dismiss the case on its merits. It must remand to the state court."); *Harden v. Field Mem'l Cmty. Hosp.*, 265 F. App'x 405, 408 (5th Cir. 2008) (holding that the district court did not err by first resolving its jurisdictional concerns by ruling on a motion to remand before ruling on plaintiff's Rule 41(a)(2) motion for voluntary dismissal); *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (quoting *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007)) (limiting scope of Supreme Court's statement that "a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits"); *Hodges v. Liggett Group Inc.*, 60 F. Supp. 2d 627, 628 (S.D. Tex. 1999) (exercising discretion to decide motion to remand first, such that "[a]ll other outstanding motions are therefore not reached"); *Atl. Ship Rigging Co. v. McLellan*, 288 F.2d 589, 591 (3d Cir. 1961) (where the court lacked subject matter jurisdiction, the court lacked the power to transfer the case to a different venue under 28 U.S.C. § 1406(a)).

[4] Of course, the question remains that if this Court finds that PWC-USA did not have a valid claim asserted against it in the original Petition, it must then determine if there is a valid claim against PWC-USA in the First Amended Petition.  If so, because leave was not required and file the First Amended Petition, this Court should then remand this case to state court for lack of diversity jurisdiction.

establish a cause of action against the non-diverse party in state court).  Moreover, Plaintiffs'

claims against Defendant NBL do not rely upon the engagement letter that PwC-USA cites as the

basis for summary dismissal.  If the Court grants Plaintiffs' Motion to Remand, obviously all

remaining motions in this case will be moot because the Court will not retain jurisdiction of the

case.

**B.**      **This Court Should Not Dismiss PWC-USA until It Is Determined that PWC-USA is Not a Part of the Single Business Enterprise Better Known as PWC.[5]**

Plaintiffs Petition, as amended, alleges that PWC-USA along with PWC-UK and PWC-

Int'l are solidarily liable members of the PWC global network of entities.  *See* R. Doc. 12.  The

PWC network, and not just a single PWC member entity, is alleged liable to Plaintiffs for the

deficient accountancy work upon which Plaintiffs have filed this lawsuit.  *See id.*  With PWC-

UK and PWC-Int'l having appeared in this proceeding approximately two (2) month ago, it

would be unjustly premature to grant summary dismissal of PWC-USA before all the parties

have had the fair opportunity to engage in single business enterprise/alter ego-related discovery.

Such discovery has not yet occurred in earnest.

In the two (2) months since PWC-UK and PWC-Int'l have appeared before this Court,

Plaintiffs issued interrogatories and requests for production of documents on the single business

enterprise issue.  Plaintiffs filed motions to compel against PWC-UK and PWC-Int'l, which

Magistrate Judge Chasez has stayed pending this Court's ruling on Plaintiffs' Motion to Remand.

*See* R. Docs. 112 and 114.  Plaintiffs have been able to depose only two PWC-USA employees

for the limited purpose of examining them on their declarations in support of PWC-USA's

dispositive motions.  *See* Exhibit B, for example, excepts of Depo. of J. Killian.  Within even

---

[5] PWC-USA seeks to be dismissed based on the contention that it was not a party to the Engagement Letter Contract but that PWC-UK was.  Plaintiffs' claims are not based upon the Contract but on the delay in the business review that PWC entities did.

that limited context, Plaintiffs have already discovered the following support for the theory that

PWC-USA, PWC-Int'l and PWC-UK should be treated by this Court as a single business

enterprise:

- To become a licensed member of the PWC network of entities, which PWC-USA is, a candidate must submit to the control of PWC-Intl such as to "abide by certain minimum requirements and standards that are set by PWC-Int'l" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 6-11);

- Those requirements, include, without limitation: "how we [PWC-USA] accept clients" and "how we [PWC-USA] perform work for our clients" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 12-18);

- PWC-Int'l also subjects its member entities, including PWC-USA, to governance under the PWC Code of Conduct (*see* Depo. Trans. of J. Killian at p. 18, *l.* 21-p. 19, *l.* 2);

- PWC-Int'l requires dues payments from its member entities, including PWC-USA (*see* Depo. Trans. of J. Killian at p. 19, *ll.* 8-16);

- PWC-Int'l provides various member services to PWC-USA, including, but not limited to: coordination of firm strategy and marketing (*see* Depo. Trans. of J. Killian at p. 19, *l.* 17-p. 20, *l.* 2);

- Several members of the PWC-USA leadership are on the board of directors of PWC-Int'l (*see* Depo. Trans. of J. Killian at p. 23, *l.* 2-p. 26, *l.* 9);

- PWC-Int'l maintains an office in the building in New York, NY that PWC-USA leases (*see* Depo. Trans. of J. Killian at p. 29, *ll.* 2-19);

- PWC-UK has provided services to PWC-USA (*see* Depo. Trans. of J. Killian at p. 31, *l.* 20-p. 32, *l.* 2).

This support mounts on top of the evidence Plaintiffs have already submitted as exhibits to their

Petition, as amended.  *See* R. Doc. 11.

Plaintiffs have further explained in their Motion to Remand that at all times relevant to

this proceeding, PWC-USA was a member of the single business enterprise that included PWC-

Int'l and PWC-UK, based upon the existence of common directors, officers, and employees

across members of the PWC global network; the sharing of information and services by members

of the network; the exertion of unified control by PWC-Int'l and the PWC global boards,

councils, and teams over subordinate global network members such as PWC-USA; and the

existence of centralized accounting practices across the PWC global network.   Additionally,

Plaintiffs explain how they thought that they were dealing with PWC-USA and were unaware of

any alleged distinction between PWC-USA and PWC-UK, which have the exact same names:

"PricewaterhouseCoopers, LLP."   For these reasons as well, this Court should deny the Motion

for Summary Judgment of PWC-USA as premature.

**C.**     **This Court Must Determine Whether Louisiana Law Applies to Plaintiffs' Claims against PWC-USA before Analyzing Plaintiffs' Claims under any Louisiana Revised Statute.**

PWC-USA also prematurely asks this Court to grant summary judgment in its favor

under Louisiana Revised Statutes 9:5604 or 37:109 "[a]ssuming Louisiana law were to apply to

Plaintiffs' cause of action."  R. Doc. 18-1 at pp. 6-7 (emphasis added).  However, PWC-USA has

also suggested in a separately pending motion to dismiss that the laws of Northern Ireland, and

not the laws of Louisiana, govern Plaintiffs' claims against PWC.  *See* R. Doc. 17.  Tellingly,

PWC-USA has not bothered to address how the laws of Northern Ireland conflict with Louisiana

Revised Statutes 9:5604 and 37:109.  Instead, it has simply cherry picked these two Louisiana

statutes as the unfair basis for this premature motion for summary judgment and ignored

substantive Northern Ireland law.  This Court may not make the assumption PWC-USA's motion

for summary judgment requires.   This Court must determine first whether subject matter

jurisdiction exists here, and only if it does, as a secondary issue, whether Louisiana laws such as 9:5604 and 37:109 apply to Plaintiffs' claims against PWC-USA or any other PWC entity.[6]

"Federal courts sitting in diversity," such as this one, "must apply the choice-of-laws provisions of the state in which they sit." *Cain v. Altec. Indus. Inc.*, 06-30619, 236 Fed. Appx. 965, 967 (5th Cir. 2007). Hence, this Court must apply Louisiana choice-of-law principles to determine which substantive laws will apply to Plaintiffs' claims against PWC, namely article 3515 *et seq.* of the Louisiana Civil Code. "An analysis under Articles 3515 . . . is <u>fact intensive</u>." In re *EDC Contr. Ins. Lit.*, 2005-1064 (La. App. 3 Cir. 2006), 931 So. 2d 462, 466 (emphasis added). Factors to be considered under article 3515 *et seq.* would include, for example:

- the relationship of each state to the parties and the dispute;

- the policies and needs of the interstate and international systems, including:

  - the policy of upholding the justified expectations of the parties; and

  - the policy of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.

*See* LA. CIV. CODE ANN. art. 3515 (2013). Hence, this Court may not simply "assume" that Louisiana statutes apply. Before this Court may entertain summary dismissal under either 9:5604 or 37:109, it must first determine the interaction amongst Louisiana law and Northern Ireland law that then undertake the fact-intensive Louisiana conflict-of-law analysis. Until same occurs, summary judgment under either statute is premature.

///

///

---

[6] Notably, as to prescription, even if the limited one-year prescriptive period applied, BMPP3 filed this suit in Louisiana state court on August 13, 2012, less than one year after it filed its 2010 federal taxes with the $20 million write-off.

D.      **Plaintiffs Expressly Adopt Their Arguments in Contemporaneously Filed Oppositions to Other Motions.**

Plaintiffs respectfully submit that the dispositive arguments raised in PwC-USA's Motion for Summary Judgment overlap with arguments raised by other defendants in other pending substantive motions.   Thus, under Federal Rule of Civil Procedure 10(c), Plaintiffs hereby expressly adopt by reference their arguments raised in their memoranda in opposition to such other motions, to the extent relevant to the issues raised in NBL's Motion to Dismiss:

- The Motion to Dismiss filed by PWC-USA (R. Doc. 17);

- The Motion to Dismiss filed by PwC-UK (R. Doc. 109); and

- The Motion to Dismiss filed by PwC-Int'l (R. Doc. 110).

<u>CONCLUSION</u>

For the foregoing reasons, the Court should deny PwC-USA's Motion to for Summary Judgment.

Respectfully submitted,

*/s/Martha Y. Curtis*
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER**
       **KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS**
**BURRUS MORTGAGE PORTOFOLIO**
**PARTNERSHIP III AND GEORGE J. NEWTON III**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the above and foregoing document has been served on all counsel of record through electronic mail this 15th day of January, 2013.

/s/Martha Y. Curtis
**MARTHA Y. CURTIS**