UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO | * | CIVIL ACTION NO. 12-CV-1445 |
| PARTNERSHIP III AND | * | |
| GEORGE J. NEWTON, III | * | |
| Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE ENGELHARDT |
| | * | |
| NORTHERN BANK LIMITED AND | * | MAGISTRATE CHASEZ |
| PRICEWATERHOUSECOOPERS, LLP | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## MEMORANDUM IN OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS, LLP ("PWC-UK")'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), submit this memorandum in opposition to PwC-UK's Motion to Dismiss (Rec. Doc. 109).  PwC-UK's Motion to Dismiss should be denied because:

- Plaintiffs have made a *prima facie* showing of personal jurisdiction over PwC-UK. Moreover, discovery as to personal jurisdiction and *forum non conveniens* is incomplete.[1]

- PwC-UK fails to demonstrate that the presumption in favor of Plaintiffs' choice of forum should be disregarded on grounds of *forum non conveniens*.  Specifically, concerns of the convenience of the parties and the interests of justice militate just as much, if not more, in favor of maintaining the Plaintiffs' choice of forum in Louisiana as they would in favor of dismissing this action in favor of non-filed litigation in the distant forum of Northern Ireland.

- Plaintiffs' First Amending Petition states a cognizable claim for relief against PwC-UK.

---

[1] Plaintiffs adopt by reference the arguments made in their Motion to Continue Submission Date on this motion filed contemporaneously with this pleading.

## INTRODUCTION

Although some of the events from which this action arises allegedly occurred in Northern Ireland, among other places, several crucial events underlying the litigation occurred in the United States, and more specifically, in Louisiana.  The litigation involves a loan made by Northern Bank Limited ("NBL") to Seatem Attraction, Tickets (UK) Limited ("Seatem), and that loan was guaranteed by Plaintiff, Mr. Newton.  Mr. Newton's claims include claims against NBL pertaining to the unenforceability of that guarantee, ***which Mr. Newton signed in Louisiana***, due to NBL's insistence.  Moreover, Seatem's ticketing operations involve providing exclusive deals to amusement parks and related recreational attractions, including Walt Disney World, in the United States.  Additionally, the accounting report that is also a central issue in this litigation contains connections to United States-based entities.  NBL contracted with one or more PricewaterhouseCoopers ("PwC") entities for the completion of the accounting report in connection with the loan made by NBL to Seatem.  That accounting report indicates that certain entities related to Seatem, including Enta entities, have principals domiciled in the United States, including Mr. Newton.[2]  Moreover, that accounting report shows that Mr. Newton is a ***principal of Seatem, at the top of Seatem's organizational chart***.[3]  The discussion in the report of Seatem's intellectual property, which is given its own separate section in the report, shows that important ticketing software is owned by United States shareholders of Seatem, more specifically, by a partnership registered in the United States; and that the license agreement regulating rights of use in the ticketing software is ***governed by the laws of Louisiana and of the***

---

[2]  *See* Rec. Doc. 117-2 (accounting report, previously submitted as exhibit in support of Motion to Disqualify Counsel).  In prior briefings to this Court, Plaintiffs described the relationship between Seatem, the Enta entities, and Mr. Newton.  *See* Rec. Doc. 117-1.
[3]  *See* Rec. Doc. 117-2, p. 10.

***United States***.[4]   However, to fully appreciate the relationship of the controversy to the United States, a brief overview of the litigation is necessary.

## BACKGROUND

Plaintiffs commenced this proceeding in the Louisiana state court system. Rec. Doc. 1-2, ¶ I.  Mr. Newton was a percentage owner and lender through BMPP3 of Seatem.  *See id.*  NBL and Seatem entered into a loan agreement wherein NBL was to provide Seatem with working capital for its ticketing operations.  *Id.* ¶ 1.  Due to the global credit crisis, NBL changed its methodology of extending credit to Seatem, requiring Mr. Newton to personally guarantee a loan. *Id.* ¶¶ 8-10.  NBL told Mr. Newton that it would not attempt to collect the guarantee.  *Id.* ¶¶ 11-12.  Despite the fact that NBL asked Mr. Newton to sign the guarantee amidst promises of continued and increased financial support for Seatem, NBL curtailed its support of Seatem.  *Id.* ¶ 15.  Furthermore, Mr. Newton's guarantee was signed in conjunction with a credit facility that expired in 2009 without any call having been made against the guarantee.  *Id.* ¶ 16.  Despite NBL's representations and promises that it would not do so, NBL has been attempting to execute on Mr. Newton's personal guarantee, causing him damages.  *Id.* ¶¶ 35, 39.

As a prerequisite to the transfer of funds in the loan agreement between NBL and Seatem, NBL required that PwC produce a report on Seatem that explained its business operations.  *See id.* at ¶ 17.  PwC was appointed the first week in November 2009 and was to present a finalized report by December 5, 2009.  *See id.* at ¶ 19.  However, PwC did not finalize its report until the last week in February 2010.  *See id.*  The delay in PwC's reporting and NBL's contemporaneous refusal to provide funds without a finalized PwC report resulted in the difficulties of declining sales revenue and attendant termination of supplier relationships with Seatem.  *See id.* at ¶ 21.

---

[4]  *See id.* p. 61.

The finalized PwC report was also severely flawed.  *See id.* at ¶ 22.  Notably, Plaintiffs did not receive a copy of the PwC report until after the present lawsuit was filed.  The report was prepared by a junior accountant (one year qualified) who was ill equipped to evaluate this multi-million dollar complex international enterprise.  *See id.*  The junior accountant never even talked to any of the principals of Seatem, including, but not limited to Messrs. Rory Burns and Paul Burns.  *See id.*  This omission is even more egregious as the report, in its conclusions, referred to the views of Seatem's directors.  *Id.*  PwC never met with, interviewed, or sought access to Seatem's directors.  *See id.*  Moreover, PwC's partner responsible for the report had worked previously for NBL for a decade.  *See id.*

BMPP3, which had been lending and investing capital in Seatem, eventually had to write off $20,718,096 as of calendar year 2010, which it reported in its 2010 taxes filed in 2011. BMPP3 lost the $20+ million as a direct result of the actions of both NBL and the PwC defendants.  *See id.* ¶ 28.  Therefore, Plaintiffs filed the instant lawsuit seeking the recovery of all damages they have suffered due to Defendants' wrongful acts, and a declaratory judgment that Mr. Newton's personal guarantee was void *ab initio* and/or that the guarantee does not attach to the newer credit facility.  *Id.*, Prayer.

Plaintiffs filed a First Amending Petition in which they named PwC-UK and PriceWaterhouseCoopers International Limited ("PwC-Int'l") as defendants.  *See* Rec. Doc. 12. PricewaterhouseCoopers, LLP ("PwC-USA") and PwC-UK are members of the PwC global network of firms under the control of PwC-Int'l.  *Id.* ¶ 62.  Notably, PwC-USA and PwC-UK share an identical name:  "PricewaterhouseCoopers, LLP."  The PwC global network, including PwC-USA, PwC-UK, and PwC-Int'l, operate as a single business entity.  At all relevant times, Plaintiffs believed they were dealing with PwC-USA and were unaware of any alleged

distinction between PwC-USA and PwC-UK, which both bear the same name.  *Id.* ¶ 63.  Thus, Plaintiffs' First Amending Petition asserts claims against PwC-UK, PwC-Int'l, and PwC-USA as defendants who are solidarily liable to Plaintiffs under contract and tort law.  *Id.* ¶ 65.  The location of the performance of the work on the PwC business review engagement is the subject of ongoing discovery.[5]

## **LAW & ARGUMENT**

**A.**   **Plaintiffs Have Made a *Prima Facie* Showing of Personal Jurisdiction, and Jurisdictional Discovery Is Incomplete.**

  **1.**   **Discovery as to personal jurisdiction is incomplete.**

PwC-UK improperly refused to cooperate in ***any*** discovery regarding personal jurisdiction, notwithstanding that it filed its Motion to Dismiss on December 21, 2012[6] on grounds of lack of personal jurisdiction.  PwC-UK maintains that Plaintiffs have failed to make a *prima facie* showing of jurisdiction, and thus no further discovery is warranted.  PwC-UK's stance is legally unsound.

The standard in this judicial circuit for the taking of discovery as to personal jurisdiction is as follows: If "plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's <u>right</u> to conduct jurisdictional <u>should</u> be sustained."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (emphasis added); *see also* 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, *Federal Practice & Procedure* § 1067.6 (3d ed. 2004) (noting that jurisdictional discovery can be obtained "when

---

[5]  In support of its Motion to Dismiss (Rec. Doc. 109), PwC-UK submitted the declaration of David Clements. However, because PwC-UK refused to make Mr. Clements available for deposition, Plaintiffs were required to file a motion to compel the deposition (Rec. Doc. 114), which is presently pending before Magistrate Judge Chasez, and which, as explained *infra*, is stayed pending this Court's ruling on Plaintiffs' Motion to Remand (Rec. Doc. 13).

[6]  PwC-UK was not one of the original defendants to this action, and Plaintiffs have never agreed that PwC-UK's Motion to Dismiss filed on December 21, 2012 be heard on January 23, 2013 without time to conduct any jurisdictional discovery.

there is <u>some</u> basis for believing that [it] would be fruitful") (emphasis added).  Federal appellate courts have found that this <u>right</u> triggers when "a party demonstrates that it can supplement its jurisdictional allegations through discovery."  *GTE New Media Serv., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000).  The Magistrate Judge has already sustained Plaintiffs' right to conduct jurisdictional discovery against both defendants PwC-USA and NBL.  *See* Rec. Docs. 62 & 108.  Two depositions of PwC-USA personnel have been taken, and depositions of NBL and its personnel are scheduled for January 23, 2013.

In a recent discovery opinion hinging on the single business enterprise theory of recovery, Judge Eldon E. Fallon held that the plaintiffs were "entitled" to conduct jurisdictional discovery against a foreign entity regarding its relationship with another defendant entity <u>before</u> the court could hear either defendant's motion to dismiss for lack of personal jurisdiction.  *In re Chinese-Mfr. Drywall Prod. Liab. Litig.*, No. 2009-MDL-2047, 2011 WL 5509221, *2-3 (E.D. La. Nov. 10, 2011).  Plaintiffs' complaint had alleged that defendant/Chinese drywall manufacturers named Taishan Gypsum Co. Ltd. ("Taishan") and Beijing New Building Materials ("BNBM") were sufficiently related that the contacts of one with Louisiana should be imputed to the other for purposes of a minimum contacts analysis for personal jurisdiction.  *Id.*  Taishan argued in response that plaintiffs had failed to allege with reasonable particularity the possible existence of personal jurisdiction contacts and, therefore, plaintiffs were not entitled to jurisdictional discovery because plaintiffs' claims should be dismissed.  *See id.*  The *Chinese Drywall* court rejected that argument, holding: "[plaintiffs were] <u>not</u> required to allege with reasonable particularity the possible existence of personal jurisdiction contacts . . . rather the relevant jurisprudence on the issue recognizes the Court's <u>broad discretion</u> in discovery matters."  *Id* (emphasis added).  The court concluded:

- 6 -

[plaintiffs were] <u>entitled</u> to obtain discovery regarding [Taishan's] relationship with [BNBM and other entities upstream and downstream to BNBM] because [plaintiffs] had alleged "with reasonable particularly [sic]" <u>the possible existence of facts sufficient to impute BNBM's forum contacts, if any, to [Taishan].</u>

*Id.* at *1 (emphasis added).

PwC-UK has impermissibly stonewalled Plaintiffs' discovery requests in a manner virtually identical to that of the Chinese drywall defendants in *Chinese Drywall*.  Like the *Chinese Drywall* defendants, PwC-UK's arguments against discovery hinge on its pending Motion to Dismiss for lack of personal jurisdiction.  PwC-UK's arguments fail under Judge Fallon's ruling as well as the liberal standard for jurisdictional discovery in this judicial circuit upon which Judge Fallon's opinion was based.  Like the plaintiffs of *Chinese Drywall*, Plaintiffs seek to obtain discovery regarding <u>the relationship amongst</u> PwC-UK and the other members of the PwC global network of entities, including, but not limited to, PwC-USA and PwC-Int'l.  The PwC defendants, including PwC-UK, have made the issue the centerpiece of their defense to Plaintiffs' claims against them.  Moreover, PwC-USA does not dispute that it has minimum contacts with Louisiana, nor could it, as its partners reside in Louisiana and it does significant work in Louisiana, including, but not limited to, being the leading accounting firm for the BP Class Action Settlement recently approved by District Judge Carl Barbier.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, E.D. La.

In a similar opinion, Judge Fallon rejected the defense to jurisdictional discovery that the plaintiff seeking such discovery must first make a *prima facie* case for either specific or general personal jurisdiction.  *See Blessey Marine Serv., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 651999, at *6 (E.D. La. Feb. 10, 2011).  Citing the Fifth Circuit's decision in *Fielding*, Judge Fallon reasoned that the proper standard requires a movant only to "present factual allegations

that <u>suggest</u> with reasonable particularity the <u>possible</u> existence of the requisite contacts." *See id.* at *5 (emphasis added).[7]  Plaintiffs have so done.

Plaintiffs have made several factual allegations suggesting with reasonable particularity the possible existence of PwC-UK's minimum contacts with Louisiana.   For example, Mr. Newton's claims arise out of his having signed the guarantee that is a central issue in this litigation ***in the forum state of Louisiana***.  *See* Exhibit A.  NBL induced Mr. Newton to sign the guarantee in connection with the loan to Seatem that is also a major issue in this litigation.  *See* Rec. Doc. 1-2, ¶¶ 1, 10.  In connection with that same loan, NBL contracted with PwC-UK to perform the business review engagement that is also a major issue in this litigation.  *Id.* ¶ 17. Plaintiffs have alleged that PwC-USA and PwC-UK are a single business enterprise.  Rec. Doc. 12.  Thus, any jurisdictional contacts of PwC-USA with Louisiana should be imputed to PwC-UK.  *See DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *4 (5th Cir. 2002) ("Where the parent corporation is merely the 'alter ego' of its subsidiary, a court can impute to the parent it[s] subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction.").

Moreover, Plaintiffs have made other factual allegations in their First Amending Petition that meet the standard for jurisdictional discovery.  PwC-USA and PwC-UK have the exact same name—PricewaterhouseCoopers, LLP—another fact suggesting the related nature of these entities that would justify imputation of PwC-USA's contacts to PwC-UK.  *See* Rec. Doc. 12, ¶ 29(a).  PwC-UK has promoted itself through the PwC website as "part of a much larger family of over 161,000 people in 154 countries in firms across PwC's global network," which also establishes with reasonable particularity a basis for the imputation of contacts.  *Id.* ¶ 29(h).

---

[7]  Further, Judge Fallon stated that "[t]he Fifth Circuit thus appears to have aligned itself with the other circuits that have established a comparatively lower bar for permitting jurisdictional discovery."  *Blessey Marine Servs.*, 2011 WL 651999, at *7.

Accordingly, PwC-UK should be required to respond to Plaintiffs' written discovery with respect to personal jurisdiction.

Additionally, PwC-UK is required to provide for the taking of depositions.  PwC-UK submitted the declarations of David Clements, David Scoffield, and Andrew Cope in support of its Motion to Dismiss.  Rec. Docs. 109-4, 109-5, & 109-6.  Thus, Plaintiffs should have the right to take the depositions of these affiants.  Further, to the extent PwC-UK argues that the deposition of Mr. Scoffield is objectionable because his declaration was made in support of a *forum non conveniens* argument, this is of no moment.[8]  Finally, PwC-UK should be compelled to provide a Rule 30(b)(6) designee to testify in accordance with the list of topics identified in Plaintiffs' deposition notice to PwC-UK concerning personal jurisdiction.

Importantly, the sole basis of PwC-UK's argument that the Court lacks general personal jurisdiction over it is the declaration of Andrew Cope.  Rec. Doc. 109-1, pp. 7-8.  However, PwC-UK essentially asks Plaintiffs and this Court to "take its word for it," without permitting Plaintiffs any discovery concerning veracity of same.  Indeed, one of the main reasons for permitting the taking of a deposition of an affiant such as Mr. Cope it to test the affiant's credibility, and to reveal the factual basis, if any, underlying his averments.[9]  PwC-UK has refused thus far to provide discovery concerning items that are at the heart of the inquiry as to general personal jurisdiction, including the following:

---

[8]  There is jurisprudential support for discovery in the context of *forum non conveniens* arguments.  *See, e.g.*, *In re Bridgestone/Firestone, Inc. ATX, ATX II & Wilderness Tires Products Liab. Litig.*, 131 F. Supp. 2d 1027, 1029-30 (S.D. Ind. 2001) ("[I]t behooves courts to permit discovery on facts relevant to forum non conveniens motions.").

[9]  *See, e.g.*, *Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) ("If issues of credibility are presented and must be resolved to determine an issue of fact material to the court's disposition of the motion to dismiss, it may be an abuse of discretion not to allow an opportunity for cross-examination of an affiant if requested."); *Randleman v. Fid. Nat. Title Ins. Co.*, 251 F.R.D. 281, 286 (N.D. Ohio 2008) (stating that plaintiffs were "free to depose some or all of the affiants," because "[e]ffective examination can uncover the extent to which someone other than the affiant 'framed' the statements in the affidavit . . . ."); *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *18 (S.D. Tex. Aug. 10, 2012) (in the context of conditional class certification, stating that because "[p]laintiffs have not had an opportunity to depose these declarants, it is inappropriate to afford significant weight to their substance").

- The percentages of revenues that PwC-UK has derived from its transactions dealing with persons or entities in ***Louisiana***;

- Information as to proposals, contracts, agreements, or other contractual relationships that PwC-UK has entered into with respect to ***Louisiana***;

- All business activities in ***Louisiana***, which are relevant to PwC-UK's continuous and systematic business presence in the forum state, including:

  o Maintaining any office, business address, or telephone number in ***Louisiana***;
  o Maintaining any corporate or business records in ***Louisiana***;
  o Making any business decisions in ***Louisiana***;
  o Maintaining or using any place of business in ***Louisiana***;
  o Possessing any license to do business in ***Louisiana***;
  o Having a registered agent for service of process in ***Louisiana***;
  o Having any personnel in ***Louisiana***, including any directors or managers;
  o Maintaining any customer/client accounts in ***Louisiana***; or
  o Having any contacts with any persons or entities in ***Louisiana***;

- Advertising in the United States;

- Travel of PwC-UK personnel to ***Louisiana*** for sales trips, meetings, negotiations, vendor or supplier visits, conventions, conferences, or other business engagements; and

- Assets and property of PwC-UK located in ***Louisiana***.[10]

Until PwC-UK responds to discovery at the heart of determining whether there are sufficient contacts to establish general personal jurisdiction, a ruling upon that issue would be premature. *See Italtrade Int'l, USA, L.L.C. v. Sri Lanka Cement Corp.*, No. 00-2458, 2002 WL 59399, at *3 (E.D. La. Jan. 15, 2002) (where no discovery had been conducted, and plaintiffs had not been afforded an opportunity to refute defendant's allegations relative to personal jurisdiction, deferring ruling to provide plaintiffs time to conduct discovery).   Furthermore, the limited discovery that Plaintiffs have been allowed to take from PwC-USA reveals that ***PwC-UK has provided services to PwC-USA within the United States***.   *See* Exhibit B, Depo. Trans. of J. Killian at p. 31, *l.* 20-p. 32, *l.* 2.

---

[10] *See* Rec. Doc. 114-3 (discovery served upon PwC-UK); *see also* Rec. Doc. 114-4 (correlative topics identified in Rule 30(b)(6) notice to PwC-UK).

Due to PwC-UK's refusal to participate in jurisdictional discovery, Plaintiffs filed a motion to compel. *See* Rec. Doc. 114.  Magistrate Judge Chasez held an expedited hearing on the motion to compel by telephone on January 14, 2013, after which she stayed the motion to compel pending this Court's ruling on Plaintiffs' Motion to Remand (Rec. Doc. 13).  Magistrate Chasez acknowledged that the current procedural posture is a matter of bad timing:   the confluence of the submission date noticed by the PwC defendants with respect to their motions to dismiss and the problem of inadequate time for the resolution of the discovery issues.[11]  Until the discovery issue is resolved, a hearing on the issue of personal jurisdiction is premature.

### 2.    PwC-USA's jurisdictional contacts should be imputed to PwC-UK.

Because PwC-USA and PwC-UK are part of a single business enterprise including member PwC firms, PwC-USA's jurisdictional contacts should be imputed to PwC-UK.[12]  PwC-USA does not dispute that it has minimum contacts with Louisiana, nor could it, as its partners reside in Louisiana and it does significant work in Louisiana, including, but not limited to, being the leading accounting firm for the BP Class Action Settlement recently approved by District Judge Carl Barbier.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, E.D. La.  Accordingly, to the extent PwC-USA's contacts are imputed to PwC-UK, PwC-UK is likewise subject to this Court's personal jurisdiction.

As mentioned previously, Plaintiffs have set forth in numerous prior briefings the basis for a finding that PwC-USA and PwC-UK are a single business enterprise ("SBE"), and

---

[11]    *See also* Plaintiffs' Motion to Continue Submission Date on Motions to Dismiss, which is being filed contemporaneously herewith, and which explains that a continuance of the submission date on the instant motion is necessary due to the timing in which PwC-UK filed its motion and its refusal to participate in jurisdictional discovery.

[12]    *See DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150 (5th Cir. 2002) ("Where the parent corporation is merely the 'alter ego' of its subsidiary, a court can impute to the parent it[s] subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction.").

Plaintiffs adopt these arguments by reference.   Moreover, in recently staying Magistrate

Chasez's order providing for SBE-related discovery from PwC-USA, the Court implied that such

discovery likely would be permissible after the Court rules on the pending Motion to Remand.[13]

Thus, in the interim period, a ruling concerning imputation of contacts to PwC-UK would be

premature.

PwC-UK sets forth no justifiable basis for disallowing this Court's consideration of facts

revealed through discovery that bear upon the SBE determination.   First, although PwC-UK

asserts that courts have uniformly rejected the SBE theory as to accounting firms, the rationale of

the cases cited by PwC-UK is not persuasive in *this* case, because PwC-UK's cited cases do not

apply Louisiana law and do not even purport to apply the single business enterprise doctrine, but

rather address agency, partnership, and other discrete areas of law.[14]   Although PwC-UK asserts

that the Louisiana law of SBE is the same as that of other states in that Louisiana corporate law

is similar to the corporate law of other states, the seminal Louisiana case of *Green v. Champion*

*Ins. Co.*, 577 So. 2d 249 (La. App. 1st Cir. 1991), indicated that SBE theory, while related to

corporate veil-piercing, is a distinct theory and that prior to *Green*, "the utilization of SBE theory

"to disregard the identities of a group of separate corporations . . . [had] not been specifically

---

[13]   Although this Court's Order pertained to Plaintiffs' claims against PwC-USA, the Court did not address the relevance of the SBE-related discovery to imputation of jurisdictional contacts.   Rec. Doc. 118.   Plaintiffs respectfully submit that regardless of the Court's ruling on the improper joinder argument, and the relevance of the SBE-related discovery to Plaintiffs' claims against PwC-USA, the discovery is necessary to resolve the personal jurisdiction issue vis-à-vis both PwC-UK and PwC-Int'l.

[14]   *See In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (not involving SBE theory, but rather whether PwC firms were agents of each other; court concluding that foreign PwC entities were not liable for securities fraud because of insufficient allegations of aiding and abetting of fraud); *Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03-0613, 2004 WL 112948, at *3-*8 (S.D.N.Y. Jan. 22, 2004) (granting motion to dismiss where plaintiffs failed to plead sufficient facts alleging a theory of vicarious liability under a theory of partnership, agency, or alter ego); *In re Royal Dutch/Shell Transp. Sec. Litig.*, 380 F. Supp. 2d 509, 571 (D.N.J. 2005) (in securities fraud case, citing other case law under general principles of agency, partnership, and concept of "single firm"); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, No. 00-5965, 2005 WL 1365772 (D.N.J. June 8, 2005) (finding that "one-firm" theory did not meet particularity requirements for pleading fraud under Rule 9(b) and under federal securities law).

addressed by [Louisiana] courts." *Id.* at 257.  Further, Judge Jane Triche-Milazzo recently found

the distinction between a general SBE/alter-ego analysis and a Louisiana law analysis to be a

distinction with a difference.  *See Melson v. Vista World Inc. & Assocs.*, No. 12-135, 2012 WL

6002680, at *4-*5 (E.D. La. Nov. 30, 2012) (for purpose of determining whether personal

jurisdiction existed due to imputation of contacts, Court would only apply the Louisiana *Green*

factors if jurisdiction were based on diversity of citizenship, but would apply a "distinct" Fifth

Circuit test in a federal question case).

PwC-UK, and the other named PwC defendants, would have the Court summarily

dismiss well-pleaded claims by recitation of a refrain from several cases about the separate

nature of accounting firms in a network, and by elevating that refrain to settled <u>common law</u>,

which has no place in Louisiana <u>civilian</u> theory, which this Court is *Erie*-bound to apply in this

removed case.  Such a characterization would defy the standard for federal notice pleading and

discovery.  As noted previously, where, as here, the plaintiffs have pleaded factual allegations of

the imputation of jurisdictional contacts with reasonable particularity, discovery as to the

propriety of such imputation is appropriate.  The suggestion by the PwC defendants that

American courts universally have held that accounting firms in a global network cannot be

treated as a single entity is clearly incorrect.  *See, e.g.*, *Teachers' Ret. Sys. of LA v. A.C.L.N.,*

*Ltd.*, No. 01-11814, 2003 WL 21058090, at *8-*9 (S.D.N.Y. May 12, 2003) (where plaintiff

supported assertion of unitary nature of accounting firm for purposes of personal jurisdiction by

referencing website and annual reports, and made the factual allegation that one accounting

entity operated through another entity, court would exercise personal jurisdiction over

defendant); *Koehler v. Bank of Bermuda, Ltd.*, No. 931745, 1994 WL 48825 (S.D.N.Y. Feb. 16,

1994) (finding personal jurisdiction based upon reference to promotional materials of related

banking entities, "which foster[ed] the perception of a unified network of banks acting as a single unit," and rejecting assertion of separate legal identity because banking entity could not "have it both ways"; "The promotional material is either a pack of lies, or factual admissions binding on the [banking entity]. I take the latter view.").

Additionally, the discovery thus far has revealed why the PwC entities' proposed sweeping characterization of accounting firms *as a matter of law* is *improper*:

- To become a licensed member of the PwC network of entities, which PwC-USA is, a candidate must submit to the control of PwC-Int'l such as to "abide by certain minimum requirements and standards that are set by PwC-Int'l" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 6-11);

- Those requirements, include, without limitation: "how we accept clients" and "how we perform work for our clients" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 12-18);

- PwC-Int'l also subjects its member entities, including PwC-USA, to governance under the PwC Code of Conduct (*see* Depo. Trans. of J. Killian at p. 18, *l.* 21-p. 19, *l.* 2);

- PwC-Int'l requires dues payments from its member entities (*see* Depo. Trans. of J. Killian at p. 19, *ll.* 8-16);

- PwC-Int'l provides various member services to its members, including, but not limited to: coordination of firm strategy and marketing (*see* Depo. Trans. of J. Killian at p. 19, *l.* 17-p. 20, *l.* 2);

- PwC-UK has provided services to PwC-USA within the United States (*see* Depo. Trans. of J. Killian at p. 31, *l.* 20-p. 32, *l.* 2).

*See* Exhibit B. But, the PwC entities' assertion of a precept, akin to a rule of common law, that member entities in global accounting firms are not jointly liable would foreclose the uncovering of this evidence—and evidence like it.

Second, Plaintiffs have made sufficient allegations to support a *prima facie* case of an SBE and to warrant the ongoing discovery. Plaintiffs' allegations meet the standard for SBE-related discovery in support of jurisdiction, especially where "the alter ego test for attribution of

contacts, *i.e.*, personal jurisdiction, *is less stringent than that for liability*." *DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *5 (5th Cir. 2002) (emphasis added).  In their First Amending Petition, Plaintiffs allege the following with respect to PwC-UK and PwC-US:

- Both are member firms, who, under the oversight of PwC-Int'l, are subject to centralized accounting practices; sharing of services; close monitoring and control of revenue, investment activity, and personnel; control through global boards, councils, and teams; and a Code of Conduct, the violation of which could lead to termination.  Rec. Doc. 12, ¶¶ 29(a)-(g).

- Both share the exact same name, which is PricewaterhouseCoopers, LLP.  *Id.* ¶ 29(a).

- Due to their membership in the PwC global network of member firms under the control of PwC-Int'l, they are part of a single business enterprise.  *Id.* ¶¶ 62-65.

Detailed factual allegations in federal pleading are not required, and thus Plaintiffs' allegations are sufficient to warrant discovery regarding attribution and/or imputation of contacts among the PwC entities.  *See Self v. M&M Chem. Co.*, 177 F.3d 977, at *4 (5th Cir. 1999) (where plaintiff alleged in his complaint that "Defendant M & M . . . is the alter ego of Defendant Solite," and allegation was not refuted in defendants' affidavits, the district court was required to accept allegation as true in making its preliminary jurisdictional ruling).  Further, in prior briefings on their Motion to Remand, Plaintiffs have set forth how the facts available thus far, and those to be obtained through discovery, support an SBE finding under the individual 18 *Green* factors.  *See* Rec. Doc. 13; Rec. Doc. 36, pp. 6-7.

Third, although PwC-UK has submitted the declaration of Andrew Cope, who asserts the separate nature of PwC-UK and PwC-US, again, Plaintiffs have not yet had opportunity to take Mr. Cope's deposition.  Fourth, PwC-UK's attempt to "stark[ly] contrast" certain Louisiana cases with this case proves too much:  each case is different due to the totality-of-the-circumstances standard.  *See Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of*

*La., Inc.*, 690 F. Supp. 2d 435, 444 (E.D. La. 2010) (stating that "SBE theory . . . uses an eighteen-factor test, in which no factor is dispositive. The list of eighteen factors is non-exhaustive, and the Court must still consider the 'totality of the circumstances' in each case."). Fourth, PwC-UK does not cite any case applying Louisiana law stating that SBE liability only applies to corporations, rather than partnership entities such as the PwC entities.  Indeed, "[t]he single business enterprise doctrine is an equitable doctrine applied **to reflect partnership-type liability principles** when corporations integrate their resources in operations to achieve a common business purpose."  *Commercial Union Ins. Co. v. CBC Temp. Staffing Servs., Inc.*, 2004-0854 (La. App. 1st Cir. 11/3/04), 897 So. 2d 647, 650-51 (emphasis added).  In summary, PwC-USA's jurisdictional contacts should be imputed to PwC-UK—as alleged, as has been confirmed in the discovery thus far, or as will be confirmed by requested, stayed discovery.

### 3.   This action arises from Louisiana activity, and thus there is a basis for specific personal jurisdiction over PwC-UK.

Several crucial events underlying the litigation occurred in the United States, and more specifically, in Louisiana.  The litigation involves the loan made by NBL to Seatem, and that loan was guaranteed by Mr. Newton.   Mr. Newton's claims include claims against NBL pertaining to the unenforceability of that guarantee, **which Mr. Newton signed in Louisiana**, due to NBL's insistence.  *See* Exhibit A.  In turn, NBL contracted with one or more PwC entities for the completion of the accounting report in connection with the loan made by NBL to Seatem. That accounting report shows that Mr. Newton is a **principal of Seatem, at the top of Seatem's organizational chart**.  *See* Rec. Doc. 117-2, p. 10.  PwC-UK states that it was responsible for the work underlying the accounting report.  Rec. Doc. 109-1, p. 9.  Thus, based on PwC-UK's own allegation, its provision of accounting services related to a loan that was guaranteed in Louisiana, constitutes purposeful availment of Louisiana.  Moreover, Plaintiffs' claims arise out of the

- 16 -

execution of the guarantee in Louisiana.  Thus, in addition to imputation of PwC-USA's contacts to PwC-UK, PwC-UK's alleged provision of accounting services related to a loan guaranteed in Louisiana provides a basis for specific personal jurisdiction over PwC-UK.  Furthermore, the limited discovery allowed thus far reveals that ***PwC-UK has provided services to PwC-USA within the United States***.  *See* Exhibit B, Depo. Trans. of J. Killian at p. 31, *l.* 20-p. 32, *l.* 2.

Furthermore, PwC-UK's passing reference to the "fair play and substantial justice" standard does not tip the scale against an assertion of personal jurisdiction.  PwC-UK asserts that three factors point away from Louisiana jurisdiction:  (1) PwC-UK's burden in defending itself thousands of miles from its home; (2) this Court's little interest in resolving a dispute centered in a foreign country; and (3) the availability of relief in Northern Ireland.  However:

(1) It is no less burdensome for Plaintiffs to have to defend in a court of Northern Ireland that is distant as to them.

(2) The courts of Louisiana have a strong interest in the adjudication of the validity of a contract of guarantee executed within Louisiana's borders.  *See Champagne v. Ward*, 2003-3211 (La. 1/19/05); 893 So. 2d 773, 789 (refusing to apply Louisiana law where to do so would abrogate a contract issued in another state).

(3) The alleged availability of relief in Northern Ireland misses the point entirely.  Personal jurisdiction is not an inquiry into the best forum or a survey of available fora.  The inquiry is whether the defendant should reasonably expect being haled into court based upon its actions affecting the forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Plaintiffs have an interest in obtaining relief in their forum of choice.  PwC-UK's motion to dismiss for lack of personal jurisdiction should be denied.

**B.**   **PwC-UK Has Not Overcome the Presumption in Favor of the Plaintiffs' Choice of Forum such that Dismissal on Grounds of *Forum Non Conveniens* Would Be Appropriate.**

PwC-UK bears the burden of persuasion that the suit should be dismissed on grounds of *forum non conveniens* ("f.n.c."), and it must overcome the strong favorable ***presumption*** in favor

of the ***plaintiff's choice of forum***, which should rarely be disturbed.  *See DTEX, LLC v. BBVA*

*Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007).  PwC-UK does not meet that burden, and

thus its Motion to Dismiss on grounds of f.n.c. should be denied.[15]

Although various public and private interest factors may bear upon an f.n.c.

determination, "the ultimate inquiry is where trial will best serve the convenience of the parties

and the interests of justice."  *Id.* at 794 (citations omitted).  These factors weigh in favor of

maintaining the presumption of Plaintiffs' chosen forum.  First, PwC-UK is incorrect in asserting

that the forum has no connection with Plaintiffs' claims, as the guarantee was signed in

Louisiana.  Second, PwC-UK's reference to its and NBL's location in the United Kingdom

proves too much.  If the Court is to focus on the connection of the United Kingdom to the parties

in the lawsuit, it should also consider their connection to the United States:  three U.S.

domiciliaries (Plaintiffs and PwC-USA).  Relatedly, the convenience of the parties and the

interests of justice favor a Louisiana forum at least as much as a distant European forum:

- Although PwC-UK asserts that all of its records for the business review engagement are
  in Northern Ireland, as are NBL's and Seatem's documents pertaining to the underlying
  transactions, all documents in this litigation have been exchanged via electronic mail,
  which presumably will continue throughout the pendency of the litigation.

- Although PwC-UK's and NBL's witnesses likely reside in Europe, Plaintiffs' and PwC-
  USA's witnesses reside in the United States.  For example, PwC-USA offered the
  declarations of Patrice Edmonds and Joseph Killian in this matter, both of whom reside in
  the United States.  Thus, arguments as to the cost and burden of certain witnesses
  hopping "across the pond" to either possible forum dead-end in a nugatory stalemate.

---

[15]  Furthermore, Plaintiffs respectfully submit that this Court should decide their pending Motion to Remand (Rec.
Doc. 13) prior to any ruling on PwC-UK's Motion to Dismiss.  PwC-UK cites *Sinochem International Co. Ltd. v.
Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007), for the proposition that the Court may dismiss the action on
f.n.c. grounds without addressing subject matter jurisdiction.  However, the Supreme Court in *Sinochem* delineated
its holding:  "If, however, a court can readily determine that it lacks jurisdiction over the cause or the defendant, the
proper course would be to dismiss on that ground. In the mine run of cases, jurisdiction 'will involve no arduous
inquiry' and both judicial economy and the consideration ordinarily accorded the plaintiff's choice of forum 'should
impel the federal court to dispose of [those] issue[s] first.'"  *Id.* at 436.  Here, Plaintiffs submit that judicial economy
and the consideration accorded their choice of forum should impel this Court to resolve the issue of subject matter
jurisdiction first.

- Northern Ireland may have an interest in regulating the conduct of PwC-UK and NBL, who reside there, but Louisiana has just as great an interest in determining the validity of a guarantee executed in its borders—one of the central issues in the lawsuit.  *See* Rec. Doc. 1-2 (petition seeking declaratory judgment that guarantee was void *ab initio* and/or that the guarantee does not attach to the newer credit facility).  And, the United States has a significant interest in regulating the conduct of PwC-USA.

- While PwC-UK points to the existence of a Northern Ireland case involving Mr. Newton and NBL, that case does not involve Plaintiffs' claims against the PwC entities, nor does it involve the first named Plaintiff, BMPP3.  *See* Exhibit A.

- It is not a foregone conclusion that the law of Northern Ireland will apply, as PwC-UK seems to assume.  Even to the extent the Court need engage in a choice-of-law analysis, there is a solid applicable legal framework for correctly choosing the substantive law that should apply to this dispute, whether that is Louisiana, Northern Ireland, or some other body of law.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 (5th Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)) ("In diversity cases, federal courts apply the choice-of-law rules of the forum state . . . ."); LA. CIV. CODE arts. 3515-3549 (Civil Code Book IV, establishing comprehensive framework for resolving choice-of-law issues under Louisiana law).

- PwC-UK unpersuasively asserts that it would be "unfair to congest Louisiana courts and to burden Louisiana citizens" with this case.  Rec. Doc. 109-1, p. 20.  Again, the guarantee was executed here; Plaintiffs chose to sue here; and given that this Court has jurisdiction, it is hardly a "burden" for this Court to entertain Plaintiffs' request for relief.  Moreover, this United States Court has a strong interest in protecting the rights of United States citizens—Plaintiffs, who chose a court in their native country to seek relief.[16]

Curiously, PwC-UK, under the rubric of its f.n.c. argument, adds a paragraph arguing that "alternatively," the case should be dismissed for improper venue.[17]  It argues that the engagement letter has a mandatory Northern Ireland forum selection clause.[18]  However, the

---

[16]  Plaintiffs also submit that PwC-UK does not meet its burden of proving that Northern Ireland would be an adequate forum.  The declaration of David Scoffield addresses jurisdiction over defendants domiciled in EU Member States, but Mr. Scoffield does not address the question of jurisdiction over a United States domiciliary defendant, such as PwC-USA.  *See* Rec. Doc. 109-6, ¶¶ 28-30.  Furthermore, Plaintiffs are entitled to take Mr. Scoffield's deposition, and have not yet been able to do so due to PwC-UK's refusal to participate in jurisdictional discovery.

[17]  Plaintiffs submit that to the extent PwC-UK failed to raise its defense pursuant to Rule 12(b)(3), but rather only raised this argument in the alternative, such defense has been waived.

[18]  This argument is the object of PwC-USA's pending motion to dismiss (Rec. Doc. 17).  Contemporaneously with the filing of the instant opposition to PwC-UK's Motion to Dismiss, Plaintiffs are filing an opposition to PwC-USA's motion.  Thus, Plaintiffs expressly adopt arguments concerning venue as expressed in their contemporaneously-filed opposition to PwC-USA's motion to dismiss.

- 19 -

Court should not reach this argument because the issue of venue is inextricably intertwined with the merits of the case.  The law does not permit a judicial decision on the merits at this juncture for two reasons.  First, the Court should not reach the merits of a case without first deciding a jurisdictional issue, such as the subject matter jurisdiction issue raised in Plaintiffs' Motion to Remand.  *See Sinochem*, 549 U.S. at 431 (stating that "jurisdictional questions ordinarily must precede merits determinations in dispositional order").  Second, because there is a disputed issue as to whether the forum selection clause should apply to Plaintiffs, the Court should resolve the dispute in Plaintiffs' favor and find that the clause does not defeat Plaintiffs' choice of venue. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (holding that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party").

Here, enforcing the forum selection clause in the accounting contract would require the determination of a substantial merits question.  PwC-UK argues that Plaintiffs are not parties to the business review contract.  Rec. Doc. 109-1, pp. 21-22.  It is internally inconsistent for PwC-UK to contend that Plaintiffs are not parties to the written contract (which they are not) while at the same time arguing that Plaintiffs are subject to a forum selection clause in a contract to which they were not signatories.

In sum, the doctrine of f.n.c., permissive in nature, is designed to prevent the judicial process from becoming an instrument of abuse or injustice in cases where the plaintiff's chosen forum is "so completely inappropriate and inconvenient" that terminating the litigation in the domestic forum is appropriate.  *In re Air Crash Disaster Near New Orleans v. Pan American World Airways, Inc.*, 821 F.2d 1147, 1153-54 (5th Cir. 1987) (en banc) (subsequent history

omitted)); *Johnson v. PPI Tech. Servs., L.P.*, No. 11-2773, 2012 WL 1865713, at *1 (E.D. La. May 22, 2012) (citing *In re Volkswagen of Amer., Inc.*, 545 F.3d 304, 313 & 313 n.8 (5th Cir. 2008)).  Here, it neither unjust nor unduly inconvenient for PwC-UK to defend in this District. Most of the evidence is readily available on either side of the Atlantic as it largely consists of documentation interchanged through email among Plaintiffs, NBL, and other persons.  This is just a case where parties are separated by an ocean on *both sides* of which exist many contacts to the instant litigation.  Each side wants to choose the forum.  But—to put it simply—Plaintiffs herein are <u>the plaintiffs</u> who by definition choose the forum; and PwC-UK has not proven that the doctrine of f.n.c.  should overcome the presumption in favor of a Louisiana forum.

### <u>C.</u>     <u>Plaintiffs' First Amending Petition States a Claim Against PwC-UK.</u>

Plaintiffs state a claim for accounting malpractice and breach of contract against PwC-UK, who, by its own allegation, states that it is responsible for the negligent business review work at issue.  PwC-UK incorrectly argues that Plaintiffs' accounting malpractice claims against it are barred procedurally and/or substantively.  First of all, any decision under an accounting review panel statute, a statute of prescription,[19] or any other Louisiana substantive law would be premature until this Court determines what law applies.  "Federal courts sitting in diversity," such as this one, "must apply the choice-of-law provisions of the state in which they sit."  *Cain v. Altec. Indus. Inc.*, 06-30619, 236 F. App'x 965, 967 (5th Cir. 2007).  Hence, this Court must apply Louisiana choice-of-law principles to determine which substantive laws will apply to Plaintiffs' claims.  *See* LA. CIV. CODE arts. 3515 *et seq.*[20]  The choice-of-law analysis under

---

[19]  As to prescription, notably this matter was filed in Louisiana state court on April 13, 2012, less than a year after the April 15, 2011 deadline for BMPP3's federal taxes on which the $20+ million write-off was taken, even assuming the base minimum one-year prescriptive period were to apply.

[20]  For example, to the extent Louisiana Civil Code article 3540 with respect to a contractual choice of law could apply, the Court would have to determine, *inter alia*, whether Northern Ireland law—whatever that body of law

Book IV of the Louisiana Civil Code is "***fact intensive***."  *In re EDC Contr. Ins. Lit.*, 2005-1064 (La. App. 3 Cir. 2006), 931 So. 2d 462, 466 (emphasis added); *see also* LA. CIV. CODE art. 3515 (enumerating relevant factors).   Until the Court determines the applicable substantive law, dismissal on the grounds sought by PwC-UK would be premature.

PwC-UK also is incorrect to seek summary dismissal by asserting that Plaintiffs lack the requisite relationship to the business review engagement and to the PwC entities.   As explained in Plaintiffs' opposition to PwC-USA's motion for summary judgment (Rec. Doc. 18), which is being filed contemporaneously herewith, the Engagement Letter Contract states that the business review included a summary of the debtor/creditor position.  *See* Rec. Doc. 1-6.  Plaintiffs are creditors of Seatem.  *See* Exhibit A, ¶ 10.   None of the defendants have demonstrated that BMPP3 and Mr. Newton are not creditors with an interest in the summary that was within the scope of the business review, or that they lack the requisite relationship to the business review at issue.  *See* Rec. Doc. 1-6, p. 3 (providing that scope of the work would include review of the "current level of creditor pressure").   In fact, the accounting report shows that Mr. Newton is a ***principal of Seatem, at the top of Seatem's organizational chart***.  *See* Rec. Doc. 117-2, p. 10. Plaintiffs have stated a claim for accounting malpractice and/or breach of contract.[21]

## D.  **Plaintiffs Expressly Adopt Their Arguments in Contemporaneously Filed Oppositions to Other Motions.**

Plaintiffs respectfully submit that the arguments raised in PwC-UK's Motion to Dismiss overlap with arguments raised by other defendants in other pending motions, many of which are presently set for submission on the same date as PwC-UK's Motion to Dismiss.   Thus, under

---

provides—"contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." LA. CIV. CODE art. 3540.

[21]  Although Plaintiffs submit that they have stated a claim for relief, in the alternative, Plaintiffs should be granted leave to amend if this Court determines that more facts need be alleged in support of Plaintiffs' claims.  *See* FED. R. CIV. P. 15(a)(2) (providing that the court should freely give such leave when justice so requires).

Federal Rule of Civil Procedure 10(c), Plaintiffs hereby expressly adopt by reference their arguments raised in their memoranda in opposition to such other motions, to the extent relevant to the issues raised in PwC-UK's Motion to Dismiss:

- The Motion to Dismiss filed by PwC-USA (Rec. Doc. 17);

- The Motion for Summary Judgment filed by PwC-USA (Rec. Doc. 18); and

- The Motion to Dismiss filed by PwC-Int'l (Rec. Doc. 110).

## CONCLUSION

For the foregoing reasons, the Court should deny PwC-UK's Motion to Dismiss.


Respectfully submitted,

*/s/Martha Y. Curtis*_____
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER
     KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS
BURRUS MORTGAGE PORTOFOLIO
PARTNERSHIP III AND GEORGE J. NEWTON III**


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel of record through electronic mail this 15th day of January, 2013.

*/s/Martha Y. Curtis*_____
**MARTHA Y. CURTIS**