UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO | * | CIVIL ACTION NO. 12-CV-1445 |
| PARTNERSHIP III AND | * | |
| GEORGE J. NEWTON, III | * | |
| Plaintiffs | * | |
| | * | |
| VERSUS | * | JUDGE ENGELHARDT |
| | * | |
| NORTHERN BANK LIMITED AND | * | MAGISTRATE CHASEZ |
| PRICEWATERHOUSECOOPERS, LLP | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## MEMORANDUM IN OPPOSITION TO DEFENDANT PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED ("PWC-INT'L")'S MOTION TO DISMISS

**MAY IT PLEASE THE COURT:**

Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), submit this memorandum in opposition to PwC-Int'l's Motion to Dismiss (Rec. Doc. 110).  PwC-Int'l's Motion to Dismiss should be denied:

- PwC-Int'l fails to demonstrate that the presumption in favor of Plaintiffs' choice of forum should be disregarded on grounds of *forum non conveniens*, or that the case should be dismissed on grounds of *lis alibi pendens* or improper venue.

- Plaintiffs have made a *prima facie* showing of personal jurisdiction over PwC-Int'l. Moreover, discovery as to personal jurisdiction and *forum non conveniens* is incomplete.[1]

- Plaintiffs' First Amending Petition states a cognizable claim for relief against PwC-Int'l.

## INTRODUCTION

Although some of the events from which this action arises allegedly occurred in Northern Ireland, among other places, several crucial events occurred in the United States, and more specifically, in Louisiana.  The litigation involves a loan made by Northern Bank Limited

---

[1] Plaintiffs adopt by reference the arguments made in their Motion to Continue Submission Date on this motion filed contemporaneously with this pleading.

("NBL") to Seatem Attraction, Tickets (UK) Limited ("Seatem), and that loan was guaranteed by Plaintiff, Mr. Newton.  Mr. Newton's claims against NBL pertain to the unenforceability of that guarantee, ***which Mr. Newton signed in Louisiana***, due to NBL's insistence.[2]  Moreover, Seatem's ticketing operations involve providing exclusive deals to United States recreational attractions, including Walt Disney World.  Additionally, the accounting report that is also a central issue in this litigation contains connections to United States-based entities.  NBL contracted with one or more PricewaterhouseCoopers ("PwC") entities for the completion of the accounting report in connection with the loan made by NBL to Seatem.  That report indicates that certain entities related to Seatem, including Enta entities, have principals domiciled in the United States, including Mr. Newton.[3]  Moreover, that report shows that Mr. Newton is a ***principal of Seatem, at the top of Seatem's organizational chart***.[4]  The discussion in the report of Seatem's intellectual property shows that important ticketing software is owned by United States shareholders of Seatem, more specifically, by a partnership registered in the United States; and that the license agreement regulating rights of use in the ticketing software is ***governed by the laws of Louisiana and of the United States***.[5]  However, to fully appreciate the relationship of the controversy to the United States, a brief overview of the litigation is necessary.

## BACKGROUND

Plaintiffs commenced this proceeding in the Louisiana state court system.  Rec. Doc. 1-2, ¶ I.  Mr. Newton was a percentage owner and lender through BMPP3 of Seatem.  *See id.*  NBL and Seatem entered into a loan agreement wherein NBL was to provide Seatem with working

---

[2]  *See* Exhibit A.
[3]  *See* Rec. Doc. 117-2 (accounting report, previously submitted as exhibit in support of Motion to Disqualify Counsel).  In prior briefings to this Court, Plaintiffs described the relationship between Seatem, the Enta entities, and Mr. Newton.  *See* Rec. Doc. 117-1.
[4]  *See* Rec. Doc. 117-2, p. 10.
[5]  *See id.* p. 61.

capital for its ticketing operations. *Id.* ¶ 1. Due to the global credit crisis, NBL changed its methodology of extending credit to Seatem, requiring Mr. Newton to personally guarantee a loan. *Id.* ¶¶ 8-10. NBL told Mr. Newton that it would not attempt to collect the guarantee. *Id.* ¶¶ 11-12. Despite the fact that NBL asked Mr. Newton to sign the guarantee amidst promises of continued and increased financial support for Seatem, NBL curtailed its support of Seatem. *Id.* ¶ 15. Furthermore, Mr. Newton's guarantee was signed in conjunction with a credit facility that expired in 2009 without any call having been made against the guarantee. *Id.* ¶ 16. Despite NBL's representations and promises that it would not do so, NBL has been attempting to execute on Mr. Newton's personal guarantee, causing him damages. *Id.* ¶¶ 35, 39.

As a prerequisite to the transfer of funds in the loan agreement between NBL and Seatem, NBL required that PwC produce a report on Seatem that explained its business operations. *See id.* at ¶ 17. PwC was appointed the first week in November 2009 and was to present a finalized report by December 5, 2009. *See id.* at ¶ 19. However, PwC did not finalize its report until the last week in February 2010. *See id.* The delay in PwC's reporting and NBL's contemporaneous refusal to provide funds without a finalized PwC report resulted in the difficulties of declining sales revenue and attendant termination of supplier relationships with Seatem. *See id.* at ¶ 21.

The finalized PwC report was also severely flawed. *See id.* at ¶ 22. Notably, Plaintiffs did not receive a copy of the PwC report until after the present lawsuit was filed. The report was prepared by a junior accountant (one year qualified) who was ill equipped to evaluate this multi-million dollar complex international enterprise. *See id.* The junior accountant never even talked to any of the principals of Seatem, including, but not limited to Messrs. Rory Burns and Paul Burns. *See id.* This omission is even more egregious as the report, in its conclusions, referred to the views of Seatem's directors. *Id.* PwC never met with, interviewed, or sought access to

Seatem's directors. *See id.* Moreover, PwC's partner responsible for the report had worked previously for NBL for a decade. *See id.*

BMPP3, which had been lending and investing capital in Seatem, eventually had to write off $20,718,096 as of calendar year 2010, which it reported in its 2010 taxes filed in 2011. BMPP3 lost the $20+ million as a direct result of the actions of both NBL and the PwC defendants. *See id.* ¶ 28. Therefore, Plaintiffs filed the instant lawsuit seeking the recovery of all damages they have suffered due to Defendants' wrongful acts, and a declaratory judgment that Mr. Newton's personal guarantee was void *ab initio* and/or that the guarantee does not attach to the newer credit facility. *Id.*, Prayer.

Plaintiffs filed a First Amending Petition in which they named PwC-Int'l and PricewaterhouseCoopers, LLP ("PwC-UK") as defendants. *See* Rec. Doc. 12. PricewaterhouseCoopers, LLP ("PwC-USA") and PwC-UK are members of the PwC global network of firms under the control of PwC-Int'l. *Id.* ¶ 62. Notably, PwC-USA and PwC-UK share an identical name: "PricewaterhouseCoopers, LLP." The PwC global network, including PwC-USA, PwC-UK, and PwC-Int'l, operates as a single business entity. At all relevant times, Plaintiffs believed they were dealing with PwC-USA and were unaware of any alleged distinction between PwC-USA and PwC-UK, which both bear the same name. *Id.* ¶ 63. Thus, Plaintiffs' First Amending Petition asserts claims against PwC-UK, PwC-Int'l, and PwC-USA as defendants who are solidarily liable to Plaintiffs under contract and tort law. *Id.* ¶ 65. The location of the performance of the work on the PwC business review engagement is the subject of ongoing discovery.[6]

---

[6] In support of its Motion to Dismiss (Rec. Doc. 109), PwC-UK submitted the declaration of David Clements. However, because PwC-UK refused to make Mr. Clements available for deposition, Plaintiffs were required to file a

## LAW & ARGUMENT

**A.**   **PwC-Int'l Has Not Overcome the Presumption in Favor of the Plaintiffs' Choice of Forum such that Dismissal on Grounds of *Forum Non Conveniens* Would Be Appropriate, or that the Case Should Be Dismissed on an Alternative Ground such as *Lis Alibi Pendens* or Improper Venue.**

PwC-Int'l asserts that this action does not belong in a United States court.  However, it only devotes several paragraphs to this assertion, in which it mainly incorporates arguments already raised by other defendants.  *See* Rec. Doc. 110-1, pp. 6-8.[7]  However, just as those arguments fail as asserted by other defendants, the summary format in which PwC-Int'l presents them is no more persuasive.

### 1.   PwC-Int'l has not overcome the presumption in favor of the Louisiana forum.

PwC-Int'l bears the burden of persuasion that the suit should be dismissed on grounds of *forum non conveniens* ("f.n.c."), and it must overcome the strong favorable ***presumption*** in favor of the ***plaintiff's choice of forum***, which should rarely be disturbed.  *See DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007).  PwC-Int'l does not meet that burden. Where a defendant moves to dismiss on grounds of f.n.c., "the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice."  *Id.* at 794 (citations omitted).  Under this legal standard, the Louisiana forum should be maintained.

The convenience of the parties and the interests of justice require maintenance of the presumption in favor of Plaintiffs' chosen forum.  Louisiana has an important connection to the dispute, in which the Court will resolve whether or not a guarantee signed within the borders of the State of Louisiana is legally enforceable.  This United States Court has a strong interest in

---

motion to compel the deposition (Rec. Doc. 114), which is presently pending before Magistrate Judge Chasez, and which, as explained *infra*, is stayed pending this Court's ruling on Plaintiffs' Motion to Remand (Rec. Doc. 13).

[7]  As set forth *infra*, Plaintiffs also adopt by reference their arguments in their separate memoranda in opposition to the other pending motions filed by other defendants, to the extent such arguments are relevant to PwC-Int'l's arguments in its Motion to Dismiss.

protecting the rights of United States citizens—Plaintiffs, who chose to seek relief in a court in their native country.   Likewise, the United States has a significant interest in regulating the conduct of PwC-USA, which is an entity based in the United States.   In addition to the connection of the United Kingdom to the lawsuit, the litigation has ***equally, if not more, significant*** ties to the United States:   three U.S. domiciliaries (both of the Plaintiffs and PwC-USA).   As to the convenience of the parties and witnesses, Northern Ireland is not significantly more convenient so as to warrant dismissal on grounds of f.n.c.   Although certain PwC and NBL witnesses likely reside in Europe, Plaintiffs' and PwC-USA's witnesses reside in the United States.   For example, PwC-USA offered the declarations of Patrice Edmonds and Joseph Killian in this matter, both of whom reside in the United States.   Thus, PwC-Int'l does not carry its burden of demonstrating that dismissal is proper under the doctrine of f.n.c.

**2.    PwC-Int'l has not shown that the case should be dismissed on an alternative basis, such as *lis alibi pendens* or venue.**

PwC-Int'l does not demonstrate why the doctrine of *lis alibi pendens* should result in dismissal.   PwC-Int'l merely asserts that NBL and Mr. Newton are "already litigating over the same subject matter" in Northern Ireland.   Rec. Doc. 110-1, p. 7.   This is a mischaracterization. The instant litigation and the Northern Ireland litigation involve different parties and different requested relief.   Although the guarantee is a factual component of both cases, neither Plaintiff BMPP3, nor Defendant PwC-Int'l, nor Defendant PwC-UK, nor Defendant PwC-USA is a party to the Northern Ireland litigation.   *See* Exhibit A.   Present in this litigation, and <u>not implicated</u> in the Northern Ireland litigation, are Plaintiffs' breach-of-contract and accounting malpractice claims alleged against the PwC entities for their role in the business review of Seatem with respect to the subject loan transaction.   *See id.*   While Mr. Newton seeks relief against NBL in the instant litigation, he has not done so in Northern Ireland.   *Id.*   Simply put, while PwC-Int'l

alerts the Court to the existence of a suit in another jurisdiction, it does not demonstrate that this Court should find inapplicable the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Nor does PwC-Int'l's reference to the Northern Ireland forum selection clause in the Engagement Letter demonstrate that dismissal is warranted on the alternative ground of improper venue.[8] First, the Court should not reach the merits without first deciding the subject matter jurisdiction issue raised in Plaintiffs' Motion to Remand. *See Sinochem*, 549 U.S. at 431 (stating that "jurisdictional questions ordinarily must precede merits determinations in dispositional order"). Here, enforcing the forum selection clause in the accounting contract would require the determination of a substantial merits question. Second, because there is a disputed issue as to whether the forum selection clause should apply to Plaintiffs, the Court should resolve the dispute in Plaintiffs' favor and find that the clause does not defeat Plaintiffs' choice of venue. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004) (holding that "in the context of a Rule 12(b)(3) motion based upon a forum selection clause, the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party").

In short, while PwC-Int'l broadly asserts that this action does not belong in a United States district court, it does not demonstrate that the doctrines of f.n.c. or *lis alibi pendens* should dissuade this Court from exercising jurisdiction over the action, or that improper venue is a proper alternative ground for dismissing Plaintiffs' case.

---

[8] This argument is the object of PwC-USA's pending motion to dismiss (Rec. Doc. 17). Contemporaneously with the filing of the instant opposition to PwC-Int'l's Motion to Dismiss, Plaintiffs are filing an opposition to PwC-USA's motion. Thus, Plaintiffs expressly adopt arguments concerning venue as expressed in their contemporaneously-filed opposition to PwC-USA's motion to dismiss.

**B.    Plaintiffs Have Made a *Prima Facie* Showing of Personal Jurisdiction, and Jurisdictional Discovery Is Incomplete.**

    **1.    Discovery as to personal jurisdiction is incomplete.**

PwC-Int'l improperly refused to cooperate in ***any*** discovery regarding personal jurisdiction, notwithstanding that it filed its Motion to Dismiss on December 22, 2012[9] on grounds of lack of personal jurisdiction.  PwC-Int'l has maintained that no further discovery is warranted until this Court rules on the instant Motion to Dismiss.  PwC-Int'l's stance is legally unsound.

The standard in this judicial circuit for the taking of discovery as to personal jurisdiction is as follows: If "plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's <u>right</u> to conduct jurisdictional <u>should</u> be sustained."  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005) (emphasis added); *see also* 4 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.6 (3d ed. 2004) (noting that jurisdictional discovery can be obtained "when there is <u>some</u> basis for believing that [it] would be fruitful") (emphasis added).  Federal appellate courts have found that this <u>right</u> triggers when "a party demonstrates that it can supplement its jurisdictional allegations through discovery."  *GTE New Media Serv., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1351-52 (D.C. Cir. 2000).  The Magistrate Judge has already sustained Plaintiffs' right to conduct jurisdictional discovery against both defendants PwC-USA and NBL.  *See* Rec. Docs. 62 & 108.  Two depositions of PwC-USA personnel have been taken, and depositions of NBL and its personnel are scheduled for January 23, 2013.

---

[9] PwC-Int'l was not one of the original defendants to this action, and Plaintiffs have never agreed that PwC-Int'l's Motion to Dismiss filed on December 22, 2012 be heard on January 23, 2013 without time to conduct any jurisdictional discovery.

In a recent discovery opinion hinging on the single business enterprise theory of recovery, Judge Eldon E. Fallon held that the plaintiffs were "entitled" to conduct jurisdictional discovery against a foreign entity regarding its relationship with another defendant entity <u>before</u> the court could hear either defendant's motion to dismiss for lack of personal jurisdiction.  *In re Chinese-Mfr. Drywall Prod. Liab. Litig.*, No. 2009-MDL-2047, 2011 WL 5509221, *2-*3 (E.D. La. Nov. 10, 2011).  Plaintiffs' complaint had alleged that defendant/Chinese drywall manufacturers named Taishan Gypsum Co. Ltd. ("Taishan") and Beijing New Building Materials ("BNBM") were sufficiently related that the contacts of one with Louisiana should be imputed to the other for purposes of a minimum contacts analysis for personal jurisdiction.  *Id.*  Taishan argued in response that plaintiffs had failed to allege with reasonable particularity the possible existence of personal jurisdiction contacts and, therefore, plaintiffs were not entitled to jurisdictional discovery because plaintiffs' claims should be dismissed.  *See id.*  The *Chinese Drywall* court rejected that argument, holding: "[plaintiffs were] <u>not</u> required to allege with reasonable particularity the possible existence of personal jurisdiction contacts . . . rather the relevant jurisprudence on the issue recognizes the Court's <u>broad discretion</u> in discovery matters."  *Id* (emphasis added).  The court concluded:

> [plaintiffs were] <u>entitled</u> to obtain discovery regarding [Taishan's] relationship with [BNBM and other entities upstream and downstream to BNBM] because [plaintiffs] had alleged "with reasonable particularly [sic]" <u>the possible existence of facts sufficient to impute BNBM's forum contacts, if any, to [Taishan].</u>

*Id.* at *1 (emphasis added).

PwC-Int'l impermissibly stonewalled Plaintiffs' discovery requests in a manner virtually identical to that of the Chinese drywall defendants in *Chinese Drywall*.  Like the *Chinese Drywall* defendants, PwC-Int'l's arguments against discovery hinge on its pending motion to dismiss for lack of personal jurisdiction.  PwC-Int'l's arguments fail under Judge Fallon's ruling

as well as the liberal standard for jurisdictional discovery in this judicial circuit upon which Judge Fallon's opinion was based.  Like the plaintiffs of *Chinese Drywall*, Plaintiffs seek to obtain discovery regarding the relationship amongst PwC-Int'l and the other members of the PwC global network of entities, including, but not limited to, PwC-USA and PwC-UK.  The PwC defendants, including PwC-Int'l, have made the issue the centerpiece of their defense to Plaintiffs' claims against them.  Moreover, PwC-USA does not dispute that it has minimum contacts with Louisiana, nor could it, as its partners reside in Louisiana and it does significant work in Louisiana, including, but not limited to, being the leading accounting firm for the BP Class Action Settlement recently approved by District Judge Carl Barbier.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, E.D. La.

In a similar opinion, Judge Fallon rejected the defense to jurisdictional discovery that the plaintiff seeking such discovery must first make a *prima facie* case for either specific or general personal jurisdiction.  *See Blessey Marine Serv., Inc. v. Jeffboat, LLC*, No. 10-1863, 2011 WL 651999, at *6 (E.D. La. Feb. 10, 2011).  Citing the Fifth Circuit's decision in *Fielding*, Judge Fallon reasoned that the proper standard requires a movant only to "present factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts."  *See id.* at *5 (emphasis added).[10]  Plaintiffs have so done.

Plaintiffs have made several factual allegations suggesting with reasonable particularity the possible existence of PwC-Int'l's minimum contacts with Louisiana.  For example, Mr. Newton's claims arise out of his having signed the guarantee that is an issue in this litigation ***in***

---

[10]  Further, Judge Fallon stated that "[t]he Fifth Circuit thus appears to have aligned itself with the other circuits that have established a comparatively lower bar for permitting jurisdictional discovery."  *Blessey Marine Servs.*, 2011 WL 651999, at *7.

**_the forum state of Louisiana_**.  *See* Exhibit A.  NBL induced Mr. Newton to sign the guarantee in connection with the loan to Seatem that is also a major issue in this litigation.  *See* Rec. Doc. 1-2, ¶¶ 1, 10.  In connection with that same loan, NBL contracted with PwC-UK to perform the business review engagement that is also a major issue in this litigation.  *Id.* ¶ 17.  Plaintiffs have alleged that PwC-USA, PwC-UK, and PwC-Int'l are a single business enterprise.  Rec. Doc. 12.  Thus, any jurisdictional contacts of PwC-USA with Louisiana should be imputed to PwC-Int'l.  *See DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *4 (5th Cir. 2002) ("Where the parent corporation is merely the 'alter ego' of its subsidiary, a court can impute to the parent it[s] subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction.").

Moreover, Plaintiffs have made other factual allegations in their First Amending Petition that meet the standard for jurisdictional discovery.  PwC-USA and PwC-UK have the exact same name—PricewaterhouseCoopers, LLP—another fact suggesting the related nature of the PwC entities that would justify imputation of PwC-USA's contacts to PwC-Int'l.  *See* Rec. Doc. 12, ¶ 29(a).  Plaintiffs have pled a number of factual circumstances with respect to the control exerted by PwC-Int'l over member firms such as PwC-USA.  *Id.* ¶¶ 29(c)-(g).  Accordingly, PwC-Int'l should be required to respond to Plaintiffs' written discovery with respect to personal jurisdiction.

Additionally, PwC-Int'l is required to provide for the taking of the deposition of Colm Kelly, who submitted a declaration in support of PwC-Int'l's Motion to Dismiss.  Rec. Doc. 110-2.  Plaintiffs should have the right to take the deposition of this affiant.  Additionally, PwC-Int'l should be compelled to provide a Rule 30(b)(6) designee to testify in accordance with the list of topics identified in Plaintiffs' deposition notice to PwC-Int'l concerning personal jurisdiction.

Importantly, the basis of PwC-Int'l's argument that the Court lacks general personal jurisdiction over it is the declaration of Colm Kelly.  *See* Rec. Doc. 110-1, p. 10.  However,

- 11 -

PwC-Int'l essentially asks Plaintiffs and this Court to "take its word for it," without permitting Plaintiffs any discovery concerning veracity of same.  Indeed, one of the main reasons for permitting the taking of a deposition of an affiant such as Colm Kelly it to test the affiant's credibility, and to reveal the factual basis, if any, underlying his averments.[11]  However, PwC-Int'l has refused thus far to provide for the taking of Colm Kelly's deposition <u>or</u> to provide discovery concerning items that are at the heart of the inquiry as to general personal jurisdiction, including the following:

- The percentages of revenues that PwC-Int'l has derived from its transactions dealing with persons or entities in ***Louisiana***;
- Information as to proposals, contracts, agreements, or other contractual relationships that PwC-Int'l has entered into with respect to ***Louisiana***;
- All business activities in ***Louisiana***, which are relevant to PwC-Int'l's continuous and systematic business presence in the forum state, including:
  - Maintaining any office, business address, or telephone number in ***Louisiana***;
  - Maintaining any corporate or business records in ***Louisiana***;
  - Making any business decisions in ***Louisiana***;
  - Maintaining or using any place of business in ***Louisiana***;
  - Possessing any license to do business in ***Louisiana***;
  - Having a registered agent for service of process in ***Louisiana***;
  - Having any personnel in ***Louisiana***, including any directors or managers;
  - Maintaining any customer/client accounts in ***Louisiana***; or
  - Having any contacts with any persons or entities in ***Louisiana***;
- Advertising in the United States;
- Travel of PwC-Int'l personnel to ***Louisiana*** for sales trips, meetings, negotiations, vendor or supplier visits, conventions, conferences, or other business engagements; and
- Assets and property of PwC-Int'l located in ***Louisiana***.[12]

---

[11]  *See, e.g., Boit v. Gar-Tec Products, Inc.*, 967 F.2d 671, 676 (1st Cir. 1992) ("If issues of credibility are presented and must be resolved to determine an issue of fact material to the court's disposition of the motion to dismiss, it may be an abuse of discretion not to allow an opportunity for cross-examination of an affiant if requested."); *Randleman v. Fid. Nat. Title Ins. Co.*, 251 F.R.D. 281, 286 (N.D. Ohio 2008) (stating that plaintiffs were "free to depose some or all of the affiants," because "[e]ffective examination can uncover the extent to which someone other than the affiant 'framed' the statements in the affidavit . . . ."); *In re Wells Fargo Wage & Hour Employment Practices Litig. (No. III)*, No. H-11-2266, 2012 WL 3308880, at *18 (S.D. Tex. Aug. 10, 2012) (in the context of conditional class certification, stating that because "[p]laintiffs have not had an opportunity to depose these declarants, it is inappropriate to afford significant weight to their substance").

[12]  *See* Rec. Doc. 122-2 (discovery served upon PwC-Int'l); *see also* Rec. Doc. 122-3 (correlative topics identified in Rule 30(b)(6) notice to PwC-Int'l).

Until PwC-Int'l responds to discovery at the heart of determining whether there are sufficient contacts to establish general personal jurisdiction, a ruling upon that issue would be premature. *See Italtrade Int'l, USA, L.L.C. v. Sri Lanka Cement Corp.*, No. 00-2458, 2002 WL 59399, at *3 (E.D. La. Jan. 15, 2002) (where no discovery had been conducted, and plaintiffs had not been afforded an opportunity to refute defendant's allegations relative to personal jurisdiction, deferring ruling to provide plaintiffs time to conduct discovery). Furthermore, the limited discovery that Plaintiffs have been allowed to take from PwC-USA demonstrates that there is evidence in support of general jurisdiction: ***PwC-Int'l maintains an office*** in the building ***in New York, NY*** that PwC-USA leases, and PwC-Int'l's office in New York potentially has upwards of 50 PwC-Int'l employees. *See* Exhibit B, Depo. Trans. of J. Killian at p. 29, *ll.* 2-19; p. 30, *ll.* 14-18.

Due to PwC-Int'l's refusal to participate in jurisdictional discovery, Plaintiffs filed a motion to compel. *See* Rec. Doc. 112. Magistrate Judge Chasez held an expedited hearing on the motion to compel by telephone on January 14, 2013, after which she stayed the motion to compel pending this Court's ruling on Plaintiffs' Motion to Remand (Rec. Doc. 13). Magistrate Chasez acknowledged that the current procedural posture is a matter of bad timing: the confluence of the submission date noticed by the PwC defendants with respect to their motions to dismiss and the problem of inadequate time for the resolution of the discovery issues.[13] Until the discovery issue is resolved, a hearing on the issue of personal jurisdiction is premature.

## 2. PwC-USA's jurisdictional contacts should be imputed to PwC-Int'l.

---

[13] *See also* Plaintiffs' Motion to Continue Submission Date on Motions to Dismiss, which is being filed contemporaneously herewith, and which explains that a continuance of the submission date on the instant motion is necessary due to the timing in which PwC-Int'l filed its motion and its refusal to participate in jurisdictional discovery.

Because PwC-USA and PwC-Int'l are part of a single business enterprise including PwC member firms, PwC-USA's jurisdictional contacts should be imputed to PwC-Int'l.[14]  PwC-USA does not dispute that it has minimum contacts with Louisiana, nor could it, as its partners reside in Louisiana and it does significant work in Louisiana, including, but not limited to, being the leading accounting firm for the BP Class Action Settlement recently approved by District Judge Carl Barbier.  *See In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, MDL No. 2179, E.D. La.  Accordingly, to the extent PwC-USA's contacts are imputed to PwC-Int'l, PwC-Int'l is likewise subject to this Court's personal jurisdiction.

As mentioned previously, Plaintiffs have set forth in numerous prior briefings the basis for a finding that PwC-USA and PwC-Int'l are a single business enterprise ("SBE"), and Plaintiffs adopt these arguments by reference.  Moreover, in recently staying Magistrate Chasez's order providing for SBE-related discovery from PwC-USA, the Court implied that such discovery likely would be permissible after the Court rules on the pending Motion to Remand.[15]  Thus, in the interim, a ruling concerning imputation of contacts to PwC-Int'l would be premature.

PwC-Int'l sets forth no justifiable basis for disallowing this Court's consideration of facts revealed through discovery that bear upon the SBE determination.  First, PwC-Int'l, and the other named PwC defendants, would have the Court summarily dismiss well-pleaded claims by recitation of a refrain from several cases about the separate nature of accounting firms in a network, and by elevating that refrain to settled <u>common law</u>, which has no place in Louisiana

---

[14]  *See DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *4 (5th Cir. 2002) ("Where the parent corporation is merely the 'alter ego' of its subsidiary, a court can impute to the parent it[s] subsidiary's contacts with the forum state for the purposes of establishing personal jurisdiction.").

[15]  Although this Court's Order pertained to Plaintiffs' claims against PwC-USA, the Court did not address the relevance of the SBE-related discovery to imputation of jurisdictional contacts.  Rec. Doc. 118.  Plaintiffs respectfully submit that regardless of the Court's ruling on the improper joinder argument, and the relevance of the SBE-related discovery to Plaintiffs' claims against PwC-USA, the discovery is necessary to resolve the personal jurisdiction issue vis-à-vis both PwC-UK and PwC-Int'l.

civilian theory, which this Court is *Erie*-bound to apply in this removed case.  Such a characterization would defy the standard for federal notice pleading and discovery.  As noted previously, where, as here, the plaintiffs have pleaded factual allegations of the imputation of jurisdictional contacts with reasonable particularity, discovery as to the propriety of such imputation is appropriate.  The suggestion by the PwC defendants that American courts universally have held that accounting firms in a global network cannot be treated as a single entity is clearly incorrect.  *See, e.g.*, *Teachers' Ret. Sys. of LA v. A.C.L.N., Ltd.*, No. 01-11814, 2003 WL 21058090, at \*8-\*9 (S.D.N.Y. May 12, 2003) (where plaintiff supported assertion of unitary nature of accounting firm for purposes of personal jurisdiction by referencing website and annual reports, and made the factual allegation that one accounting entity operated through another entity, court would exercise personal jurisdiction over defendant); *Koehler v. Bank of Bermuda, Ltd.*, No. 931745, 1994 WL 48825 (S.D.N.Y. Feb. 16, 1994) (finding personal jurisdiction based upon reference to promotional materials of related banking entities, "which foster[ed] the perception of a unified network of banks acting as a single unit," and rejecting assertion of separate legal identity because banking entity could not "have it both ways"; "The promotional material is either a pack of lies, or factual admissions binding on the [banking entity]. I take the latter view.").

Additionally, the discovery thus far has revealed why the PwC entities' proposed sweeping characterization of accounting firms *as a matter of law* is *improper*:

- To become a licensed member of the PwC network of entities, which PwC-USA is, a candidate must submit to the control of PwC-Int'l such as to "abide by certain minimum requirements and standards that are set by PwC-Int'l" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 6-11);

- Those requirements, include, without limitation: "how we accept clients" and "how we perform work for our clients" (*see* Depo. Trans. of J. Killian at p. 18, *ll.* 12-18);

- 15 -

- PwC-Int'l also subjects its member entities to governance under the PwC Code of Conduct (*see* Depo. Trans. of J. Killian at p. 18, *l.* 21-p. 19, *l.* 2);

- PwC-Int'l requires dues payments from its member entities (*see* Depo. Trans. of J. Killian at p. 19, *ll.* 8-16);

- PwC-Int'l provides various member services to its members, including, but not limited to: coordination of firm strategy and marketing (*see* Depo. Trans. of J. Killian at p. 19, *l.* 17-p. 20, *l.* 2);

- PwC-Int'l maintains an office in the building in New York, NY that PwC-USA leases, and PwC-Int'l's office in New York potentially has upwards of 50 PwC-Int'l employees (*see* Depo. Trans. of J. Killian at p. 29, *ll.* 2-19; p. 30, *ll.* 14-18).

*See* Exhibit B.  But, the PwC entities' assertion of a precept, akin to a rule of common law, that member entities in global accounting firms are not jointly liable would foreclose the uncovering of this evidence—and evidence like it.

Second, Plaintiffs have made sufficient allegations to support a *prima facie* case of an SBE and to warrant the ongoing discovery.  Plaintiffs' allegations meet the standard for SBE-related discovery in support of jurisdiction, especially where "the alter ego test for attribution of contacts, *i.e.*, personal jurisdiction, **is less stringent than that for liability**." *DP Solutions, Inc. v. Rollins, Inc.*, 34 F. App'x 150, at *5 (5th Cir. 2002) (emphasis added).  In their First Amending Petition, Plaintiffs allege the following with respect to PwC-Int'l and PwC-USA:

- PwC-USA is a member PwC firm, who, under the oversight of PwC-Int'l, is subject to centralized accounting practices; sharing of services; close monitoring and control of revenue, investment activity, and personnel; control through global boards, councils, and teams; and a Code of Conduct, the violation of which could lead to termination.  Rec. Doc. 12, ¶¶ 29(a)-(g).

- Due to PwC-USA's membership in the PwC global network of member firms under the control of PwC-Int'l, PwC-USA and PwC-Int'l are part of a single business enterprise. *See id.* ¶¶ 62-65.

Detailed factual allegations in federal pleading are not required, and thus Plaintiffs' allegations are sufficient to warrant discovery regarding attribution and/or imputation of contacts among the

PwC entities. *See Self v. M&M Chem. Co.*, 177 F.3d 977, at *5 (5th Cir. 1999) (where plaintiff alleged in his complaint that "Defendant M & M . . . is the alter ego of Defendant Solite," and allegation was not refuted in defendants' affidavits, the district court was required to accept allegation as true in making its preliminary jurisdictional ruling).

Further, in prior briefings on their Motion to Remand, Plaintiffs have set forth how the facts available thus far, and those to be obtained through discovery, support an SBE finding under the individual 18 *Green* factors. *See* Rec. Doc. 13; Rec. Doc. 36, pp. 6-7; *see also Bona Fide Demolition & Recovery, LLC v. Crosby Constr. Co. of La., Inc.*, 690 F. Supp. 2d 435, 444 (E.D. La. 2010) (stating that "SBE theory . . . uses an eighteen-factor test, in which no factor is dispositive. The list of eighteen factors is non-exhaustive, and the Court must still consider the 'totality of the circumstances' in each case."). PwC-USA's and PwC-UK's jurisdictional contacts should be imputed to PwC-Int'l—as alleged, as has been confirmed in the discovery thus far, or as will be confirmed by requested, stayed discovery.

> **3.     This action arises from Louisiana activity, and thus there is a basis for specific personal jurisdiction over PwC-Int'l.**

Several crucial events underlying the litigation occurred in the United States, and more specifically, in Louisiana. The litigation involves the loan made by NBL to Seatem, and that loan was guaranteed by Mr. Newton. Mr. Newton's claims include claims against NBL pertaining to the unenforceability of that guarantee, ***which Mr. Newton signed in Louisiana***, due to NBL's insistence. *See* Exhibit A. In turn, NBL contracted with one or more PwC entities for the completion of the accounting report in connection with the loan made by NBL to Seatem. That accounting report shows that Mr. Newton is a ***principal of Seatem, at the top of Seatem's organizational chart***. *See* Rec. Doc. 117-2, p. 10. PwC-UK states that it was responsible for the work underlying the accounting report. Rec. Doc. 109-1, p. 9. Thus, based on PwC-UK's

allegation, its provision of accounting services related to a loan that was guaranteed in Louisiana, constitutes purposeful availment of Louisiana.   Moreover, Plaintiffs' claims arise out of the execution of the guarantee in Louisiana.   Therefore, there is a basis for specific personal jurisdiction over PwC-UK:   PwC-UK allegedly provided accounting services related to a loan guaranteed in Louisiana, and Plaintiffs' claims arise out of and/or relate to the execution of the guarantee in Louisiana.   In turn, due to the unitary nature of member firms in the PwC network, the imputation of PwC-UK's contacts to PwC-Int'l provides a basis for specific personal jurisdiction over PwC-Int'l.

        **4.**      **The exercise of jurisdiction over PwC-Int'l comports with fair play and substantial justice.**

To the extent Plaintiffs make a *prima facie* showing of personal jurisdiction over PwC-Int'l, and/or will make such a showing once they have properly received the benefit of discovery to which they are entitled, the exercise of jurisdiction is fair.   Where, as here, Plaintiffs make a *prima facie* showing of minimum contacts from which Plaintiffs' claims arise, or to which they relate, "the burden shifts to the defendant to show the assertion of jurisdiction would be unfair." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).   This is a heavy burden for PwC-Int'l to bear, indeed, as it is rare for a court to find that a defendant with minimum contacts may not be fairly required to defend a lawsuit in the forum where the suit arises from said minimum contacts.   *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (stating that the defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable"); *Brandt*, 195 F.3d at 215 ("It is rare to say the assertion [of jurisdiction] is unfair after minimum contacts have been shown.").

Although PwC-Int'l alleges that an exercise of jurisdiction would be burdensome, it is no less burdensome for Mr. Newton to have to defend in a court of Northern Ireland, and it would

be no less burdensome for BMPP3 to do same.  PwC-Int'l is incorrect in asserting that Louisiana has little interest in adjudicating this lawsuit.  To the contrary, a state has a strong interest in the adjudication of the validity of a contract of guarantee executed within its borders.  *See Champagne v. Ward*, 2003-3211 (La. 1/19/05); 893 So. 2d 773, 789 (refusing to apply Louisiana law where to do so would abrogate a contract issued in another state).

Furthermore, PwC-Int'l's assertion that Plaintiffs allegedly can obtain adequate relief in Northern Ireland misses the point entirely.  Personal jurisdiction is not an inquiry into the best forum or a survey of available fora.  The inquiry is whether the defendant should reasonably expect being haled into court based upon its actions affecting the forum.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Likewise, as stated previously, PwC-Int'l incorrectly asserts that Plaintiffs can obtain full relief in Northern Ireland.  That litigation does not include Plaintiffs' claims against the PwC entities, and PwC-USA has not consented to jurisdiction in Northern Ireland.  *See* Exhibit A.  Moreover, PwC-Int'l engages in bootstrapping of "minimum contacts" into notions of fairness via its argument that Plaintiffs cannot obtain relief in Louisiana because NBL and PwC-UK are not subject to personal jurisdiction in Louisiana.  Plaintiffs have a strong interest in obtaining relief in their forum of choice.  The assertion of jurisdiction is fair, and PwC-Int'l's motion to dismiss for lack of personal jurisdiction should be denied.

**C.**   **Plaintiffs' First Amending Petition States a Claim Against PwC-Int'l.**

    **1.**   **Plaintiffs state a claim for accounting malpractice and breach of contract against the PwC defendants, and PwC-Int'l improperly seeks dismissal prior to a determination of applicable law.**

Plaintiffs state a claim for accounting malpractice and breach of contract against PwC-USA and/or PwC-UK, and thus they also state a claim against PwC-Int'l under the legal theories

of SBE and/or alter-ego liability.   PwC-Int'l incorrectly argues that Plaintiffs' accounting malpractice claims against it are barred procedurally and/or substantively.   First of all, any decision under an accounting review panel statute, a statute of prescription,[16] or any other Louisiana substantive law would be premature until this Court determines what law applies. "Federal courts sitting in diversity," such as this one, "must apply the choice-of-law provisions of the state in which they sit."   *Cain v. Altec. Indus. Inc.*, 06-30619, 236 F. App'x 965, 967 (5th Cir. 2007).   Hence, this Court must apply Louisiana choice-of-law principles to determine which substantive laws will apply to Plaintiffs' claims.   *See* LA. CIV. CODE arts. 3515 *et seq.*[17]   The choice-of-law analysis under Book IV of the Louisiana Civil Code is "***fact intensive***."   *In re EDC Contr. Ins. Lit.*, 2005-1064 (La. App. 3 Cir. 2006), 931 So. 2d 462, 466 (emphasis added); *see also* LA. CIV. CODE art. 3515 (enumerating relevant factors).   Until the Court determines the applicable substantive law, dismissal on the grounds sought by PwC-Int'l would be premature.

PwC-Int'l also is incorrect to seek summary dismissal by asserting that Plaintiffs lack the requisite relationship to the business review engagement and to the PwC entities.   As explained in Plaintiffs' opposition to PwC-USA's motion for summary judgment (Rec. Doc. 18), which is being filed contemporaneously herewith, the Engagement Letter Contract states that the business review included a summary of the debtor/creditor position.   *See* Rec. Doc. 1-6.   Plaintiffs are creditors of Seatem.   *See* Exhibit A, ¶ 10.   None of the defendants have demonstrated that BMPP3 and Mr. Newton are not creditors with an interest in the summary that was within the scope of the business review, or that they lack the requisite relationship to the business review at

---

[16]   As to prescription, notably this matter was filed in Louisiana state court on April 13, 2012, less than a year after the April 15, 2011 deadline for BMPP3's federal taxes on which the $20+ million write-off was taken, even assuming the base minimum one-year prescriptive period were to apply.

[17]   For example, to the extent Louisiana Civil Code article 3540 with respect to a contractual choice of law could apply, the Court would have to determine, *inter alia*, whether Northern Ireland law—whatever that body of law provides—"contravenes the public policy of the state whose law would otherwise be applicable under Article 3537." LA. CIV. CODE art. 3540.

issue.  *See* Rec. Doc. 1-6, p. 3 (providing that scope of the work would include review of the "current level of creditor pressure").  In fact, the accounting report shows that Mr. Newton is a ***principal of Seatem, at the top of Seatem's organizational chart***.  *See* Rec. Doc. 117-2, p. 10.  Plaintiffs have stated a claim for accounting malpractice and/or breach of contract.[18]

### 2.  Plaintiffs have adequately pled their claims against PwC-Int'l under the legal theory of SBE and/or alter-ego.

As set forth *supra*, Plaintiffs have adequately pled claims against PwC-Int'l under the SBE and/or alter-ego theories of liability under Louisiana law.  Louisiana utilizes an 18-factor test to determine potential SBE liability.  *Green v. Champion Ins. Co.*, 577 So. 2d 249, 257-58 (La. App. 1st Cir. 1991).  PwC-Int'l incorrectly asserts that courts have repeatedly rejected the SBE theory as to accounting firms in a global network.  The rationale of the cases cited by PwC-Int'l does not apply, because those cases do not apply Louisiana law and do not even purport to apply the single business enterprise doctrine, but rather address agency, partnership, and other discrete areas of law.  *See Nuevo Mundo Holdings v. Pricewaterhouse Coopers LLP*, No. 03-0613, 2004 WL 112948, at *3-*8 (S.D.N.Y. Jan. 22, 2004) (granting motion to dismiss where plaintiffs failed to plead sufficient facts alleging a theory of vicarious liability under a theory of partnership, agency, or alter ego); *In re AM Int'l, Inc. Sec. Litig.*, 606 F. Supp. 600, 607 (S.D.N.Y. 1985) (not involving SBE theory, but rather whether PwC firms were agents of each other; court concluding that foreign PwC entities were not liable for securities fraud because of insufficient allegations of aiding and abetting of fraud); *Rocker Mgmt., L.L.C. v. Lernout & Hauspie Speech Prods. N.V.*, No. 00-5965, 2005 WL 1365772 (D.N.J. June 8, 2005) (finding that

---

[18]  Although Plaintiffs submit that they have stated a claim for relief, in the alternative, Plaintiffs should be granted leave to amend if this Court determines that more facts need be alleged in support of Plaintiffs' claims.  *See* FED. R. CIV. P. 15(a)(2) (providing that the court should freely give such leave when justice so requires).

"one-firm" theory did not meet particularity requirements for pleading fraud under Rule 9(b) and under federal securities law).

Plaintiffs have adequately pled control of member entities by PwC-Int'l and other facts supporting the application of the *Green* factors, so as to satisfy the liberal pleading standard under the Federal Rules of Civil Procedure.   Under the Federal Rules, "a short and plain statement of the claim showing that the pleader is entitled to relief" is all that is required.   FED. R. CIV. P. 8(a)(2).   While mere labels and conclusions do not suffice to state a claim, *detailed factual allegations are **unnecessary***.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).   The well-pleaded facts, accepted as true, need only state a claim for relief that is facially plausible— meaning that the factual content "*allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged.*"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added).   As explained *supra*, Plaintiffs have set forth the requisite allegations in the numerous documents previously filed with this Court.[19]

The standard of "facial plausibility" only requires that, at the pleading stage, Plaintiffs plead what is in their petition:  facts and circumstances in publicly available PwC documents, which bear upon the unitary nature of the PwC network.   This is because the complaint only need "allege enough facts to give rise to a ***reasonable hope*** or expectation ***that discovery will reveal evidence*** of" the elements of a plaintiff's claim.  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (emphasis added).   Plaintiffs have made such factual allegations that are relevant to the *Green* factors in their initial memorandum in support of their Motion to Remand, which was referenced in their First Amending Petition:

---

[19]   In their First Amending Petition, Plaintiffs expressly referenced their Motion to Remand.  *See* Rec. Doc. 12, p. 1 n.1.  The Motion to Remand sets out numerous factual allegations with respect to the unitary nature of the PwC entities.  *See* Rec. Doc. 13-1.

- The PwC entities have in common PwC Chairman Dennis M. Nally (*Green* Factor No. 2, common directors or officers), Rec. Doc. 13-3, p. 4;

- The PwC entities are subject to a Global Annual Review and global Code of Conduct (Factor No. 3, unified administrative control of operations whose business functions are similar or supplementary), Rec. Doc. 13-3; Rec. Doc. 13-5, p. 4; Rec. Doc. 13-6, pp. 1-2; and

- The PwC entities are subject to close monitoring of the revenue of member firms by PwC-Int'l (Factor No. 15, centralized accounting), Rec. Doc. 13-4, pp. 16-22.

*See Green*, 577 So. 2d at 257-58 (listing 18 relevant factors). These concrete allegations give rise to a reasonable hope that discovery will reveal additional evidence of the applicability of the other *Green* factors as they bear upon Plaintiffs' SBE and/or alter-ego claims. Many of the relevant factors clearly will be of easier application after Plaintiffs have had the opportunity to complete discovery, *e.g.*, inadequate capitalization (Factor No. 6), common employees (Factor No. 12), common offices (Factor No. 14), and unclear allocation of profits and losses between corporations (here, different entities) (Factor No. 17). *See id.*[20]

Although there is a well-founded expectation of the revelation of additional evidence in support of Plaintiffs' claims, PwC-Int'l obstructed the discovery process, which prompted the filing of Plaintiffs' motion to compel against PwC-Int'l. *See* Rec. Docs. 112, 122-1. In its Motion to Dismiss, PwC-Int'l complains of an alleged lack of specificity in Plaintiffs' allegations that PwC-Int'l controls member firms, yet PwC-Int'l refused to answer the following discovery items relevant to the SBE and/or alter-ego theories of liability:

- Identification of services, including accounting, computer software, marketing, human resources, and the International Survey Unit, that PwC-Int'l has shared with other PwC entities, including PwC-USA and PwC-UK. Rec. Doc. 112-2, Interrogatory No. 1.

---

[20] PwC-Int'l incorrectly asserts that Plaintiffs "make no attempt" to allege facts relevant to the factors enumerated in *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579 (5th Cir. 2010). In *Jackson*, the Fifth Circuit cited *Green* in enumerating a list of factors. Thus, to the extent *Jackson* applies, in applying the *Green* factors, Plaintiffs have also met the test set forth in *Jackson*.

- 23 -

- Identification of all members, directors, and employees of PwC-Int'l who have held similar positions with another PwC entity, including PwC-USA and/or PwC-UK. *Id.* Interrogatory No. 3.

- Description of meetings that PwC-Int'l has held with other PwC entities, including PwC-USA and PwC-UK. *Id.* Interrogatory No. 4.

- Production of PwC-Int'l's organizational documents. *Id.* Request for Prod. No. 2.

- Production of all customer/client lists that PwC-Int'l has shared with other PwC entities, including PwC-USA and PwC-UK. *Id.* Request for Prod. No. 8.

- Production of documents governing behavior (including the Code of Conduct); documents showing duties and authorities of the Global Board of Directors, Network Leadership Team, Strategy Council, Network Executive Team, Global Ethics Leader, and PwC Chairman; and Global Annual Review documents. *Id.* Requests for Prod. Nos. 9-16.

This information will not be available until Magistrate Chasez lifts the stay on the motion to compel, which Plaintiffs were required to file due to PwC-Int'l's refusal to participate in *any* jurisdictional discovery, after the Court rules on the pending motion to remand.  However, Plaintiffs' allegations against PwC-Int'l provide the necessary "short and plain statement of the claim."  There is a well-founded expectation that based upon these allegations, and the discovery served on PwC-Int'l, Plaintiffs will obtain evidence in support of their claims against PwC-Int'l.

**D.    Plaintiffs Expressly Adopt Their Arguments in Contemporaneously Filed Oppositions to Other Motions.**

Plaintiffs respectfully submit that the arguments raised in PwC-Int'l's Motion to Dismiss overlap with arguments raised by other defendants in other pending motions, many of which are presently set for submission on the same date as PwC-Int'l's Motion to Dismiss.  Thus, under Federal Rule of Civil Procedure 10(c), Plaintiffs hereby expressly adopt by reference their arguments raised in their memoranda in opposition to such other motions, to the extent relevant to the issues raised in PwC-Int'l's Motion to Dismiss:

- The Motion to Dismiss filed by PwC-USA (Rec. Doc. 17);

- The Motion for Summary Judgment filed by PwC-USA (Rec. Doc. 18); and

- The Motion to Dismiss filed by PwC-UK (Rec. Doc. 109).

## CONCLUSION

For the foregoing reasons, the Court should deny PwC-Int'l's Motion to Dismiss.


Respectfully submitted,

*/s/Martha Y. Curtis*
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER
        KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS
BURRUS MORTGAGE PORTOFOLIO
PARTNERSHIP III AND GEORGE J. NEWTON III**


## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing document has been served on all counsel of

record through electronic mail this 15th day of January, 2013.

*/s/Martha Y. Curtis*
**MARTHA Y. CURTIS**