UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III and GEORGE J. NEWTON, III<br><br>                                               Plaintiffs,<br><br>vs.<br><br>NORTHERN BANK LIMITED and PRICEWATERHOUSECOOPERS LLP,<br><br>                                               Defendants. | **Civil Action No. 2:12-cv-1445**<br><br>**Judge Engelhardt**<br><br>**Magistrate Judge Chasez** |

**PRICEWATERHOUSECOOPERS INTERNATIONAL LIMITED'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Defendant PricewaterhouseCoopers International Limited (PwCIL) respectfully submits this Reply Memorandum in Further Support of its Motion to Dismiss.

**INTRODUCTION**

This is a straightforward case for dismissal on the basis of *forum non conveniens*. Plaintiffs do not dispute that Northern Ireland is an adequate alternative forum. They do not dispute that an earlier-filed, closely related action is already pending in the courts of Northern Ireland. They do not dispute that all of the parties performing the work at issue—Northern Bank, PwC U.K. and Seatem—are located in Northern Ireland. Nor do they dispute that all of the events underlying this dispute took place in Northern Ireland. That should end the analysis.

The only fact plaintiffs can come up with to tie this action to Louisiana is that Newton—a Florida resident—allegedly signed the guarantee while in this state. Although Newton's signing the guarantee here may create a superficial connection to Louisiana, the substance of Newton's guarantee relates entirely to Northern Ireland. The guarantee concerns a loan issued by a bank headquartered in Northern Ireland to a ticketing company also located in

Northern Ireland, and Newton signed it in his capacity as an investor in a Northern Ireland company. Thus, the nexus of facts is overwhelmingly in Northern Ireland. The Court should dismiss this action on the basis of *forum non conveniens*, and it may do so without addressing plaintiffs' motion to remand or defendants' motions to dismiss for lack of personal jurisdiction.[1] *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007).

Even if the Court were to permit plaintiffs to proceed in this forum, their claims against PwCIL should be dismissed on the merits. Plaintiffs do not dispute that, under either Northern Ireland or Louisiana law, an action for accounting malpractice requires that the plaintiffs have a contractual or other direct relationship with the accounting firm. *See Arrowhead Capital Finance Ltd v KPMG LLP* [2012] EWHC 1801 (Q.B.); La. R.S. 37:91; *Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So. 3d 1269, 1278 (La. App. 2d Cir. 2009). Plaintiffs admit that they had no such relationship. Indeed, plaintiffs concede that they never received a copy of PwC U.K.'s report prior to this litigation and never spoke with anyone at PwC U.K. Therefore, plaintiffs' claims against PwC U.K.—and by extension PwCIL—fail as a matter of law.[2]

---

[1] By Order dated January 16, 2013, this Court severed PwCIL's motion to dismiss for lack of personal jurisdiction from the motions to dismiss on other grounds and continued the submission date on the motion to dismiss for lack of personal jurisdiction. (*See* Dkt. No. 137.) Therefore, PwCIL addresses here only the motions to dismiss for *forum non conveniens* and failure to state a claim. PwCIL reserves the right to seek leave to file an additional reply brief in further support of its motion to dismiss for lack of personal jurisdiction.

[2] As set forth in PwCIL's opening memorandum, even if plaintiffs stated a claim against PwC U.K., they still would not state a claim against PwCIL because they fail to allege any facts establishing that PwCIL controlled or otherwise participated in the work at issue or that PwCIL and PwC U.K. should be considered a single business entity.

I.   **THE COMPLAINT SHOULD BE DISMISSED ON THE BASIS OF *FORUM NON CONVENIENS*.**

As noted above, plaintiffs do not dispute that Northern Ireland is an adequate alternative forum. Nor could they, because all defendants have consented to jurisdiction there and a related suit is already pending in the Northern Ireland courts. *See Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 212 (5th Cir. 2010) (noting that defendant's agreement to submit to foreign court's jurisdiction makes that court an "available" forum). Therefore, the only issue is whether the established private and public interest factors favor dismissal. PwCIL submits that they do.

A.   **The Private Interests Favor Northern Ireland.**

There is no question that the relevant "sources of proof" are in Northern Ireland, not in Louisiana. All of the witnesses from PwC U.K. and Northern Bank are in Northern Ireland, and it is likely that any witnesses from Seatem are as well. Plaintiffs do not dispute that. Rather, Plaintiffs concede that "PwC-UK's and NBL's witnesses likely reside in Europe". (Dkt. No. 132 at 18.) Indeed, plaintiffs plan to travel to Northern Bank's headquarters in Belfast this week to take the depositions of six Northern Bank employees.

Similarly, all of PwC U.K.'s records for the Northern Bank engagement are in Northern Ireland, and presumably Northern Bank's and Seatem's records related to this matter are there as well. Plaintiffs do not dispute that either. (*See* Dkt. No. 132 at 18.) Although plaintiffs protest that "all documents in this litigation have been exchange via electronic mail" (*id.*), if this action were permitted to proceed to merits discovery (which it should not), it is likely that both hard copy and electronic documents would have to be retrieved from the offices of Northern Bank, PwC U.K. and Seatem in Northern Ireland and transferred to Louisiana. *See Delta Brands Inc. v. Danieli Corp.*, 99 Fed. App'x 1, 8 (5th Cir. 2004) (affirming dismissal for

3

*forum non conveniens* in favor of Italy where "most of the information and witnesses necessary for trial are located in Italy and Europe").

Plaintiffs' argument that the burden on witnesses nevertheless is a "stalemate" because "Plaintiffs' and PwC-USA's witnesses reside in the United States" should be rejected. PwC U.S. has no witnesses. Although plaintiffs deposed two PwC U.S. employees in an effort to support their (misguided) alter ego theory, nobody at PwC U.S. has any knowledge of the facts at issue in this case because PwC U.S. did not perform any of the work on the Northern Bank engagement.[3]

The possibility that plaintiffs may have to travel to Northern Ireland to participate in this dispute should not factor strongly into the Court's analysis. Plaintiff Newton is already participating in a related dispute in Northern Ireland, and therefore dismissal of this suit in favor of resolving this controversy in Northern Ireland would not impose on him much incremental burden, if any. Moreover, whereas defendants have no contacts with Louisiana at all (other than PwC U.S., which is improperly joined), plaintiffs chose to do business in Northern Ireland and therefore subjected themselves to being involved in legal proceedings there.

Although plaintiffs aver generally that *"*Plaintiffs' witnesses. . . .reside in the United States", Plaintiffs have not identified any witnesses in the United States, other than themselves, that may have knowledge of the facts at issue here. Other than Newton, the only principals of Seatem to which plaintiffs refer in their petition are alleged to have been "easily accessible in Ireland and the U.K.". (Pet. ¶ 22.) In sum, "[a]lthough Louisiana plaintiffs initially selected a Louisiana forum in the present case, their choice of forum does not outweigh the

---

[3] The witnesses plaintiffs deposed from PwC U.S. are located in New York, not Louisiana. Plaintiffs' counsel chose to conduct those depositions by telephone rather than go to New York.

unnecessary burdens of trying non-resident defendants in Louisiana for activities focused [abroad]". *Turan v. Universal Plan Inv. Ltd.*, 70 F. Supp. 2d 671, 677 (E.D. La. 1999), *aff'd* 248 F.3d 1139 (5th Cir. 2001).

### B. The Public Interests Favor Northern Ireland.

The public interest factors also favor dismissal because Northern Ireland has a greater interest in resolving this controversy than does Louisiana. This action involves the conduct of three companies that are based in Northern Ireland and have no presence in Louisiana. Indeed, plaintiffs do not dispute that Northern Ireland is where the nexus of facts lie and that "Northern Ireland may have an interest in regulating the conduct of PwC-UK and NBL". (Dkt. No. 132 at 19.) Instead, plaintiffs argue only that "Louisiana has just as great an interest in determining the validity of a guarantee executed in its borders". (*Id.*) Although Newton's signing of a guarantee in this state may create a superficial relationship to Louisiana, however, the substance of Newton's guarantee relates entirely to Northern Ireland. The guarantee concerns a loan issued by a bank headquartered in Northern Ireland to a ticketing company also located in Northern Ireland, and Newton signed it in his capacity as an investor in a Northern Ireland company. Louisiana has little interest in that arrangement, even if the piece of paper was physically signed here.

Moreover, plaintiffs' argument that "the United States has a significant interest in regulating the conduct of PwC-USA" (*id.*) should be rejected. There is no "conduct of PwC-USA" at issue: all of the work on the engagement was performed by the Belfast office of PwC U.K. Plaintiffs' argument is just another attempt to manufacture a connection to a U.S. forum by adding defendants—like PwC U.S. and PwCIL—with no connection to the dispute.

The fact that one plaintiff is domiciled in Louisiana and the other is from Florida does not give Louisiana enough of an interest in this controversy to overcome Northern Ireland's interest in resolving a dispute concerning the actions of Northern Ireland companies taking place within its borders.  When the plaintiff's residence is the only connection the suit has to Louisiana, as in this case, courts have not hesitated to dismiss on the basis of *forum non conveniens* when the nexus of facts is elsewhere.  *See Delta Brands*, 99 Fed. App'x at 10 (affirming District Court's judgment that "even though Texas has an interest in hearing a case brought by one of its citizens, Italy has a stronger interest in having the case heard in Italy because of its interest in regulating corporations that operate within its boundaries"); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 343 (5th Cir. 1999) (affirming dismissal on the basis of *forum non conveniens* even though plaintiffs were Louisiana residents); *Turan*, 70 F. Supp. 2d at 678 (dismissing for *forum non conveniens* after finding that "Louisiana has no interest in the litigation other than that plaintiffs are a Louisiana resident and a Louisiana corporation").  Therefore, this case should be dismissed.

## II.   PLAINTIFFS FAIL TO STATE A CLAIM.

Even if this case were permitted to proceed in Louisiana, which it should not, plaintiffs' claims against PwCIL still should be dismissed because plaintiffs fail to state a claim.

### A.   Plaintiffs Fail to State a Claim Against PwC U.K.

The relevant facts are not in dispute.  Plaintiffs concede that they had no contractual or other direct relationship with PwC U.K.  Indeed, they concede that they "did not receive a copy of the PwC report until after the present lawsuit was filed" and that the PwC U.K. employee who allegedly prepared the report "never even talked to any of the principals of Seatem", of which plaintiff purportedly is one. (Pls.' Mem. at 3, 21.)  Those concessions are

consistent with the engagement letter, which provides that PwC U.K.'s report was "provided solely for [Northern Bank's and Seatem's] internal use and benefit". (*See* Engagement Letter Terms of Business, Dkt. No. 109-3, ¶ 3.2.)

Plaintiffs' claims against PwC U.K.—and by extension PwCIL—must fail, therefore, because under either Northern Ireland or Louisiana law an action for accounting malpractice requires that the plaintiff have either a contractual relationship or some other direct relationship with the accounting firm. The relevant legal principles are not in dispute. Under English law, which the courts of Northern Ireland would follow, accountants do not owe a duty of care to investors or potential investors of their clients without a contractual relationship or, at minimum, direct contact with the investor. *See, e.g.*, *Arrowhead Capital Finance Ltd v KPMG LLP* [2012] EWHC 1801 (Q.B.) (holding that KPMG owed no duty of care to investors of its client even though KPMG knew its involvement was being described to potential investors), *available at* http://www.bailii.org/ew/cases/EWHC/Comm/2012/1801.html. Similarly, under Louisiana law, a professional negligence claim against an accounting firm requires, among other things, that the accountant "had direct contact and communication with the plaintiff" and understood that the plaintiff would rely upon its work product. La. R.S. 37:91; *see Solow v. Heard McElroy & Vestal, L.L.P.*, 7 So. 3d 1269, 1278 (La. App. 2d Cir. 2009). Plaintiffs concede that they had no such relationship or communication with PwC U.K. Therefore, plaintiffs' claims against PwC U.K., and by extension PwCIL, must fail. *See, e.g.*, *Cameron Parish Sch. Bd. v. State Farm Fire & Cas. Co.*, 560 F. Supp. 2d 485, 490 (W.D. La. 2008) ("CPSB cannot state a claim against State Farm under vicarious liability because there is no underlying negligence on Derbonne's part for which State Farm could be vicariously liable.").

In the face of this controlling law, plaintiffs respond only that "Plaintiffs are creditors of Seatem" and that the engagement letter "states that the business review included a summary of the debtor/creditor position". (Pls.' Mem. at 20.) Plaintiffs provide no authority, and to our knowledge there is none, to support the notion that an accountant may be liable to its clients' creditors simply by virtue of describing to the client its "debtor/creditor position", even when the accountant had no communication with the creditor, the report was not prepared for the creditor to rely upon, and the creditor did not rely upon it (and indeed did not ever see it). Such a conclusion would be inconsistent with controlling English or Louisiana law.[4]

### B.  Plaintiffs Fail to Plead Secondary Liability Against PwCIL.

Plaintiffs' failure to plead "alter ego" or "single business entity" liability was adequately addressed in PwCIL's opening memorandum, and plaintiffs' opposition brief adds noting new. Plaintiffs' contentions that "[t]he PwC entities are subject to a Global Annual Review and a global Code of Conduct", that PwCIL draws on the services of personnel from its member firms (for which PwCIL compensates them), and that PwCIL monitors the revenue of its member firms (*see* Pls.' Mem. at 23), establish only that the PwC member firms are part of a global accounting firm network, which nobody disputes, and does not come close to meeting the high bar of establishing that PwC U.S., PwC U.K. and PwCIL have disregarded legal formalities

---

[4] The Court should disregard the self-serving statement in Newton's declaration that "[t]he PwC entity or entities were or should have been aware of my relationship to Seatem as its principal and investor and my residency in the United States". (Dkt. No. 133-1 ¶ 8.) The statement should be disregarded because it is a legal conclusion and not made upon personal knowledge. *See 377 Realty Partners, L.P. v. Taffarello*, 561 F. Supp. 2d 659, 662 (E.D. Tex. 2007). It is also outside the pleadings and therefore not proper support in response to a motion to dismiss. *See Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Even if Newton were permitted to testify that PwC U.K. was "aware or should have been aware" of his relationship with Seatem, however, such awareness still would not be sufficient to give him standing to assert a claim because plaintiffs concede that he had no communication or direct relationship with PwC U.K.

and operate in substance as a single legal entity. Although plaintiffs profess a "reasonable hope" that discovery will reveal more evidence to support their theory, a plaintiff may not may not "undertake a fishing expedition based only upon bare allegations", and discovery is not permitted if, as here, plaintiffs' allegations fail to raise a factual issue. *Eurofins Pharma US Holdings v. Bioalliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *see Mykhaylov v. Masiac Maritime, Inc.*, 2:03-cv-02722-HGB, 2004 WL 2472480, at *4 n.4 (E.D. La. Nov. 2, 2004) ("To the extent that the plaintiffs seek discovery relating to an 'alter ego' argument[], the plaintiffs have failed to raise a factual issue sufficient to justify further discovery. Courts presume the independence of related companies.").

### III.   CONCLUSION

For the foregoing reasons, the Court should dismiss all claims against PwCIL with prejudice.

Respectfully submitted,

_____
Dane S. Ciolino, La. Bar No. 19311
DANE S. CIOLINO, LLC
18 Farnham Pl.
Metairie, LA 70005
(504) 834-8519
dane@daneciolino.com

Thomas G. Rafferty (admitted *pro hac vice*)
Antony L. Ryan  (admitted *pro hac vice*)
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
T: (212) 474-1000
F: (212) 474-3700

*Counsel for Defendant PricewaterhouseCoopers
    International Limited*