UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III, A LOUISIANA PARTNERSHIP IN COMMENDAM AND GEORGE NEWTON, III<br>            Plaintiffs,<br><br>versus<br><br>NORTHERN BANK LIMITED AND PRICEWATERHOUSECOOPERS LLP<br>            Defendants. | CIVIL ACTION NO. 2:12-cv-1445<br><br>JUDGE ENGELHARDT<br><br>MAGISTRATE CHASEZ |

**REPLY MEMORANDUM IN SUPPORT OF PRICEWATERHOUSECOOPERS LLP'S ("PWC US") RULE 12(B)(3) MOTION TO DISMISS FOR IMPROPER VENUE**

Defendant PwC US, a Delaware limited liability partnership, submits this reply memorandum in further support of its Rule 12(b)(3) Motion to Dismiss for Improper Venue (R. Doc. 17) (the "Motion to Dismiss") and in response to the opposition memorandum (R. Doc. 130) submitted on behalf of Plaintiffs, George J. Newton, III ("Newton") and Burrus Mortgage Portfolio Partnership III ("Burrus Mortgage") (collectively, "Plaintiffs").

INTRODUCTION

Plaintiffs' opposition to PwC US's motion has three fatal flaws. First, Plaintiffs' mootness objection is of no import because the Motion to Remand and the Motion to Dismiss are both before the Court, and both motions are susceptible to disposition. Second, Federal Rule of Civil Procedure 41(b) facially establishes that an improper-venue dismissal does not constitute a ruling on the merits. Thus, the granting of PwC US's Motion to Dismiss would not involve a decision on the merits, despite Plaintiffs' contention otherwise. Finally, the enforcement of the forum selection clause at issue is both reasonable and just under the circumstances: the

1

applicable clause is found in the contract that Plaintiffs' breach-of-contract claims arise from and Plaintiff Newton is already engaged in related litigation in Northern Ireland, which is the targeted forum. In light of these issues, the Court should grant PwC US's Motion to Dismiss.

## LAW AND ARGUMENT

**A. Plaintiffs' mootness objection has no bearing on the merits of the venue issue before the Court.**

PwC US concedes that a disposition of the pending Motion to Remand (R. Doc. 13) could potentially moot the instant Motion to Dismiss. But until such a ruling occurs, both motions are before the Court and both motions are susceptible to disposition. Despite Plaintiffs' argument to the contrary, the Court is under no obligation to decide one motion before the other. In their opposition, Plaintiffs cite the Fifth Circuit's decision in *Smallwood v. Ill. Cent. R.,* 385 F.3d 568 (5th Cir. 2004) for the proposition that remand and improper joinder issues must be resolved before a district court can render a dismissal on the merits. Pls.' Opp'n 4. This case does not hold that remand must be decided before venue because a dismissal for improper venue entails a ruling on the merits. Such a position would directly contravene the language of Federal Rule of Civil Procedure 41(b), which establishes that "a dismissal under this subdivision (b) and any dismissal not under this rule--*except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19*--operates as an adjudication on the merits." Fed. R. Civ. P. 41(b) (emphasis added). In this regard, Rule 41(b) contains an exception providing that claims dismissed for improper venue are considered not to have been dismissed on the merits. *See* 18A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4436 (2d ed. 2002); *see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007) ("The critical point here, rendering a forum non conveniens determination a threshold, nonmerits issue … is simply this: Resolving a forum non conveniens motion does not

2

entail any assumption by the court of substantive 'law-declaring power.'"); *Miller v. Nationwide Life Ins. Co.*, No. 06-31178, 2008 WL 3086783, at *4 (5th Cir. Aug. 6, 2008) (acknowledging the Rule 41(b) exception for jurisdiction and venue dismissals). As a result, the Court has the authority to dismiss this case on PwC US's venue motion and pretermit the remand issue completely, if it so desires. *See Sinochem Int'l Co.*, 549 U.S. at 431-32 ("A district court … may dispose of an action by a forum non conveniens dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant.").[1]

Plaintiffs cite *Environmental Conservation Organization v. City of Dallas* for the proposition that the leeway granted by the Supreme Court in *Sinochem* has been limited by the Fifth Circuit. *See* Pls.' Opp'n 4 n.1 (citing 529 F.3d 519, 525 (5th Cir. 2008)). The Fifth Circuit recognized that "in some limited instances, a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." *Id.* at 525. This includes "where subject-matter or personal jurisdiction is difficult to determine, and forum non conveniens considerations weigh heavily in favor of dismissal." *Id.* (quoting *Sinochem*, 549 U.S. at 425). The particular holding of *Environmental Conservation* opinion is inapposite because it involved the Fifth Circuit deciding which of two equally complex threshold issues of res judicata and constitutional standing should be decided first. *See* 529 F.3d at 524-26. This case, however, is more like *Sinochem*, where the Supreme Court, in deciding the disposition preference between a complicated jurisdictional issue and a simpler forum issue, advised courts to pragmatically and "properly take[] the less burdensome course." *See* 549 U.S. at 436.

---

[1] Plaintiffs quote *Sinochem* for the proposition that "jurisdictional questions ordinarily must precede merits determinations in dispositional order…" Pls.' Opp'n 5. As the very next sentence makes clear, however, there are exceptions to this. In appropriate circumstances, for example, "a court may dismiss for lack of personal jurisdiction without first establishing subject-matter jurisdiction." *Sinochem*, 549 U.S. at 531.

Plaintiffs' allegation that its remand motion moots PwC US's venue motion is thus based on the presumption that the Court has already elected to rule on the issue of remand over the issue of improper venue. PwC US will not join in this presumption, nor will it speculate as to the Court's preference between threshold issues.

**B. Federal Rule of Civil Procedure 41(b) unambiguously establishes that an improper-venue dismissal does not constitute a ruling on the merits; the granting of PwC US's Motion to Dismiss here would not alter that conclusion.**

As mentioned above, Rule 41(b) contains an exception providing that claims dismissed for improper venue are considered not to have been dismissed on the merits. *See* Fed. R. Civ. P. 41(b). So, in spite of Plaintiffs' allegation to the contrary, the granting of PwC US's Motion to Dismiss here would not require the Court to rule on the merits. This is especially true when the requested grounds for dismissal are considered. Venue is not proper in this Court because Plaintiffs, while not parties to the contract they allege has been breached, seek the contract's benefits in asserting causes of action against PwC US for breach of contract and accountant malpractice. If Plaintiffs have chosen to embrace the contract for this purpose, they must abide by the forum selection clause in the contract, which provides that the courts of Northern Ireland have exclusive jurisdiction. *See* Engagement Letter Contract § 11 (R. Doc. 1-6). Given that Plaintiffs' invocation of the contract appears on the face of their petition, the Court is not required to consider the underlying merits of the case when enforcing the forum selection clause; Plaintiffs' allegations can simply be accepted as true. *See* Pls.' Verified Pet. ¶¶ 17-18. This is the reasoning espoused by the Fifth Circuit in *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006).

Although Plaintiffs cite the Fifth Circuit's decision in *Adams* for the proposition that non-parties to a contract cannot be bound by forum selection clauses found therein, the *Hellenic* case

was decided by the Fifth Circuit one year after *Adams*, providing a major exception to *Adams*'s general rule.[2] In particular, the *Hellenic* doctrine of direct-benefit estoppel provides that non-signatories, "who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate" the contract's forum selection clause will be estopped from doing so because of the benefits they have received. *Hellenic*, 464 F.3d at 517-18. Here, although Plaintiffs now appear to claim that the contract ultimately proved to be of no benefit to them, the petition nonetheless contains the allegation that PwC US "knew or should have known" that its performance under the contract "was critical to continued funding" of Plaintiffs' enterprise. Pls.' Verified Pet. ¶ 18 (R. Doc. 1-2).[3] It is evident from the nature of this allegation that Plaintiffs' initially expected to derive some benefit from the contract. *See id.* Under *Hellenic*, this sort of initial (and later frustrated) benefit is sufficient for the non-signatory to become bound by a contract's forum selection clause when he later sues on the contract. *See Hellenic*, 464 F.3d at 519 ("It is clear that many benefits flowed directly to [the plaintiff non-signatory] Hellenic when [defendant] DNV performed its contract with Inlet. While Hellenic retrospectively maintains that DNV's [contractual] services ultimately proved to be of little benefit to Hellenic, there is no denying, indeed it is specifically admitted, that, at the critical moment of sale, DNV's performance was essential to Hellenic's [desired benefit]."). The *Hellenic* court also recognized the unfairness that would result from allowing a non-signatory to claim rights under a contract in order to bring suit, but then reject any accompanying terms of that contract that were uncomfortable for the non-signatory. In such a circumstance, the court held that the non-signatory "is estopped from denying the entire contract, including the forum-

---

[2] *Compare* Pls.' Opp'n 6 (citing *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004)), *with Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006).

[3] It is also worth noting again that it is undisputed that the accountancy work at issue was performed by the United Kingdom firm of PricewaterhouseCoopers LLP ("PwC UK"), and not PwC US.

selection clause." *Hellenic*, 464 F.3d at 520. The same logic should be applied here, especially since the Court is not required to parse the action's underlying merits to arrive at this conclusion. Thus, the forum selection clause should be enforced.

**C. Enforcement of the forum selection clause here is both reasonable and just; the applicable clause is found in the same contract that Plaintiffs' breach-of-contract claims arise from, and one Plaintiff is already engaged in related litigation in Northern Ireland, which is the forum targeted by the provision.**

Plaintiffs argue that enforcement of the forum selection clause would be unreasonable here because (a) Plaintiffs did not know all the terms of the contract when stating their claims in the "BREACH OF CONTRACT" section of their petition (*see* Pls.' Verified Pet. ¶ 17 (section heading above the cited paragraph)); (b) Plaintiffs' claims against PwC US are not actually based on the contract containing the forum selection clause, but rather relate to the timeliness of the report prepared for Northern Bank Limited ("Northern Bank"); and (c) some events giving rise to Plaintiffs' claims occurred in Louisiana, making Louisiana courts better suited to resolving the issues (*see* Pls.' Opp'n 7-8). With regard to the first point, a non-signatory is only required to have actual knowledge of the existence of the contract containing the clause, not each provision contained therein. *See Hellenic*, 464 F.3d at 519 (confirming that the non-signatory there did not receive the contract itself but acknowledged receiving "classification documents that expressly *refer*[*ed*] to" the contract containing the forum selection clause). Accordingly, Plaintiffs' first objection is without merit. In terms of the second point, the argument that the alleged delay by PwC US in preparing the report does not arise out of the disputed contract is misguided. The alleged date that the report was to be delivered to Northern Bank is established by the very same

contract that contains the forum selection clause.[4] Accordingly, Plaintiffs cannot escape the application of the clause on that ground. Finally, Plaintiffs argue that many of the acts and omissions that underlie its claims occurred in Louisiana, and thus the proceeding should be maintained here. *See* Pls.' Opp'n 6-7. This argument is specious at best. The only connection that Louisiana has to this proceeding is the fact that Plaintiff Burrus Mortgage is a Louisiana partnership. The entirety of the accountancy work at issue was performed by PwC UK (and not PwC US) in Northern Ireland, not Louisiana. *See* Mot. to Dismiss 4. Further, Plaintiff Newton is already engaged in related litigation with Northern Bank in Northern Ireland, which is the forum specified in the contract. *See* Co-Def. Northern Bank's 1st Supp'l Mem. in Supp. of Rule 12(B) Mot. to Dismiss 1-2 (R. Doc. 35). Thus, forcing Plaintiffs to abide by the forum selection clause here is neither unreasonable nor unjust.

## CONCLUSION

For the foregoing reasons, PwC US respectfully requests that the Court enforce the forum selection clause against Plaintiffs and grant PwC US's Motion to Dismiss for Improper Venue. While Plaintiffs are not parties to the contract containing the clause in question, they seek the contract's benefits in asserting causes of action against PwC US for breach of contract and accountant malpractice. If Plaintiffs have chosen to embrace the contract for this purpose, they must abide by its terms.

---

[4] *Compare* Pls.' Verified Pet. ¶ 19 (identifying the deadline for NBL to receive the business report from PwC US), *with* Engagement Letter Contract § 3 (mandating delivery contemporaneous with the deadline established in Plaintiffs' petition).

{N2578510.1}

Respectfully submitted,

*/s/ Michael B. DePetrillo*
HARRY S. HARDIN, III (#6540) (T.A.)
MICHAEL B. DEPETRILLO (#31130)
Jones, Walker, Waechter, Poitevent,
 Carrère & Denègre, L. L. P.
201 St. Charles Ave.
New Orleans, LA 70170-5100
Telephone:  (504) 582-8216
Facsimile:  (504) 589-8216
hhardin@joneswalker.com
mdepetrillo@joneswalker.com

- and -

DAVID M. FINE (Admitted *Pro Hac Vice*)
King & Spalding LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
dfine@kslaw.com

*Attorneys for the U.S. firm PricewaterhouseCoopers LLP, a Delaware limited liability partnership*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing pleading has been forwarded this day to all counsel of record, ☐ by e-mail, ☐ by facsimile, ☒ by CM/ECF, ☐ by hand,  ☐ by United States mail, postage prepaid and properly addressed, this 22nd day of January 2013.

*/s/ Michael B. DePetrillo*

{N2578510.1}