UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BURRUS MORTGAGE PORTFOLIO PARTNERSHIP III AND GEORGE J. NEWTON, III     Plaintiffs | * * * * * | CIVIL ACTION NO. 12-CV-1445 |
| VERSUS | * * | JUDGE ENGELHARDT |
| NORTHERN BANK LIMITED AND PRICEWATERHOUSECOOPERS, LLP     Defendants. | * * * * | MAGISTRATE CHASEZ |

* * * * * * * * * * * * * * * * * *************************

**SUR-REPLY MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

**MAY IT PLEASE THE COURT:**

Plaintiffs, Burrus Mortgage Portfolio Partnership III ("BMPP3") and George J. Newton, III ("Mr. Newton") (collectively, "Plaintiffs"), submit this sur-reply memorandum in opposition to the Motion to Dismiss (Rec. Doc. 17) filed by Defendant, PricewaterhouseCoopers, LLP ("PwC-USA"). Fatally to its position, PwC-USA continues to miss the point that Plaintiffs are not signatories to the contract that contains the forum selection clause upon which PwC-USA's venue objection is based. PwC-USA also incorrectly argues, for the first time in its reply memorandum (Rec. Doc. 155), for the application of an exceptional doctrine that does not apply to negate the propriety of venue in this District.

**A.**    **The Theory of "Direct Benefits Estoppel" Does Not Apply.**

Because Plaintiffs are not signatories to the contract cited by PwC-USA, they are not bound by the forum selection clause in that contract. *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 652 (5th Cir. 2004) (finding that a non-party to a contract cannot be bound by a forum selection clause therein). PwC-USA, in its reply memorandum, attempts to

avoid the application of the general rule by invoking the exception of "direct benefits estoppel" as discussed in *Hellenic Investment Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514 (5th Cir. 2006). PwC-USA's reliance on *Hellenic* is unfounded.

The Fifth Circuit's decision in *Hellenic* was fact-driven and its discussion of the theory of direct benefits estoppel has subsequently been clarified by the Fifth Circuit. In *Hellenic*, the court held that a ship buyer was bound by a forum selection clause where the underlying certificate that referenced a document containing the clause was expressly relied upon by the buyer in purchasing the ship. The plaintiff buyer entered into a purchase agreement with the seller, which agreement designated the defendant as the classification society that would perform inspections upon which the buyer would rely in consummating the sale. *Hellenic*, 464 F.3d at 515-16. Under the header of the ship's classification certificate, which was prepared by the defendant, was a statement that the certificate was issued under the provisions of the "Rules" of the defendant. *Id.* at 516. Those Rules contained a Norwegian forum selection clause. *Id.* at 516-17. The plaintiff relied upon the defendant's issuance of the clean class confirmation certificate in purchasing the ship, and the plaintiff brought suit when a later inspection revealed deficiencies that should have been revealed by the defendant's inspections. *Id.* at 516.

The court in *Hellenic* enforced the forum selection clause because the plaintiff had "embraced" the contract containing the clause. *Id.* at 517-18. Specifically, the misrepresentations alleged by the plaintiff all stemmed from the defendant's certificates, and thus the claims were premised upon the defendant's Rules, which contained the subject clause. *Id.* at 518. The lynchpin of the court's decision, and the factor that distinguishes *Hellenic* from the present case, is that the plaintiff's claim in *Hellenic* expressly required that the defendant's performance be for the plaintiff's benefit, and thus the plaintiff was estopped from disclaiming

the applicability of the forum selection clause. *Id.* at 519.  Here, however, Plaintiffs did not require any performance of the PricewaterhouseCoopers ("PwC") entities.  Defendant, **<u>Northern Bank Limited</u>** ("NBL") required the performance of the business review.  Rec. Doc. 1-2, ¶ 17.  Moreover, to the extent that the business review contract contemplated that some entity other than NBL would obtain a benefit from the contract, that entity would have been **<u>Seatem</u>**, who paid for the review—not Plaintiffs.  *See id.* ¶ 18.[1]

In contrast to *Hellenic*, in which the plaintiff ship buyer was a party to a contract (sale agreement) that expressly relied upon the defendant's "Rules" containing a forum selection clause, neither of Plaintiffs in this matter was a signatory to any contract that expressly relied upon the PwC business review contract.  As shown by the document upon which PwC-USA relies, **Seatem** was a signatory—not Plaintiffs, who are investors in Seatem.  *See* Rec. Doc. 1-6, pp. 2, 7.  Thus, unlike the scenario in *Hellenic* in which the plaintiff was a party to a contract that relied upon another document with a forum selection clause, Plaintiffs herein neither requested the business review nor were signatories to the contract underlying that review.[2]  Put simply, while the plaintiff in *Hellenic* specifically agreed that the document (classification certificate) incorporating the forum selection clause was necessary for the plaintiff to consummate its hoped-for purchase transaction, Plaintiffs herein have not alleged that they needed the business review contract to receive any benefit.  *Hellenic* is factually distinguishable, and its extension of the theory of direct benefits estoppel, usually applicable to *arbitration* cases, to forum selection clauses does not apply under the facts of this case.

---

[1] In fact, Seatem did ***not*** obtain a benefit.  *See* Rec. Doc. 1-2, ¶¶ 19-27 (discussing deficient and untimely nature of the business review).
[2] Of course, as discussed *infra*, this is another reason why determination of PwC-USA's venue objection would be premature, to the extent PwC-USA makes a contrary assertion, which would require a ruling on the merits.

More recent Fifth Circuit case law, which PwC-USA does not cite, clarified the Fifth Circuit's holding in *Hellenic*. Namely, the discussion in *Noble Drilling Services, Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010), reveals that because Plaintiffs did not "embrace" the contract as that term is defined in the estoppel jurisprudence, they are not estopped from denying the contract. In *Noble Drilling Services*, a buyer of wire mooring rope sued the seller for breach of contract. The buyer contracted with the seller to buy the rope from a particular manufacturer. *Id.* at 471. The seller had a distributorship agreement containing an arbitration clause with the manufacturer. Also, the seller entered into purchase order agreements with the manufacturer in order to fill the buyer's order, and those agreements incorporated an arbitration clause. *Id.* The court noted that no evidence suggested that the plaintiff buyer had ever been furnished a copy of the agreements containing arbitration clauses prior to the litigation. *Id.* at 471-72. Although the district court had compelled arbitration based on the doctrine of direct benefits estoppel, the Fifth Circuit reversed.

In *Noble Drilling Services*, the plaintiff, with whom the Fifth Circuit agreed, made four arguments remarkably similar to those raised by Plaintiffs in this matter:

- That the plaintiff was not a party to the contract in question;
- That the plaintiff was expressly excluded from the contracts;[3]
- That the plaintiff was not "either party" described in the arbitration clause;[4] and
- That the plaintiff was not relying upon the contracts in question in bringing the lawsuit.

---

[3] In *Noble Drilling Services*, the distributorship agreement expressly disclaimed any intention to benefit any third party. *Id.* at 471. Likewise, the Terms of Business, which form part of the business review contract, and which have been cited by the PwC defendants, contain similar disclaiming language. *See* Rec. Doc. 109-3, p. 7 (stating that deliverables are provided "solely for your internal use and benefit"); p. 8 (purporting to disclaim liability to any third party with respect to "the Services or Deliverables"); p. 10 (stating that "[s]ave in respect of the rights of Personnel or PwC Entities which are expressly provided in this Contract a person or entity which is not a party to the Contract has no rights under the Contract (Rights of Third Parties ) Act 1999 to enforce any term of the Contract.").

[4] This is similar to the first argument that the plaintiff was not a party to the contract in question.

*Id.* at 473.  The court held that the plaintiff had not "embraced" the contract so as to subject itself to the arbitration clause.  In holding that the plaintiff was not estopped from denying the applicability of the arbitration clause, the court explained that "[a] non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract."  *Id.*  Just as the plaintiff in *Noble Drilling Services* met neither of these possibilities, nor do Plaintiffs in the instant matter.

With respect to the first possible estoppel scenario, the Fifth Circuit explained that a party must ***knowingly*** seek and obtain direct benefits from the contract.  *Id.*  Importantly, the court in *Noble Drilling Services* interpreted *Hellenic* to impose an ***actual knowledge*** requirement:  "To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause."  *Id.* (citing *Hellenic*, 464 F.3d at 515-16, 519).  Just as in the present case, the plaintiff in *Noble Drilling Services* did not have any knowledge of the contents of the agreement containing the forum selection clause until after the litigation began.  *Id.*  Thus, the court found, "Because ***no evidence*** supports a conclusion ***that Noble knew of the*** <u>***terms***</u> of the Purchase Order Agreements, Noble <u>***could not have the knowledge necessary***</u> to support the <u>***'knowingly exploited'***</u> ***theory of direct benefits estoppel***."  *Id.* at 474 (emphasis added).  Here, it is undisputed that Mr. Newton did not see the contract until after the litigation began.  *See* Rec. Doc. 30-1, ¶ 5 (Declaration of George J. Newton, III).  Therefore, Mr. Newton could not have knowingly sought direct benefits from the business review contract.

With respect to the second estoppel possibility, the Fifth Circuit explained that it requires the plaintiff to seek to enforce contractual terms or to assert claims that must be determined by

reference to the contract. *Noble Drilling Services*, 620 F.3d at 473-74. The court in *Noble Drilling Services* found that the buyer did not meet this standard because it did not seek to enforce a specific contractual term, and it disclaimed any reliance on the agreements containing the arbitration clause. *Id.* at 474-75. Likewise, here, Plaintiffs do not seek to enforce contractual terms, and regardless of what the contractual terms may or may not say about the timing of deliverables following the business review, it was negligent for the PwC defendant(s) to provide a substandard and tardy report. Thus, Plaintiffs' claims do not require reference to the terms of the contract.

Although Plaintiffs' claims do not require reference to the contract cited by PwC-USA, PwC-USA incorrectly suggests otherwise. It alleges that the contract establishes the date by which the report should have been delivered. Rec. Doc. 155, pp. 6-7. This assertion is irrelevant. First, as Plaintiffs allege, although PwC was to present the finalized report by a specified date in December 2009, Rec. Doc. 1-2, ¶ 19, the **contractual provision** that PwC-USA cites states, "We will **aim to report** in the week commencing 7 December 2009 . . . ." Rec. Doc. 1-6, p. 3 (emphasis added). Second, PwC had an independent **tort duty** to timely provide the report. Although Plaintiffs have pled a breach of contract claim, as to the contract of PwC **with NBL and Seatem**, Plaintiffs rely upon the tort duty not to engage in malpractice, rather than a duty of PwC to follow whatever standards it may have set for itself. *See* Rec. Doc. 1-2, ¶ 54 (alleging that **in committing malpractice**, PwC "also breached [its] contract **with Bank/Seatem <u>in so doing</u>**") (emphasis added); *see also Global Oil Tools v. Barnhill*, No. 12-1507, 2012 WL 4928912, at *6 (E.D. La. Oct. 16, 2012) (Barbier, J.) (distinguishing *Hellenic* on the grounds that "[i]n *Hellenic*, without [the defendant's] Rules, the plaintiff had no claim against [the defendant]," whereas the plaintiff in *Barnhill* had claims against the defendants regardless of the

agreements that contained a forum selection clause). Plaintiffs state a claim against PwC-USA regardless of what the contract says about timing other standards of care, and thus Plaintiffs' claims do not require reference to contractual terms so as to warrant invocation of the exceptional doctrine of direct benefits estoppel.

NBL requested the business review. Plaintiffs did not contract for the business review, and they did not expect to receive a direct benefit. However, they *did* suffer injury because the business review—which they neither requested nor paid for—caused them *harm* due to their financial interest in Seatem. They now seek redress for that injury, and they should not be estopped from doing so in this Court.

**B.**     **Consideration of PwC-USA's Motion Would Require a Ruling on the Merits.**

Although PwC-USA touts the general rule that a motion to dismiss on grounds of improper venue may be decided as a threshold issue, it incorrectly urges the Court that its motion may be considered without the necessity of reaching the merits. As explained in Plaintiffs' memorandum in opposition, for the Court to determine whether Plaintiffs are bound by the forum selection clause, the Court would first have to determine whether Plaintiffs are bound by the terms of the contract—as parties to the contract or otherwise. PwC-USA erroneously cites Paragraphs 17-18 of Plaintiffs' Petition for the assertion that Plaintiffs have invoked the contract. *See* Rec. Doc. 155, p. 4. In the cited portion of the Petition, Plaintiffs do not attempt to establish that they are contracting parties or that they are third-party beneficiaries of the contract:

> In November 2009, the Bank gave [PwC] the assignment to give the Bank a report on Seatem, stating that it did not understand Seatem's business. It was made clear by Bank to Seatem that the review/renewal of Seatem's loans were dependent on [PwC's] report.

\* \* \*

> [PwC] knew or should have known that [its] evaluation of Seatem was critical to continued funding of Seatem by Bank and had the duty to Seatem to exercise a due standard of care in [its] evaluation, especially since Seatem was the entity that was required to pay for the evaluation.

Rec. Doc. 1-2, ¶¶ 17-18.

Importantly, the portion of the Petition that PwC-USA cites refers to the fact that **NBL—not Plaintiffs**—gave PwC the assignment to perform the business review. *Id.* Moreover, the language that PwC-USA cites clearly states that **Seatem** was required to pay for the business evaluation. *Id.* Notably absent is any attempt by Plaintiffs to claim beneficiary status under the contract that NBL entered into with PwC. In fact, the Petition alleges that PwC breached its contract with **NBL and Seatem**—not with Plaintiffs. *See id.* ¶ 54 (alleging that PwC "committed malpractice in that [its] actions [fell] below the applicable standard of care and also breached [its] contract *with Bank/Seatem* in so doing") (emphasis added). Plaintiffs have not alleged that they are signatories to or beneficiaries of the contract. Therefore, resolution of PwC-USA's venue objection would require the Court to go beyond the pleadings and address the merits. Plaintiffs respectfully submit that such a ruling on the merits would be premature prior to a ruling on Plaintiffs' Motion to Remand (Rec. Doc. 13).

**C.**     **PwC-USA May Not Enforce a Clause in a Contract to Which It Is Not a Party.**

PwC-USA has alleged it is not a party to the contract. Thus, it may not move to dismiss Plaintiffs' claims based upon a contract to which it agrees it is neither a contracting party nor an intended beneficiary. In moving to dismiss based upon the terms of a contract to which it is not a signatory, PwC-USA attempts to do what it incorrectly accuses Plaintiffs of doing. PwC-USA attempts to avail itself of a forum selection clause in a contract from which it cannot reasonably expect to receive a benefit. Indeed, the entire basis for PwC-USA's removal of this action to this Court is its allegation that it has **no connection to the contract** at issue. *See* Rec. Doc. 1, ¶ 15;

Rec. Doc. 1-11.  It is unfair and unreasonable for PwC-USA to attempt to enforce a contract to which it avers it is not a party.  *See Cameron v. Group Voyagers, Inc.*, 308 F. Supp. 2d 1232, 1239 (D. Colo. 2004) (finding that enforcement of a mandatory forum selection clause would be unreasonable under the facts, in that enforcement of "an ambiguous forum selection clause [was urged] by a ***party*** (GVI) ***claiming to be completely independent*** of the entity (CCT) to whose benefit the clause ostensibly inures . . . .") (emphasis added).  Thus, even if the clause was enforceable against Plaintiffs (which it is not), PwC-USA should not be permitted to obtain an alleged contractual remedy based on a contract to which it is a non-signatory.[5]

## CONCLUSION

For the foregoing reasons, PwC-USA's Motion to Dismiss (Rec. Doc. 17) should be denied.

Respectfully submitted,

*/s/* James M. Garner
JAMES M. GARNER, #19589
MARTHA Y. CURTIS, #20446, T.A.
MATTHEW C. CLARK #31102
**SHER GARNER CAHILL RICHTER
     KLEIN & HILBERT, L.L.C.**
909 Poydras Street, Suite 2800
New Orleans, Louisiana 70112
Telephone: (504) 299-2100
Facsimile:  (504) 299-2300
**ATTORNEYS FOR PLAINTIFFS
BURRUS MORTGAGE PORTOFOLIO
PARTNERSHIP III AND GEORGE J. NEWTON III**

---

[5]  Furthermore, Plaintiffs submit that, as explained in their memorandum in opposition, enforcement of the clause would be unreasonable and unjust.  Plaintiffs are not signatories, and as explained *supra*, are not estopped from bringing their claims in this forum.  The business review contract has no connection to Plaintiffs' claims against NBL, which are based upon the guarantee ***that Mr. Newton signed in Louisiana***.  *See* Rec. Doc. 130-1, ¶ 5.

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing document has been served on all counsel of record through electronic mail this 24th day of January, 2013.

/s/ James M. Garner
**JAMES M. GARNER**