UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

BURRUS MORTGAGE PORTFOLIO                          CIVIL ACTION
PARTNERSHIP III, ET AL

VERSUS                                             NO.  12-1445

NORTHERN BANK LIMITED, ET AL                       SECTION "N"  (5)

## ORDER AND REASONS

Before the Court are plaintiffs' Motion to Remand (Rec. Doc. 13) and several motions to

dismiss filed by the defendants (Rec. Docs. 17, 109, and 110).[1]

## I.  BACKGROUND:

This case arises out of a loan facility extended by defendant Northern Bank Limited, a

United Kingdom company with its headquarters in Belfast, Northern Ireland, to Seatem

Attraction Tickets (UK) Limited ("Seatem"), a ticketing company located in Belfast, Northern

Ireland.  Plaintiffs George J. Newton, III and Burrus Mortgage Portfolio Partnership III

("BMPP3") were alleged investors in Seatem.  (Petition, Rec. Doc. 1-2 at ¶¶ I, 28).   Plaintiffs

allege that in 2009, Northern Bank Limited ("Northern Bank") insisted upon obtaining a

personal guarantee from Newton if it was to maintain the Seatem loan facility at existing levels

(the "Guarantee").  *Id.* at ¶¶ 9-10.   Also in 2009, Northern Bank arranged for a business review

of Seatem and associated companies.   To accomplish this task, Northern Bank engaged (via

letter agreement) the Belfast office of the accounting firm PricewaterhouseCoopers LLP, a

---

[1]  As discussed below, the personal jurisdiction aspects of Docs. 109 and 110 are not
presently before the Court.

limited liability partnership organized and existing under the laws of England and Wales (PwC UK).  *See* Engagement Letter dated Nov. 2, 2009 (Rec. Doc. 1-6) (the "Engagement Letter"). Plaintiffs allege that the report resulting from this review (the "Report") was to be delivered to Northern Bank on December 5, 2009, but was not finalized until the last week of February 2010. *See* Petition, Rec. Doc. 1-2 at ¶ 19.  They allege that Seatem was harmed by this delay because Northern Bank did not transfer certain letters of credit during this period, which led to declining revenues and a downward spiral of events for Seatem, including the equivalent of involuntary bankruptcy.  *Id.* at ¶¶ 20, 26-27.  Plaintiffs also allege that the Report was flawed (though they do not specify any errors) and was prepared by a junior accountant.  *Id.* at ¶ 22.

BMPP3 claims to have lost more than US$ 20 million in 2010 as a result of Seatem's difficulties.  *Id.* at ¶ 28.  In addition, despite allegedly assuring Newton that it would not attempt to collect on the Guarantee, Northern Bank has begun efforts to do so.  *See id.* at ¶ 35 and Exh. A (Nov. 16, 2011 Demand Letter to Newton).  Indeed, on January 10, 2012, Northern Bank commenced an action against Newton in the High Court of Justice in Northern Ireland, Queen's Bench Division.  *See* Rec. Doc. 109-2.  In February 2012, the Northern Ireland Court granted permission for Northern Bank to make foreign service of process on Newton in Florida.  *Id.* Shortly thereafter, on April 13, 2012, Newton and BMPP3 filed the instant action in Civil District Court for the Parish of Orleans, State of Louisiana, against Northern Bank and PricewaterhouseCoopers LLP, a Delaware limited liability partnership with offices in the United States ("PwC US"), including in Louisiana and Florida.  *See* Rec. Doc. 1-2.  They assert claims against Northern Bank for (1) misrepresentation, (2) fraudulent inducement, (3) detrimental

reliance, (4) bad faith breach of oral contracts, and (5) abuse of rights, all in connection with the Guarantee and Northern Bank's lending arrangements with Seatem.  *Id.*   Against PwC US, the plaintiffs assert a claim (1) for accounting malpractice based upon alleged actions and omissions in connection with the Report and (2) for breach of the contract between the accountants, Northern Bank, and Seatem.  *Id.*

Northern Bank was served on May 8, 2012, and timely removed the action to this Court on June 6, 2012, on the basis of diversity jurisdiction.  *See* Notice of Removal (Rec. Doc. 1). Northern Bank contends that the firm of PwC US — a United States accounting firm with no involvement in the Engagement Letter, the Report, or any of the alleged events giving rise to the plaintiffs' claims — has been fraudulently and improperly joined.  *Id.*  In support of removal, Northern Bank has attached to its Notice of Removal an authenticated copy of the Engagement Letter (which states clearly that the accounting firm "is a limited liability partnership registered in England with registered number OC303525" and registered office at "1 Embankment Place, London WC2N 8RH").  *See* Rec. Doc. 1-6.   Northern Bank also has attached the declarations of two PwC US employees attesting to the separateness of these two legal entities — one organized under the laws of the United States (PwC US), with no offices in the United Kingdom; the other organized under the laws of England and Wales (PwC UK), with offices in England, Wales, Scotland, and Northern Ireland, but not in the United States — and to the fact that the Engagement Letter (and the work related thereto) was between Northern Bank and PwC UK, not PwC US.  *See* Rec. Docs. 1-8, 1-10 ("The accountancy work at issue in the Petition was not performed by PwC US or by any of its partners or employees.").

3

Thirty days after removal, on July 6, 2012, plaintiffs filed a First Amending Petition, which (1) added two new defendants:  PwC UK and PricewaterhouseCoopers International Limited, an English private company domiciled in the United Kingdom ("PwCIL"); and (2) added a new, sixth cause of action, namely "vicarious/alter ego/single business enterprise liability," against all three PwC defendants.  *See* Rec. Doc. 12.   Simultaneously with their First Amending Petition, plaintiffs filed a Motion to Remand (Rec. Doc. 13), in which they argue that they do have a possibility of recovery against PwC US by virtue of the "alter ego" or "single business enterprise" theories (raised for the first time in their amending petition).

PwC US has filed a motion to dismiss for improper venue on grounds that plaintiffs' accounting claims are based upon a contract (the Engagement Letter) containing a forum selection clause that provides for jurisdiction and venue in Northern Ireland.  *See* Rec. Doc. 17.   PwC UK has filed a motion to dismiss on grounds of improper venue, forum non conveniens, lack of personal jurisdiction, and failure to state a claim.  *See* Rec. Doc. 109.   PwCIL has filed a motion to dismiss on grounds of improper venue, forum non conveniens, *lis alibi pendens* (based on the pending action against Newton in Northern Ireland), lack of personal jurisdiction, and failure to state a claim.  *See* Rec. Doc. 110.  Northern Bank has also filed a motion to dismiss on grounds of *lis alibi pendens,* forum non conveniens, lack of personal jurisdiction, and failure to state a claim, which is presently set for submission on February 20, 2013.  *See* Rec. Doc. 16.   Because plaintiffs have sought additional discovery in connection with the motions to dismiss for lack of personal jurisdiction, the Court has severed and continued the personal jurisdiction aspects of the PwC UK and PwCIL motions (Rec. Docs. 109 and 110).  *See* Rec. Doc. 137.

Citing *Sinochem International Co., Ltd. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007), the defendants have urged the Court to consider the forum non conveniens and improper venue motions prior to deciding plaintiffs' motion to remand.   The Court agrees that deciding venue before jurisdiction can be appropriate where the jurisdictional inquiry is particularly complicated or difficult to determine.  *See, e.g., Ibarra v. Orica United States of America Inc.,* 2012 WL 4353436 *2 (5th Cir. Sep 24, 2012) (citing *Sinochem*).   However, as set forth below, the Court finds the issue of subject matter jurisdiction (*i.e.*, that of improper joinder) to be straightforward in this case.   Thus, the Court will consider the motion to remand first, as a threshold matter, before turning to the motions to dismiss.

## II.  **MOTION TO REMAND:**

Plaintiffs have moved to remand the case to Louisiana state court on grounds that complete diversity of citizenship is lacking.   (Rec. Doc. 13).   They contend that they have a possibility of recovering against PwC US in Louisiana state court on the basis that PwC US is an "alter ego" or "single business enterprise" with PwC UK.   Each defendant has filed a memorandum in opposition to the motion to remand.  *See* Rec. Docs. 23, 24, 120, 121. Plaintiffs have filed three reply memoranda.  *See* Rec. Docs. 36, 37, 148.

### A.  **Diversity Jurisdiction:**

"To remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 572 (5th Cir.2004) (en banc), *cert. denied,* 544 U.S. 992 (2005).  Further, no properly joined, served defendant may be a "citizen of the State in

5

which such action is brought." 28 U.S.C. § 1441(b).  Here, there is no dispute that the matter in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.  The sole issue is whether there is complete diversity — *i.e.*, whether the citizenship of each defendant is diverse from that of each plaintiff. *See, e.g., Vela v. Manning*, 469 Fed. Appx. 319, 320 (5th Cir. 2012) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)).

There is no dispute that Northern Bank is a citizen of the United Kingdom and therefore has citizenship that is diverse from those of the plaintiffs.   The dispute lies with the joinder of PwC US, which is a Delaware limited liability partnership and is alleged to have at least one general partner who is a citizen of Florida.  Plaintiff George J. Newton, III, is likewise a citizen of Florida.[2]  Thus, diversity is complete only if PwC was improperly joined.

### B.  <u>The Test for Improper Joinder</u>:

"The doctrine of improper joinder is a 'narrow exception' to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a 'heavy one.' " *Campbell v. Stone Ins., Inc.*, 509 F.3d 665, 669 (5th Cir. 2007) (quoting *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (quotation omitted)).  "Improper joinder may be established by either '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.' " *Menendez v. Wal-Mart Stores, Inc.*, 364 Fed. Appx. 62, 68 (5th Cir. 2010) (quoting *Smallwood*, 385 F.3d at 573).

---

[2]  PwC US is also alleged to have a general partner who is a citizen of Louisiana. BMPP3 is a Louisiana partnership with at least one general partner (BIG Holding Corporation) that is a citizen of Louisiana.  Thus the citizenship of PwC US is not diverse from the citizenship of either plaintiff.

1. <u>First Prong</u>:

Here, Northern Bank invokes both prongs – actual fraud in the pleading of jurisdictional facts and the inability to establish a claim against the non-diverse party.   With regard to the first prong, Northern Bank contends that the facts belie any innocent mistake on plaintiffs' part as to the identity of the PwC firm involved in the Report.   In support of this argument, Northern Bank points to:  (1) the clear statement on the first page of the Engagement Letter describing in clear, precise terms the identity of the U.K. accounting firm that was hired for the Seatem job (including its address and registration number); (2) the plaintiffs' knowledge of the firm's identity through their course of dealings throughout the underlying transactions; (3) the sophisticated nature of the plaintiffs, who manage highly complex, international business entities grossing tens of millions of dollars per year; and (4) the competency of plaintiffs' counsel, a firm known for handling sophisticated, complex commercial litigation.  (Rec. Doc. 1 at pp.7-8).

Plaintiffs counter this argument by asserting (1) that they thought they were dealing with PwC US, (2) that they concluded from PwC websites that PwC US "is one in the same with all other PwC global network members," and (3) that they did not receive a copy of the Engagement Letter until after the instant suit was filed.  *See* Rec. Doc. 13-1 at 10.   The Court agrees with Northern Bank that the former two assertions are somewhat difficult to swallow given the plaintiffs' sophistication with international business.[3]   The third assertion is also surprising,

---

[3]  The Report reveals, as plaintiffs allege, a "multi-million dollar complex international enterprise." *See* Report (Rec. Doc. 117-2 at p.10 of 95); Petition (Rec. Doc. 1-2) at ¶22.  George Newton is identified as part of this complex international enterprise, according to plaintiffs' characterization, as "a principal of Seatem, at the top of Seatem's organizational chart."  *See* Rec. Doc. 133 at 17.   It would seem unlikely that such an individual would be confused, as plaintiffs now claim, by an international network of accounting firms.  Indeed, the Burrus

given the details cited in the plaintiffs' original petition regarding the accountants' contractual

obligations, including specifying the time that the report was to be delivered.  *See* Petition (Rec.

Doc. 1-2) at ¶ 19 (the accountants "were to present the finalized report by December 5, 2009");

Engagement Letter at (Rec. Doc. 1-6) § 3 ("We will prepare and deliver a written report

summarising our findings.  We will aim to report in the week commencing 7 December 2009

...").   Nevertheless, the Court need not decide this issue of actual fraud in the pleading, for it

finds that the defendants have established handily the second prong of improper joinder.

    2. <u>Second Prong Test</u>:

    In deciding the second form of improper joinder, the test is "whether the defendant has

demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant,

which stated differently means that there is no reasonable basis for the district court to predict

that the plaintiff might be able to recover against an in-state defendant."  *Smallwood*, 385 F.3d at

573.   "If there is arguably a *reasonable basis* for predicting that the state law might impose

liability on the facts involved, then there is no fraudulent joinder.  This possibility, however*,

must be reasonable*, not merely theoretical."  *Travis v. Irby*, 326 F.3d 644, 648 (5th Cir. 2003)

(emphasis in original) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*,

313 F.3d 305, 312 (5th Cir. 2002)).

---

website describes Mr. Newton as a Certified Public Accountant, who began his career at a "big
eight" international accounting firm, and has served as chief financial officer and chief executive
officer at several investment and development companies.  *See*
http://www.burrusgroup.com/people.htm  (last visited Jan. 28, 2013).

In "predicting whether a plaintiff has a reasonable basis of recovery under state law," the "court may resolve the issue in one of two ways":   (1) "The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant;" or (2) in cases where it appears that the "plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder," the Court "may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.  Where the Court finds the latter approach to be warranted, it may "consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim." *Campbell*, 509 F.3d at 669.  However, the purpose of the summary inquiry is solely "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74.  The focus is on the propriety of joinder, not the merits, and the plaintiffs' motive for joining the in-state defendant is irrelevant. *Id.*  Further, "the court must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff" and "must resolve all ambiguities of state law in favor of the non-removing party." *Campbell*, 509 F.3d at 669 (internal quotations omitted).

**C.  Second Prong Analysis:**

Plaintiffs offer nothing to dispute the clear evidence that no partner or employee of PwC US had any involvement in the Engagement Letter, the Report, or any of the alleged acts or omissions described in plaintiffs' petition.   Rather, plaintiffs argue that their possibility of recovery against PwC US lies with the "alter ego" or "single business enterprise" theories (raised

for the first time in their amending petition).   Plaintiffs argue that because PwC UK is a member of PwCIL (the English company which acts as a coordinating entity for its various member firms) and thereby part of a global accounting network, plaintiffs "have a viable claim against **any** member of the PwC global network under the alter ego or single business enterprise theories," including against PwC US, which is also a member of PwCIL.  Rec. Doc. 13-1 at p.8 (emphasis in original).

Defendants argue that the improper joinder of PwC US cannot be saved by theories of liability asserted for the first time after removal.  *See* Rec. Doc. 24 at 6.   The Fifth Circuit case law is quite clear on this point:   "Post-removal filings may not be considered...when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  *Griggs v. State Farm v. Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *see also Cavallini v. State Farm Mutual Auto Insurance Co.*, 44 F.3d 256, 263-265 (5th Cir. 1995) ("Cavallinis did not cite, nor have we found, any case in which such [post-removal] evidence has been considered to determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint.  In short, the Cavellinis cannot rely on their affidavits to state a DTPA claim against [the non-diverse defendant].").

Plaintiffs acknowledge, as they must, the well settled precedent which precludes consideration of newly added, post-removal theories in determining whether a non-diverse defendant has been properly joined.   Their argument is that this precedent should apply only in cases where a plaintiff has failed to state a claim against a non-diverse defendant on the face of the original complaint, not in cases where a defendant relies on material outside the complaint to

demonstrate the impropriety of the joinder.  *See* Rec. Doc. 37 at pages 5-6 and note 3.  Thus,

under plaintiffs' reasoning, although a court may not consider post-removal claims in cases

where the plaintiff has failed to articulate a claim against a non-diverse defendant on the face of

the complaint, it may do so in cases such as this one, where the original complaint states a claim

but does so only by virtue of allegations that are clearly and demonstrably meritless.  The

plaintiffs have cited no authority to support such a distinction, and this Court can find no tenable

basis for exempting such cases from the well settled rule limiting the jurisdictional inquiry to the

claims and theories set forth in state court.  The rationale articulated by the Fifth Circuit for

disregarding post-removal amendments applies with equal force in cases such as the instant one,

where the original claim against the non-diverse defendant rests upon patent misstatements, as it

does in cases where the complaint fails to articulate even a superficial claim.  *See Cavallini*, 44

F.3d at 264.[4]

Plaintiffs also argue that their "single business enterprise" evidence "merely amplifies the

basis for the claims" in the petition.  *See* Rec. Doc. 37 at 6.   The Court disagrees.  Even the most

---

[4]  The *Cavallini* court explained:

The rationale for determining removal jurisdiction on the basis of claims in the state court complaint as it exists at the time of removal is obvious.  Without such a rule, disposition of the issue would never be final, but would instead have to be revisited every time the plaintiff sought to amend the complaint to assert a new cause of action against the nondiverse defendant, all at considerable expense and delay to the parties and the state and federal courts involved.  Limiting the removal jurisdiction question to the claims in the state court complaint avoids that unacceptable result, and permits early resolution of which court has jurisdiction, so that the parties and the court can proceed with, and expeditiously conclude, the litigation.

44 F.3d at 263 (footnote omitted).

liberal reading of the original petition in this case cannot uncover the faintest hint of "alter ego" or "single business enterprise" theories.   The claims against PwC US (defined as "the Accountants" in the petition) are strictly for accounting malpractice and breach of contract based on allegations that it produced a flawed and untimely report regarding Seatem.   *See generally* Petition (Rec. Doc. 1-2).   There is no mention of any other PwC entity or any theory of vicarious liability, whether based on PwC US's membership in an international network or otherwise. Thus, this case does not fall into the category of cases where courts have allowed plaintiffs to submit post-removal affidavits for the purpose of clarifying or amplifying ambiguous jurisdictional facts.   Rather, like the plaintiffs in *Cavallini*, the plaintiffs here have attempted to "amend away" the basis for the Court's jurisdiction.   The Fifth Circuit made clear in *Cavallini* that its decisions allowing consideration of certain post-removal affidavits (*e.g. ANPAC v. Dow Quimica de Colombia S.A.*, 988 F.2d 559 (5th Cir. 1993)) do not permit post-removal amendments designed to cure improper joinder:

> The Cavallinis' proposed amended complaint does not clarify the jurisdictional facts at the time of removal; it attempts instead to amend away the basis for federal jurisdiction [*i.e.,* the fraudulent joinder].   *Dow* is not contrary to the general rule that removal jurisdiction should be determined on the basis of the state court complaint at the time of removal, and that a plaintiff cannot defeat removal by amending it. Restated, *Dow* does not stand for the proposition that, after a fraudulent joinder removal, a plaintiff may amend the complaint in order to state a claim against the nondiverse defendant, and thus divest the federal court of jurisdiction.

*Cavallini*, 44 F.3d at 265.

Accordingly, the Court will consider only materials that amplify or clarify the allegations made in state court.   The Court will not consider any materials relating to "a legal theory not alleged in the state court complaint."   *Id.* at 263.   Because no allegations or theories of "alter

ego" or "single business enterprise" were asserted in the state court complaint, this Court will not consider the allegations contained in the First Amending Petition (Rec. Doc. 12) or any of the materials relating thereto.

Other than their "alter ego" arguments, plaintiffs have offered no evidence whatsoever to refute the defendants' straightforward evidence that PwC US had no involvement in the Report, the Engagement Letter, or any of the work mentioned in the petition.  *See* Rec. Docs. 1-6, 1-8, 1-10.  Consequently, the Court can find no reasonable basis for predicting that the plaintiffs might be able to recover against PwC US on any of the allegations and theories asserted in the state court petition.  Thus, the Court finds that the defendants have carried their heavy burden of demonstrating that PwC US was improperly joined.  This Court has subject matter jurisdiction over this matter.[5]

## III.  **MOTIONS TO DISMISS RELATING TO VENUE**:

PwC UK has filed a motion to dismiss on grounds of improper venue, forum non conveniens, lack of personal jurisdiction, and failure to state a claim.  *See* Rec. Doc. 109.  PwCIL has filed a motion to dismiss on grounds of improper venue, forum non conveniens,  *lis alibi pendens* (based on the pending action against Newton in Northern Ireland), lack of personal jurisdiction, and failure to state a claim.[6]  *See* Rec. Doc. 110.  PwC US has filed a motion to dismiss on the basis of

---

[5]  The Court's finding of improper joinder disposes also of plaintiffs' argument (raised for the first time in a reply memorandum and thus arguably untimely under 28 U.S.C. § 1447(c)) that removal was procedurally flawed due to Northern Bank's failure to obtain PwC US's timely written consent.  The requirement for written consent applies only to defendants "who have been properly joined."  *See* 28 U.S.C. § 1446(b)(2)(A).

[6]  Northern Bank has also filed a motion to dismiss on grounds of *lis alibi pendens,* forum non conveniens, lack of personal jurisdiction, and failure to state a claim  *See* Rec. Doc. 16.  That motion is presently set for submission on February 20, 2013.

improper venue.  *See* Rec. Doc. 17.   Because plaintiffs have sought additional discovery in

connection with the motions to dismiss for lack of personal jurisdiction, the Court has severed and

continued the personal jurisdiction aspects of the PwC UK and PwCIL motions (Rec. Docs. 109 and

110).  *See* Rec. Doc. 137.   Before the Court today are the related arguments of improper venue,

forum non conveniens, and *lis alibi pendens.  See* Rec. Docs. 17, 109, 110, 109-1, 110-1, and

attachments thereto; *see also* Rec. Doc. 17-1, incorporated by reference in 110-1.  Plaintiffs have

filed opposition memoranda.  Rec. Docs. 130, 132, 133.   The movants have filed reply

memoranda (Rec. Docs. 146, 150, 155), and plaintiffs have filed two sur-reply memoranda (Rec.

Docs. 160, 163-2).

### A.  <u>Forum Non Conveniens</u>:

PwC UK and PwCIL seek dismissal of the case under the doctrine of forum non

conveniens.  They argue that the Northern Ireland court system (part of the judicial system of the

United Kingdom) is the appropriate forum for resolution of this dispute.   "The essence of the

forum non conveniens doctrine is that a court may decline jurisdiction and may actually dismiss

a case, even when the case is properly before the court, if the case more conveniently could be

tried in another forum."   *In re Volkswagen of America, Inc.,* 545 F.3d 304, 313 (5th Cir. 2008)

(citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947)), *cert. denied*, 555 U.S. 1172 (2009).

Before dismissing on the basis of this doctrine, a court must first determine whether an

alternative forum exists.  *Saqui v. Pride Cent. America, LLC*, 595 F.3d 206, 211 (5th Cir. 2010)

(citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981)).   "An alternative forum

exists when it is both available and adequate."  *Saqui*, 595 F.3d at 211.  "Second, the court must

determine which forum is best suited to the litigation."  *DTEX, LLC v. BBVA Bancomer, S.A.,*

508 F.3d 785, 794 (5th Cir. 2007).  In performing this second step, the court must "weigh various private and public interest factors to determine whether dismissal is warranted."  *Id.*; *Saqui*, 595 F.3d at 211.  The defendants bear the burden with regard to each element and must demonstrate that "private and public interests weigh *heavily* on the side of trial in the foreign forum." *Perforaciones Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V.*, 356 Fed. Appx. 675, 679 (5th Cir. 2009) (emphasis in original) (internal quotation omitted), *cert. denied*, 131 S.Ct. 140 (2010).

    1.  <u>The Existence of an Alternative Forum</u>:

   "An alternative forum is available when the entire case and all parties can come within the jurisdiction of that forum."  *Saqui*, 595 F.3d at 211 (internal quotation omitted).  "An alternative forum is adequate when the parties will not be deprived of all remedies or treated unfairly, even though they might not enjoy the same benefits as they might receive in an American court."  *Id.* at 212 (internal quotation omitted).   In this case, all defendants have consented to jurisdiction in Northern Ireland for purposes of responding to the claims asserted by the plaintiffs in this action, and PwC UK has submitted convincing expert testimony attesting to the adequacy of the Northern Ireland court system, its process and remedies, as well as to the fact that the plaintiffs would be able to file suit there.  *See* Rec. Doc. 109-6.  The plaintiffs have presented no countervailing evidence as to the unavailability or inadequacy of Northern Ireland as an alternative forum.[7]  On the basis of the defendants' showing and their consent to

---

    [7] In a footnote, plaintiffs submit that PwC UK has not shown Northern Ireland to be an adequate forum because the declaration of David Alister Scoffield (PwC UK's expert) does not address whether courts there would have jurisdiction over PwC US.  *See* Rec. Doc. 132 at note 16.  The Court disagrees.  First, Mr. Scoffield expressly opines that Northern Ireland courts would have jurisdiction with respect to *each* defendant, not merely the U.K. defendants.  *See*

15

jurisdiction in Northern Ireland, the Court finds that the courts of Northern Ireland constitute an adequate and available forum.

   2. <u>Private Interest Factors</u>:

   The next step is for the Court to determine which forum – Louisiana or Northern Ireland – better serves the interests of justice and convenience of the parties, in light of various private and public interest factors.  "The factors pertaining to the private interests of the litigants include: (1) the ease of access to evidence; (2) the availability of compulsory process for the attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; (4) the possibility of a view of the premises, if appropriate; and (5) any other practical factors that make trial expeditious and inexpensive."  *Saqui*, 595 F.3d at 213.

   Weighing the private interest factors in this case, it is strikingly clear that the factual and evidentiary nexus of this dispute lies in Belfast, Northern Ireland.  The controversy arises out of a loan made by a U.K. bank headquartered in Belfast to a ticketing company located in Belfast. In connection with the loan facility, this Belfast bank engaged the Belfast office of a U.K. accounting firm to conduct a business review of the Belfast ticketing company.  All of the personnel involved in the review were located in the Belfast Office.  *See* Rec. Doc. 109-4.  Also in connection with the loan facility to the Belfast ticketing company, the Belfast bank obtained a guarantee from one of the individuals invested in the Belfast ticketing company, such investor

---

Rec. Doc. 109-6 at ¶ 26, 32, 34.  Second, even if such were not the case, the Court would not find such lack of jurisdiction over PwC US to render Northern Ireland's courts unavailable for purposes of forum non conveniens, given that PwC US has no connection whatsoever to the events giving rise to the plaintiffs' claims.  Plaintiffs complain that they were not allowed to depose Mr. Scoffield; however, nothing prevented plaintiffs from retaining their own expert to opine on the courts and laws of Northern Ireland, if they believed Mr. Scoffield's opinions to be in error or unsound.

(Newton) being a resident of the State of Florida.  The only underlying fact connecting this dispute to the State of Louisiana is Mr. Newton's assertion that he happened to be in this State, rather than his home state of Florida, when he signed the Guarantee.

On the basis of the parties' respective showings, it appears that all individuals involved in the underlying events, and thus who reasonably might be called as witnesses, reside in the United Kingdom, mostly in Northern Ireland, with the sole exception of Mr. Newton (who resides in Florida).   The only Seatem individuals named by plaintiffs (other than Newton) are Rory Burns and Paul Burns, both of whom are "easily accessible in Ireland and the U.K." according to plaintiffs.  *See* Rec. Doc. 1-2.  Although plaintiff BMPP3 is a Louisiana partnership, the plaintiffs have pointed to no individuals at BMPP3 (other than presumably Newton)[8] who were involved in the underlying facts and would be called as witnesses.  Indeed, plaintiffs have failed to point to a single witness who resides in Louisiana and have named no witness (other than Newton) who resides in a location near Louisiana.[9]  Thus, the Court finds that the considerations relating to the cost and convenience of obtaining the attendance of

---

[8]  The Court will assume that this forum is convenient to Mr. Newton, since he chose this forum over his home state of Florida.  However, the convenience of this one witness is heavily outweighed by the great inconvenience to the many witnesses who reside and work in Northern Ireland.

[9]  Plaintiffs argue generally that PwC US employees are located in the United States.  However, as discussed above in connection with the motion to remand, the partners and employees of PwC US had no involvement in the events giving rise to the plaintiffs' claims.  Thus, the Court considers their whereabouts to weigh very slightly, if at all, in the instant inquiry.  Moreover, plaintiffs have not pointed to any witness, including any employee or partner of PwC US, who resides within the State of Louisiana.  The Court notes that the PwC US individuals who were deposed in connection with the motion to remand were located in New York, not Louisiana.

witnesses weigh heavily in favor of Northern Ireland.[10]

The ease of access to physical evidence also favors Northern Ireland.  Although electronic delivery technology, as plaintiff argues, no doubt has diminished the weight to be given the location of documents, it does not eliminate the consideration.   Thus, the Court finds that the cost and ease of accessing relevant documents and other physical evidence also favors Northern Ireland.   Indeed, the Court cannot find any factor that would make trial more expeditious or inexpensive in Louisiana.

The primary argument that plaintiffs assert in opposition to dismissal on grounds of forum non conveniens is that there is a strong presumption in favor of maintaining a plaintiff's choice of forum.   The plaintiffs are correct that "[i]n evaluating the private interests of the litigants, a court should be deferential to an American plaintiff's choice of his home forum." *Anderson Tully Lumber Co. v. International Forest Products, S.r.L*, 306 Fed. Appx. 858 (5th Cir. 2009) (quoting *Forsythe v. Saudi Arabian Airlines Corp*., 885 F.2d 285, 290 (5th Cir. 1989)). However, the Supreme Court and Fifth Circuit have "made clear that an American plaintiff's choice of its home forum... 'cannot be given dispositive weight.' " *Id.* (quoting *Forsythe*, 885 F.2d at 291); *see Piper Aircraft*, 454 U.S. at 256 n.23; *City of New Orleans Employees' Retirement System v. Hayward*, 2013 WL 174251 *2 (5th Cir. 2013) ("A citizen's forum choice should not be given dispositive weight, however."); *Anderson Tully Lumber*, 306 Fed. Appx. at

_____

[10]  The Court notes that Northern Ireland does have a process for compelling the attendance of unwilling witnesses.  *See* 109-6 at ¶ 21(c).

18

861.[11]   "Indeed, analysis of the plaintiff's forum choice is intertwined with the public and private interest factors such that 'if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.' " *Hayward*, 2013 WL 174251 at *2 (quoting *Piper Aircraft*, 454 U.S. at 256 n.23).   "The court must bear in mind that the ultimate inquiry is where trial will best serve the convenience of the parties and the interests of justice." *DTEX*, 508 F.3d at 794 (internal quotations omitted).

Moreover, "[j]udicial concern for allowing citizens of the United States access to American courts has been tempered by the expansion and realities of international commerce." *DTEX*, 508 F.3d at 795.   "In an era of increasing international commerce, parties who choose to engage in international transactions should know that when their foreign operations lead to litigation they cannot expect always to bring their foreign opponents into a United States forum when every reasonable consideration leads to the conclusion that the site of the litigation should be elsewhere." *DTEX*, 508 F.3d at 795 (quoting *Contact Lumber Co. v. P.T. Moges Shipping Co., Ltd.*, 918 F.2d 1446, 1450 (9th Cir.1990)).

---

[11]  In *Piper Aircraft*, the Supreme Court stated:

As the District Court correctly noted in its opinion, the lower federal courts have routinely given less weight to a foreign plaintiff's choice of forum.  A citizen's forum choice should not be given dispositive weight, however.  Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

454 U.S. at 256 footnote 23 (citations omitted).

In this case, BMPP3 is a partnership registered in Louisiana with at least one partner domiciled in Louisiana, namely BIG Holding Corporation.  However, it brings this suit based on events that occurred in Belfast, Northern Ireland.  Its alleged connection to these events is that it chose to be an investor in and lender to Seatem, a ticketing company located in Northern Ireland. *See* Petition (Rec. Doc. 1-2) at ¶ I ("Mr. Newton was a percentage owner and lender through BMPP3 of Seatem Attraction, Tickets (UK) Limited ("Seatem"), a ticketing company located in Belfast, Northern Ireland."), ¶ 28 ("BMPP3 which had been lending and investing capital in Seatem eventually had to write off $20,718,096 ....").  Under such circumstances, BMPP3's choice of its home forum cannot be given dispositive weight, particularly when every other private interest factor favors litigation in Northern Ireland.

    3. <u>Public Interest Factors</u>:

 Because the Court has found that the private interest factors weigh in favor of dismissal, the Court need not also weigh the public interest factors.  *Saqui*, 595 F.3d at 214.  However, the Court notes these factors also weigh strongly in favor of dismissal.   "The relevant public interest factors are:  (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; (4) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty."  *Id.*

Factors two and five (the local interest in having localized controversies decided at home and its converse, the unfairness of burdening citizens in an unrelated forum with jury duty)

20

weigh heavily in favor Northern Ireland, where virtually all of the relevant events occurred. Northern Ireland certainly has a compelling interest in regulating the conduct of banks and accountants practicing within its jurisdiction.[12]  Plaintiffs argue that Louisiana has an interest in determining the validity and extent of a guarantee that was signed within its borders.  However, the Court finds that this interest, to the extent it exists at all, is attenuated given that the individual who signed the guarantee is a citizen of Florida, not Louisiana, and that the Guarantee was made in connection with a loan transaction between U.K. companies headquartered in Northern Ireland.

There is no evidence regarding the relative congestion in either forum.  However, regarding the interest in judicial economies and the avoidance of duplicative proceedings (with potentially conflicting outcomes), it is important to note that an action on the Guarantee is already pending and underway in the High Court of Justice in Northern Ireland, Queen's Bench Division.  *See* Rec. Doc. 109-2.  Plaintiffs argue that the Northern Ireland action encompasses only claims between Newton and Northern Bank, and does not include the claims of BMPP3 or the claims against any PwC entity.   While this is true, the Court notes that five of the six causes of action asserted in the plaintiffs' petition relate to the Guarantee.  Thus, a substantial part of this suit is closely related to the Northern Ireland action, which will necessarily decide issues included in this case, including the enforceability *vel non* of the Guarantee.  Thus, judicial economy and international comity would favor dismissing this suit in favor of the action pending in Northern Ireland.

---

[12]  Plaintiffs argue that the United States has an interest in regulating the conduct of PwC US.  However, as discussed above, the conduct of PwC US is not at issue in this dispute.

Regarding the third and fourth factors (the interests in having a forum that is at home with the law that must govern the action and in avoiding unnecessary problems in conflict of laws or in the application of foreign law), the Court finds that they too weigh in favor of Northern Ireland.   The parties to the Engagement Letter (PwC UK, Northern Bank, and Seatem) expressly agreed that the contract between them "shall be governed by and interpreted in accordance with the laws of Northern Ireland" and that "the Courts of Northern Ireland shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Contract and any matter arising from it." *See* Rec. Doc. 109-3 at § 12.  Plaintiffs argue that it "is not a foregone conclusion that the law of Northen Ireland will apply" and that there is a framework in the Civil Code for deciding conflicts of laws.  Rec. Doc. 132 at 19.   However, plaintiffs fail to present any argument demonstrating that a law other than that of Northern Ireland should apply. Thus, the Court finds that the third and fourth interest factors favor dismissal.

Accordingly, for all of the above reasons, the Court finds that the private and public interest factors weigh heavily in favor of dismissing this suit on the basis of forum non conveniens.

### B. **Improper Venue and Lis Alibi Pendens**:

PwC UK, PwCIL, and PwC US each have moved for dismissal for improper venue on the basis of the forum selection clause contained in the Engagement Letter.  (Rec. Docs. 109, 110, and 17).  In addition, PwCIL has moved for dismissal on grounds of *lis alibi pendens* on the basis of the pending suit in Northern Ireland.  (Rec. Doc. 110).  Because the Court has already determined that this suit should be dismissed on grounds of forum non conveniens, the Court does not reach these additional grounds for dismissal.

22

## IV.  CONCLUSION:

For all of the foregoing reasons;

**IT IS ORDERED** that:

1) The Motion to Remand (Rec. Doc. 13), filed by the plaintiffs, is hereby **DENIED**;

2) The malpractice and breach of contract claims asserted by plaintiffs against PricewaterhouseCoopers LLP (PwC US) in the original petition are hereby **DISMISSED WITH PREJUDICE**;

3)  PricewaterhouseCoopers LLP's (PwC UK) Motion to Dismiss **(Rec. Doc. 109)** and PricewaterhouseCoopers International Limited's Motion to Dismiss **(Rec. Doc. 110)** are hereby **GRANTED** on the basis forum non conveniens;

4) This case is hereby **DISMISSED WITHOUT PREJUDICE**; and

5) All motions that remain pending (Rec. Docs. 16, 17, 18, 112, 114, and the personal jurisdiction aspects of 109 and 110) are hereby **DENIED AS MOOT** without prejudice.

New Orleans, Louisiana, this 31st day of January, 2013.

**KURT D. ENGELHARDT**
**UNITED STATES DISTRICT JUDGE**